IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| LEXOS MEDIA IP, LLC,<br><br>      *Plaintiff*,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>      *Defendant*. | CASE NO. 2:22-CV-00169-JRG<br>(Lead Case)<br><br>Oral Argument Requested |

**AMAZON'S REPLY IN SUPPORT OF ITS RULE 12(b)(6) MOTION TO DISMISS**

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT......................................................................................................3

    A. The Claimed Cursor Does Not Include the Static Web Page Content Underneath It. ......................................................................................................3

    B. The Alleged Cursor of a Pointing Hand and Array of Blue Dots Does Not Correspond to Content Specific to the Underlying Web Page. ...............................7

    C. The Alleged "Transparency" of the Accused Modified Cursor Is Not Relevant to Any Plausible Interpretation of the Modified Cursor Limitation..........................................................................................................8

III. CONCLUSION...............................................................................................10

# TABLE OF AUTHORITIES

**CASES**                                                                               **PAGE(S)**

*Aro Mfg., Co. v. Convertible Top Replacement Co.*,
    365 U.S. 336 (1961) ................................................................................................... 8

*BYD Co. v. All. for Am. Mfg.*,
    554 F. Supp. 3d 1 (D.D.C. 2021) ............................................................................... 7

*Lexos Media IP, LLC v. APMEX, Inc.*,
    No. 2:16-CV-00747-JRG-RSP, 2017 WL 1021366 (E.D. Tex. Mar. 16, 2017) ............ *passim*

## I. INTRODUCTION

As Amazon demonstrated in its Opening Brief, Lexos' First Amended Complaint ("FAC") should be dismissed with prejudice because Lexos cannot plausibly allege infringement of the Asserted Patents by the cursor functionality on Amazon's website. This Court previously held that the asserted claims require that a user's computer cursor be transformed into a "specific image . . . representative of at least a portion of the subject or topic being displayed on the screen." *Lexos Media IP, LLC v. APMEX, Inc.*, No. 2:16-CV-00747-JRG-RSP, 2017 WL 1021366, at *6 (E.D. Tex. Mar. 16, 2017) ("*Lexos I*"). The Court noted that the specification of the Asserted Patents provides concrete examples of the claimed specific image being related to a topic displayed on the computer screen. A cola bottle cursor on an advertisement about Fizzy cola? Specific image. *Id*. at *1. A pink colored cursor on a website about the Pink Panther? Specific image. *Id*. at *3. A baseball bat cursor on a sports website? Specific image. *Id*.

In contrast, this Court drew a clear line as to what types of cursors are *not* specific images: generic icons that merely reflect functionality, *regardless of the underlying content. Id.* at *5. Thus, a cursor that transforms into a generic magnifying glass cannot infringe because it reflects a purely functional relationship and does not prompt a user to associate the icon "with the information being displayed on the website." *Id*.

Similar to the magnifying glass cursor addressed by the Court in *Lexos I*, the accused cursor on the Amazon website—a pointing hand surrounded by an array of blue dots—is the type of generic, function-driven cursor that this Court already held does not infringe the Asserted Patents. Lexos' FAC demonstrates that the modified cursor is not "representative of a portion of the subject of topic being displayed on the screen." Instead, the cursor is the exact same pointing hand and array of blue dots regardless of whether the cursor is placed over an image of a recliner or a

smartphone. In each case, the accused cursor signifies a magnification function, just like the non-infringing magnifying glass cursor.

Lexos' Opposition does not save the FAC, and indeed, it further highlights the implausibility of Lexos' assertions. ("Opp'n" (ECF No. 25).) Lexos' response boils down to one question: whether the cursor on the Amazon web page includes content from the underlying web page merely because the cursor has gaps where that underlying content can partially be seen as the cursor rolls over it. The evidence this Court may consider on a Rule 12 motion shows, emphatically, that it does not. First, the plain language of the claims distinguishes between the "specific image" of the modified cursor and the underlying content displayed on the computer screen. Second, the specification of the Asserted Patents defines a cursor by its ability to track the movement of a user's input device. The underlying web page content that is partially obscured as the cursor rolls over it, by definition, cannot be part of the claimed "modified cursor" because the underlying web page image is static and does not track a user's mouse movements. Third, the Court's holding in *Lexos I* distinguishes between the modified cursor and the underlying image displayed on a web page.

Lexos also argues that the claim is met because Amazon's cursor "highlights" the underlying static product image, but that would lead to an implausibly broad claim scope that would cover any cursor that is partially transparent—even though the Court's claim construction analysis does not turn on whether the claimed cursor is partially transparent. The accused cursor no more "includes" or "highlights" the underlying image than a magnifying glass cursor that similarly obscures portions of the underlying image as it rolls over it.

Because the cursor does not include the portions of the underlying web page that can be seen between the blue dots, the cursor indisputably does not "correspond to the subject or topic

being displayed on the screen." Accordingly, Amazon respectfully requests that the Court dismiss Lexos' FAC for failure to state a plausible claim of infringement for which relief can be granted.

## II. ARGUMENT

### A. The Claimed Cursor Does Not Include the Static Web Page Content Underneath It.

Both parties agree that the pointing hand and array of blue dots are alleged to be the modified cursor.[1] (*See* FAC ¶ 38 (stating that the "specific image" of the modified cursor "comprises the shaded, semi-transparent box surrounding the image of the pointing hand"); ECF No. 23 ("Mot.") at 1-3, 12-14.) As Amazon demonstrated in its Opening Brief, this modified cursor is not a "specific image" because its shape and appearance do not correspond to content displayed on a user's computer screen—it is the same cursor (a pointing hand and array of blue dots) no matter what the underlying image is, whether a recliner or a smartphone. (*See* Mot. 1-3, 12-14.) Lexos does not dispute that the pointing hand and array of blue dots are the same regardless of the underlying image.

Instead, Lexos responds that, because a portion of the underlying web page can be seen in the gaps between the blue dots, that portion of the underlying web page becomes part of the modified cursor. (Opp'n 3, 9, 10.) Lexos' argument is implausible because it contradicts the plain language of the claims, the specification, and the Court's holding in *Lexos I*.

Here, the plain language of the claims requires the "initial cursor image" to be "transform[ed] . . . into the shape and appearance" of a "specific image" in response to the "movement

---

[1] Lexos claims that Amazon "erroneously fixates" on only the pointing hand and ignores that the alleged "specific image" also includes the array of blue dots (Opp'n 9, 11). Not true. Amazon's Motion specifically addresses the "shaded, semi-transparent box" (i.e., the array of blue dots) and argues that the addition of an array of blue dots does not render the pointing-hand cursor into a "specific image." (*See* ECF No. 23 at 1-3, 12-14.)

-3-

of said cursor image over a display" of "information to be displayed on said display of said user's terminal." (*See, e.g.*, '102 patent at 24:20-36.) The plain language of the claims thus distinguishes between the initial "cursor image," the "specific image" and the "information to be displayed" on the user's terminal. Nothing in the asserted claims supports a construction where the underlying information to be displayed on the user's terminal becomes a part of the cursor image upon the cursor image rolling over it.

Lexos' argument that portions of the underlying product image can be seen in the gaps between the blue dots and therefore becomes part of the cursor is also directly refuted by the specification, which repeatedly distinguishes between the cursor and the static underlying content displayed on a computer screen. For example, the Asserted Patents define a cursor as follows:

> Nearly all online computer interfaces utilize a wired or remote control positioning device such as a mouse or roller or track ball which controls the *cursor's movement* on the screen. *It is the cursor controlled by the mouse* or positioning device which a user uses to *"navigate" or move the cursor over objects*, buttons, menus, scroll bars, etc., which appear on-screen and then clicking . . . to activate a screen or task, or to commence an application or some function.

('102 patent at 3:25-35 (emphases added).) Thus, by the inventors' own admission, a cursor must move in response to a user's navigational input. As the user "navigate[s]" or "move[s]" a "mouse or positioning device . . . over objects . . . which appear on-screen," the cursor moves too. (*Id.*; *see also id.* at 8:28-34 ("Fundamental to the graphical user interface is the pointing device, generally mouse 22 which allows the user to manipulate or input information into the user terminal 14. Movement of mouse 22 is monitored by user terminal 14 which translates this movement into a *corresponding movement of cursor*.") (emphasis added).)

Lexos' Opposition corroborates that the cursor image must track a user's navigational input. For example, Lexos argues that "among the many examples of cursor modifications described in the specification is **appending an image to the cursor image**." (Opp'n 14 (emphasis in

original).) Lexos goes on to admit that any such "satellite," "sprite," or "append[ed]" image must "track[] the cursor's position on the screen," "move[] accordingly at a specific offset," and have "movement on the screen" that is "related to the movement of the cursor." (*See id.* (citing '102 patent at 16:14-16; 16:18-20; 17:21-28).)[2]

In contrast, the portions of the underlying recliner and smartphone images displayed in the gaps between the blue dots of the modified cursor remain static. They do not move. They do not "track[] the cursor's position on the screen." They do not "move[] accordingly at a specific offset" or have "movement on the screen" that is "related to the movement of the cursor." Therefore, those portions of the underlying product images are definitively not part of the modified cursor.

Lexos' argument that the underlying static product image on Amazon's web page is part of the "specific image" also flies in the face of this Court's claim construction in *Lexos I*. Here, Lexos asserts that the positioning of the blue dot array over the underlying image somehow transforms the visible portions of that underlying image into part of the cursor. But in *Lexos I*, this Court found that "[t]here is nothing in the patent's description or prosecution history suggesting that 'corresponding,' or 'linked and related to' for that matter, can imply merely a functional or *positional relationship* between the 'specific image' and the information being displayed on the screen." *Lexos I*, 2017 WL 1021366, at *4 (emphasis added).

Lexos also argues that the "pixels [of the cursor] are arranged in a two-dimensional plane [with the pixels of the underlying image]," and that the pixels of the cursor are thus not "superimposed over" the underlying image. (Opp'n 18.) This is purely semantics, as Amazon used "over"

---

[2] As the patents explain: "A further feature of the invention is to support the display of a 'satellite' image which tracks the cursor's position on the screen. For example, the cursor image could be replaced with that of a mouse, and the image of a cat could be displayed near that mouse. When the cursor is moved, the satellite image moves accordingly at a specific offset, as illustrated at lines 221-223 of FIG. 4." ('102 patent at 16:14-20.)

to describe which of the overlapping images are displayed at each pixel location when a cursor rolls "over" an underlying web page image. Indeed, the patents repeatedly use the word "over" in the same manner, including in the claims, to describe that the cursor moves "over" the underlying static image, partially obscuring that underlying image. (*See* '102 patent, 3:29-32 ("It is the cursor controlled by the mouse or positioning device which a user uses to 'navigate' or move the cursor *over* objects, . . . which appear on-screen.") (emphasis added); *id.* at 24:31-36 (asserted claim 72) (". . . to modify said cursor image to said cursor image in the shape and appearance of said specific image responsive to movement of said cursor image *over* a display of said at least a portion of said information to be displayed on said display of said user's terminal.") (emphasis added).)

While the underlying product image is partially visible as the accused modified cursor (the pointing hand and array of blue dots) rolls over it, such an action is no different than the non-infringing magnifying glass cursor discussed in the *Lexos I* claim construction order, which similarly obscures the underlying product image (i.e., the guitar) as the user navigates the magnifying glass cursor over that guitar image.[3] A magnifying glass cursor moving over a guitar image does not make the guitar image part of the cursor, just as the pointing hand and array of blue dots moving over a smartphone image does not make the smartphone image part of the cursor. *See id.*

---

[3] In a confusing (and potentially misleading) attempt to distinguish the magnifying glass cursor from the pointing hand and array of blue dots on Amazon's website, Lexos uses *two different underlying images* of the smartphone in its "before" and "after" images (*see* Opp'n 13), as if to suggest that the modified cursor includes a completely different image of the smartphone. In reality, the underlying product image does not change when a user moves its cursor over the large smartphone image; instead, a user can select the smartphone image by choosing a thumbnail image shown at the left edge of each web page image. In the image on the left, the top thumbnail image was selected. In the image on the right, the seventh thumbnail image from the top was selected. (*Id.*) That change in smartphone images does not occur by placing the cursor over the large smartphone images. For confirmation, the Court need only look at the letter Lexos voluntarily provided the Court as part of its Opposition, which shows two examples correctly depicting the same smartphone images, with the cursor over one image and not over the other. (*See* ECF No. 25-03 (Ex. B) at 3-4.)

In short, the claims and specification of the Asserted Patents define a cursor, correctly, as something that moves *over* static web page content in response to a user's navigational input, thus distinguishing between the underlying web page content and the image constituting the cursor. This was confirmed by the Court in *Lexos I*. Lexos' argument that the space between the blue dots in the array, where portions of the underlying image can be seen, causes the underlying image to be part of the modified cursor is implausible and should be dismissed because the underlying image is not part of the cursor—it remains static even as the cursor moves over it.

> **B.  The Alleged Cursor of a Pointing Hand and Array of Blue Dots Does Not Correspond to Content Specific to the Underlying Web Page.**

The Asserted Patents require that the specific image "include content corresponding" to information displayed on the web page, thus requiring that the cursor image itself be in a shape and appearance corresponding to content on the web page. (*See, e.g.*, '102 patent at 24:26-34.) Here, the cursor does not take the shape and appearance of the underlying recliner or smartphone image. Instead, the cursor is merely a pointing hand surrounded by an array of blue dots that is superimposed over and is distinct from the displayed product image. As even Lexos acknowledges, the image containing the array of blue dots is downloaded separately from the image of the displayed product on the Amazon website.[4] (*See* Opp'n 20–21.)

---

[4] On page 15 of its Opposition, Lexos makes nonspecific allegations that Amazon relies on "facts not alleged in the Amended Complaint" without specifically identifying what evidence it finds objectionable. Regardless, the Court may take judicial notice of the full content of materials that are incorporated by reference into the FAC, even if a claimant conveniently tries to omit facts that are problematic to its claim. (Mot. at 12, n.3.) Here, Lexos relies on Amazon.com web pages for its allegations (*id*.), and the Court is entitled to take judicial notice of the contents of those web pages, including the underlying page source code which is fully accessible and incorporated by the cited web page. *BYD Co. v. All. for Am. Mfg.*, 554 F. Supp. 3d 1, 13 (D.D.C. 2021) (taking judicial notice of web page source code because "[a]nyone with a web browser can view a webpage's source code, so it is 'verifiable with certainty,'" and its validity was not contested).

This is no different than the magnifying glass cursor in *Lexos I*, which is superimposed over the underlying guitar image. *See Lexos I*, 2017 WL 1021366, at *4. When the cursor in *Lexos I* is placed near or over the guitar, the cursor changes to a magnifying glass. *Id.* But the magnifying glass cursor does not become a combination of the overlaying magnifying glass *and* the underlying static image when it is located over the guitar. Similarly, on Amazon's website, when the cursor is moved over the underlying static mage, the cursor changes to a pointing hand surrounded by an array of blue dots. In both instances, the overlying cursor image is generic and is not indicative of the contents of the underlying static image.

C. **The Alleged "Transparency" of the Accused Modified Cursor Is Not Relevant to Any Plausible Interpretation of the Modified Cursor Limitation.**

As addressed above and in Amazon's Opening Brief, what Lexos calls a "semi-transparent box" is an array of blue dots. Because there is space between the dots, part of the underlying static web page image can be seen when the array is placed over an image. Lexos argues that the dots "highlight[] and draw[] attention to" product images on the web pages, and that portions of the product image may appear "within" the "shaded, semi-transparent" dot array (*See, e.g.*, Opp'n. 2, 16, 18.) But even if the array of dots draws attention to the underlying static image, the array does so by overlaying parts of the underlying image, just as a magnifying glass cursor can overlie and draw attention to an image of a guitar. Moreover, nothing in the specification of the Asserted Patents supports such an assertion that the underlying image is part of the modified cursor simply because it is "highlighted" by the cursor. Instead, this Court held that the specific image must be "an image *representative* of at least a portion of the subject or topic being displayed on the screen." *Lexos I*, 2017 WL 1021366 at *6 (emphasis added).

Lexos is bound by the words of its claims. *See, e.g.*, *Aro Mfg., Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 339 (1961) ("[T]he claims made in the patent are the sole measure

of the grant"). Lexos makes no effort to explain how web page content being "highlight[ed]," having attention "drawn" to it comports with any plausible meaning of the claims. (*See* Opp'n. 2, 7, 16, 21 n.5; FAC at ¶ 41.) No plausible reading of the claims supports Lexos' interpretation of the specific image cursor limitation, as confirmed by this Court's construction of that term.

Moreover, Lexos' argument that the accused cursor "highlights" or "draws attention to" the underlying static image further underscores the cursor's purely functional relationship with the underlying image. (*See, e.g.*, Opp'n. 7.) As discussed in Amazon's Opening Brief (at 6, 9, 11), the *Lexos I* claim construction order and the prosecution history of the Asserted Patents specifically distinguish purely "functional" cursors from those that have a shape and appearance that correspond to specific content on a displayed web page. *Lexos I*, 2017 WL 1021366, at *3, *5.

Lexos essentially argues that any cursor that has any transparent portion can be the claimed "specific image." For example, if Lexos' interpretation were correct, then any partially transparent cursor that Amazon might use on the recliner web page would be a claimed "specific image" cursor despite reflecting functionality and not the underlying image depicted on the screen.



In fact, even the magnifying glass cursor that was rejected in *Lexos I* would fall within the claim scope if it were even the slightest bit transparent, such that the user could see the web page content located underneath the cursor. Nothing in this Court's decision in *Lexos I* suggests that, were the magnifying glass in any way transparent, it would fall within the scope of the asserted claims.

What is dispositive, as the Court in *Lexos I* confirmed, is that a cursor whose appearance merely reflects its function, *regardless of the underlying content*, cannot infringe. *Id.* Lexos agrees with Amazon's understanding of the *Lexos I* decision but buries its agreement in a footnote (Opp'n at 10, n.1) and then misapplies the claim construction from *Lexos I* throughout its brief. Regardless of any alleged transparency, the blue dot array used on Amazon's website indisputably reflects its function, and that appearance never varies based on the content of the underling web page. Amazon therefore cannot plausibly, or possibly, infringe.

## III. CONCLUSION

Since the outset of this case Lexos has had numerous opportunities—including two complaints, extensive correspondence between counsel, and its Opposition—to demonstrate that Amazon plausibly infringes in light of this Court's construction of the claims and clear guidance regarding what the claimed modified cursor can, and cannot, be in *Lexos I*. Lexos has failed to do so, and instead can only raise responses that fly directly in the teeth of the holding and analysis in *Lexos I*. Amazon respectfully requests that the Court dismiss, with prejudice, Lexos' FAC for failure to state a claim for relief pursuant to Rule 12(b)(6).

Dated: September 14, 2022               Respectfully submitted,

                                        */s/ Janice L. Ta*
                                        Janice L. Ta, Texas 24075138
                                        JTa@perkinscoie.com
                                        PERKINS COIE LLP
                                        405 Colorado St., Suite 1700
                                        Austin, TX 78701
                                        Tel: (737) 256-6100
                                        Fax: (737) 256-6300

                                        Daniel T. Shvodian, California 184576
                                        DShvodian@perkinscoie.com
                                        PERKINS COIE LLP
                                        3150 Porter Drive
                                        Palo Alto, CA 94304
                                        Tel: (650) 838-4300
                                        Fax: (650) 838-4350

                                        Christina J. McCullough, Washington 47147
                                        CMccullough@perkinscoie.com
                                        PERKINS COIE LLP
                                        1201 Third Avenue, Suite 4900
                                        Seattle, WA 98101
                                        Tel: (206) 359-8000
                                        Fax: (206) 359-7897

                                        Adam G. Hester, Wisconsin 1128794
                                        (*pro hac vice application pending*)
                                        AHester@perkinscoie.com
                                        PERKINS COIE LLP
                                        33 East Main Street Suite 201
                                        Madison, WI 53703-3095
                                        Tel: (650) 838-4311
                                        Fax: (650) 838-4350

                                        *Attorneys for Defendant*
                                        *AMAZON.COM, INC.*

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on September 14, 2022, to all counsel of record, via the Court's CM/ECF system.

                                                                                 */s/ Janice L. Ta*  
                                                                                  Janice L. Ta