# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| LEXOS MEDIA IP, LLC, | § | |
| | § | |
| v. | § | Civil Action No. 2:22-CV-00169-JRG |
| | § | (Lead Case) |
| AMAZON.COM, INC. | § | |

| | | |
|---|---|---|
| | § | |
| LEXOS MEDIA IP, LLC, | § | |
| | § | Civil Action No. 2:22-CV-00175-JRG |
| v. | § | (Member Case) |
| | § | |
| TARGET CORPORATION | § | |

| | | |
|---|---|---|
| | § | |
| LEXOS MEDIA IP, LLC, | § | |
| | § | Civil Action No. 2:22-CV-00273-JRG |
| v. | § | (Member Case) |
| | § | |
| OFFICE DEPOT, LLC. | § | |

## PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF

**BUETHER JOE & COUNSELORS, LLC**
Eric W. Buether
Christopher M. Joe
Kenneth P. Kula

**SETHLAW PLLC**
Sandeep Seth

**ATTORNEYS FOR PLAINTIFF LEXOS MEDIA IP, LLC**

**JUNE 21, 2023**

# TABLE OF CONTENTS

I.    THE BACKGROUND OF THE PATENTS-IN-SUIT ...................................... 3

    A.    The Invention of the Asserted Patents ...................................... 3

    B.    The IPR Proceeding ...................................... 6

    C.    The *APMEX* Claim Construction Ruling ...................................... 6

II.   PROCEDURAL BACKGROUND ...................................... 7

    A.    Plaintiff's Asserted Claims Against the Defendants ...................................... 7

    B.    The Court's Denial of Amazon's Motion to Dismiss ...................................... 9

III.  CLAIM CONSTRUCTION PRINCIPLES ...................................... 9

IV.   DISCUSSION ...................................... 9

    A.    Definition of the "Person of Ordinary Skill in the Art" ...................................... 9

    B.    Agreed Claim Constructions ...................................... 10

    C.    Disputed Claim Terms ...................................... 11

        1.    "cursor display code" ...................................... 11

        2.    "cursor display instruction" ...................................... 12

        3.    "cursor image" and "initial cursor image" ...................................... 13

        4.    "cursor image data" ...................................... 17

        5.    "modifying"/"transforming" [said cursor image/initial cursor image] ...................................... 19

        6.    "specific image" ...................................... 20

        7.    "tracks a movement" ...................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

2:14-CV-201-JRG,
  2015 WL 2090651 (E.D. Tex. May 4, 2015) .......................................................................... 12

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*,
  262 F.3d 1258 (Fed. Cir. 2001) ........................................................................................... 9

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
  388 F.3d 858 (Fed. Cir. 2004) ............................................................................................. 9

*Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*,
  381 F.3d 1111 (Fed. Cir. 2004) ........................................................................................... 9

*Lexos Media IP, LLC v. APMEX, Inc.*,
  2017 WL 1021366 (E.D. Tex. Mar. 16, 2017) ............................................................. passim

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ................................................................................. 9, 11, 12

**Other Authorities**

U.S. Patent No. 5,994,102 (the '102 Patent) .......................................................................... 3, 4, 5

U.S. Patent No. 6,118,449 (the '449 Patent) ................................................................................. 3

U.S. Patent No. 7,975,241 (the '241 Patent) ................................................................................. 3

Plaintiff Lexos Media IP, LLC ("Plaintiff") hereby submits this Opening Claim Construction Brief pursuant to P.R. 4-5(a).

## I. THE BACKGROUND OF THE PATENTS-IN-SUIT

### A. The Invention of the Asserted Patents

The asserted patents in this consolidated litigation include the following three patents: (1) U.S. Patent No. 5,994,102 (the '102 Patent), (2) U.S. Patent No. 6,118,449 (the '449 Patent), both of which are entitled "Server System and Method of Modifying a Cursor Image," and (3) U.S. Patent No. 7,975,241 (the '241 Patent), entitled "System for Replacing a Cursor Image In Connection with Displaying the Contents of a Web Page" (the "Asserted Patents"). Each of the Asserted Patents shares the same specification. The application for the `102 Patent was filed on June 25, 1997. For ease of reference, patent citations to the common specification will be with reference to the column and line numbering of the '102 Patent.

At the time of the invention, more and more companies were advertising on the Internet. `102 Patent, 1:21-23. Three typical forms of advertising at the time of the invention were "banner ads," `102 Patent, 1:24-25, "frames," `102 Patent, 1:55-56, and "self-appearing windows." `102 Patent, 2:4-5. Each form of advertising had its drawbacks and limitations, as explained in the specification. *See* `102 Patent, 1:24 to 2:32. Consequently, the inventors recognized "a need for a simple means to deliver advertising elements . . . without the annoyance of totally interrupting and intrusive content delivery, and without the passiveness of ordinary banner and frame advertisements which can be easily ignored." `102 Patent, 2:27-32. Thus, it was a specific objective of the inventions "to provide a server system for modifying a cursor image to a specific image displayed on a video monitor of a remote user's terminal for the purposes of providing on-screen advertising." `102 Patent, 2:44-47.

The inventions claimed in the Asserted Patents provide for server systems that enable a cursor or pointer displayed on a remote client's computer to change appearance to a specific image that is related to the content being transmitted to and displayed on that computer. `102 Patent, 4:4-12. The modified cursor image can be used by the provider of displayed web content to advertise or promote the displayed content. `102 Patent, 3:51 to 4:3. As the specification explains, "[t]he present invention provides a means for enabling cursors and pointers to change color, shape, appearance, make sounds, display animation, etc., when the user's terminal or computer, known as the 'client' or 'user' terminal, which has a network connection, receives certain instructions from a remote or 'server' computer attached to the network." `102 Patent, 3:51-57. The specification describes "an exemplary embodiment of the present invention" whereby:

> [T]he generic cursor or pointer icons used in many networking applications, such as black arrows, hands with a pointing finger, spinning wheels, hourglasses, wristwatches, and others, will change appearance, and in some cases may incorporate sound or animation, in a way that is linked and related to the content, such as a web page, which is being transmitted to and displayed on the client computer.

`102 Patent, 3:57-64. "The cursor or pointer image may also appear in a specified shape or color that is intended to convey a message that relates to the advertising content within the web page being transmitted and displayed." `102 Patent, 3:67-4:3. *See also* `102 Patent, 7:2-5 ("the server system provides certain information that causes the cursor image on the video monitor of the user terminal to display an image as specified by the server system.")

The context of the invention relates to a graphical user interface in which a pointing device is used by the user to navigate a video display, and in which movement of the pointing device is indicated by a corresponding movement of a cursor on the video display. *Id.* at 8:24–37. The '102 Patent relates to changing that generic cursor by sending data and control signals from a remote

computer to replace such a cursor with a cursor having an appearance that is associated with other content being displayed to the user, e.g., a logo, mascot, or an image of a product or service, related to the other content being displayed to the user. *Id.* at 3:4–9, 17:5–18:3.

Figure 8 of the '102 patent, reproduced below, shows a web page according to the invention.



*FIG. 8*

In Figure 8, shown above, web page 60a is displayed to a user, including banner ad 62 for cola. *Id.* at 13:31–37. The cursor to be used with this web page changes from a standard cursor (e.g., an arrow) to cola-bottle-shaped cursor 44a in association with the banner ad 62. *Id.*

The '102 Patent describes interactions between a server system and a user's terminal to effect the cursor change. *Id.* at 4:4–9, 5:37–49, 5:48–65, 7:16–40. The user terminal is controlled by an operating system ("OS"), and application programs such as a browser running on the user terminal use an application programming interface ("API") to interface with the OS. *Id.* at 7:29–40, Fig. 2.

The server system transmits specified content information to the user terminal, including information to be displayed on the user's computer (such as a hypertext markup language ("HTML") web page), cursor display instruction, and cursor display code. *Id.* at 8:4–23. The cursor display instruction indicates where the cursor image data corresponding to the new appearance of the cursor resides. *Id.* at 8:49–64. The cursor display code causes the user's terminal to display that cursor image data in place of the original cursor, using the API of the operating system to effect these changes. *Id.* at 8:34–37, 8:52–57; 13:19–30.

## B.     The IPR Proceeding

In 2018, Ralph Lauren ("RL") petitioned the U.S. Patent Trial and Appeal Board (the "PTAB") for *inter partes* review of the `102 and `449 Patents.   In particular, RL petitioned for *inter partes* review of claims 70-73 of the `102 Patent and claims 1-3, 5-7, 12-15, 27-29, 31-33, 38-41, 53-56, 58-63, 72-75, and 77-82 of the `449 Patent. Although the PTAB cancelled some of the claims, in two final written decisions it found that RL had **not shown** that the claims 70 and 72 of the `102 Patent and claims 1-3, 5-7, 12-15, 28, 29, 31, 32, 38, 39, 53-56, 58-63, 73-75, and 77-80 of the `449 Patent are **unpatentable**. *See* Exhibits 1 and 2.  RL appealed the PTAB's final written decisions, and the Federal Circuit affirmed those decisions.   *See* Exhibit 3.

## C.     The *APMEX* Claim Construction Ruling

In prior litigation involving the `102 and `449 Patents, this Court addressed the claim construction issue of whether a website that replaced an initial cursor image with merely a magnifying glass icon satisfied the requirements of the claimed "specific image." *See Lexos Media IP, LLC v. APMEX, Inc.*, 2017 WL 1021366 (E.D. Tex. Mar. 16, 2017).  This Court concluded that such a magnifying glass image alone did not qualify as the claimed "specific image" because it had only "a shape or appearance associated with a control function." *Id*. at *5. Instead, the Court emphasized, "when the patents explain that a 'generic cursor' can 'change appearance . . .

in a way that is linked and related to the content, such as a web page, which is being transmitted to and displayed on the client computer,' [citation omitted], this means that the cursor image itself -- the content or visual characteristics of the cursor image -- will morph into something that represents at least a portion of the underlying web page content." *Id*. The *APMEX* court concluded as follows:

> With this understanding in mind, the Court construes the phrase "said specific image including content corresponding to at least a portion of said information to be displayed on said display of said user's terminal" to mean "an image representative of at least a portion of the subject or topic being displayed on the screen."

*Id*. at *6.

## II. PROCEDURAL BACKGROUND

### A. Plaintiff's Asserted Claims Against the Defendants.

Plaintiff filed the complaints against the Amazon Case Defendants in late May and July of this year.[1] These complaints alleged that each of the defendants in these cases infringed the `102 and the `449 Patents. The Court consolidated these actions on August 19, 2022, with the Amazon case as the lead case. *See* Civil Action No. 2:22-cv-00169-JRG (Dkt. 18). In December 2022, Plaintiff added a claim for infringement of Claim 35 of the `241 Patent against the Amazon Defendants, with leave of the Court. Dkt. 69.

Plaintiff has asserted the following claims of the Asserted Patents against the Amazon Defentants: `102 Patent, Claim 72; `449 Patent, Claims 1, 38 and 53; and `241 Patent, Claim 35. Plaintiff's infringement allegations against Defendant Amazon regarding Claim 72 of the `102

---

[1] *See* Civil Action No. 2:22-cv-00169-JRG (Dkt. 1) (Amazon); Civil Action No. 2:22-cv-00175-JRG (Dkt. 1) (Target); Civil Action No. 2:22-cv-00273-JRG (Dkt. 1) (Office Depot).

Patent are illustrative of how Plaintiff has applied that claim against the accused website pages of

Amazon and, analogously, the other Amazon-consolidated Defendants.

> Shown below in Figure 3 is a screenshot of a web page displayed by the *amazon.com* website on or about May 30, 2016, reflecting the claimed specific image (the shaded, semi-transparent box surrounding the image of the pointing hand appearing on the left of the screenshot surrounded by the red box) and the claimed corresponding portion of the web page displayed on the display of the website user's terminal (on the right of the screenshot).



Plaintiff's Amended Complaint (Dkt. 12 ¶ 40 at 11).

> **The shaded, semi-transparent box surrounding the image of the pointing hand is not a generic cursor image**. Instead, it is an image that represents some or all of the subject matter being displayed on the website. In particular, **the shaded, semi-transparent box is not merely the image of a hand, arrow or other form of functional cursor, but is an image that highlights and draws attention to the portion of the product or subject matter displayed on the web page that appears within the shaded box**. That highlighting of, and attention to, a portion of the product or subject matter displayed on the web page is enhanced by the enlarged display of that portion of the product or subject matter appearing within the shaded, semi-transparent box to the right of the specific image. **The specific image generated by Amazon's Accused Instrumentality relates the content displayed within the shaded, semi-transparent box to the content being displayed on the screen**.

*Id.* ¶ 41 at 11-12 (emphasis added).

**B.     The Court's Denial of Amazon's Motion to Dismiss**

In Plaintiff's lawsuit against Amazon, Amazon filed a motion dismiss based upon its reading of the claim construction ruling by this Court in *APMEX* (Dkt. 23).  This Court denied Amazon's motion, observing that "Amazon argues that its accused cursor functionality cannot possibly infringe the Asserted Patents because the accused modified cursor images 'do not correspond to content specific to the underlying web page.'"  Dkt. 56 at 3.  The Court rejected Amazon's argument, stating that that the Court has properly considered whether Lexos's Amended Complaint states enough facts such that the claim to relief is plausible on its face."  *Id.* at 5.

### III.     CLAIM CONSTRUCTION PRINCIPLES

This Court is well versed in the general law governing claim construction.  *See, e.g.*, *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc); *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111 (Fed. Cir. 2004); *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258 (Fed. Cir. 2001). Thus, Plaintiff will not repeat the governing principles here.

### IV.     DISCUSSION

**A.     Definition of the "Person of Ordinary Skill in the Art"**

The Patent Trial and Appeal Board, in the related IPR proceeding, found that a person of ordinary skill in the art would have had "at least a master's degree in Computer Science, Computer Engineering, or a related field, or hold a bachelor's degree in Computer Science, Computer Engineering, or equivalent and have at least two years of relevant work experience in the fields of UI [(user interface)] design and OSs." *E.g.* Ex. 1 at 10.  Plaintiff does not dispute this finding regarding a person of ordinary skill in the art.

## B. Agreed Claim Constructions

Pursuant to Patent Rule 4-3(a)(1), the Parties have agreed to the construction of the claim terms, phrases, or clauses set forth hereto:

| Proposed Claim Term | Parties' Agreed Construction |
|---|---|
| **"corresponding to"**<br><br>'102 Patent, Claim 72; '449 Patent, Claims 1, 38, 53. | Plain and ordinary meaning. |
| **"modified cursor image"**<br><br>*See* '449 Patent, Claims 1 and 38; '241 Patent, Claim 35. | "cursor image" should be construed as set forth separately.<br><br>Plain and ordinary meaning. |
| **"promotional material"**<br><br>*See* '241 Patent, Claim 35. | Plain and ordinary meaning. |
| **"said specific image includes/including content corresponding to at least a portion of said information that is to be displayed on said display of said user's terminal"**<br><br>*See* '102 Patent, Claim 72; '449 Patent, Claims 1, 38, 53. | "an image representative of at least a portion of the subject or topic being displayed on the screen"<br><br>*Lexos Media IP, LLC v. APMEX, Inc.*, No. 216CV00747JRGRSP, 2017 WL 1021366, at *5–6 (E.D. Tex. Mar. 16, 2017). |

| Proposed Claim Term | Parties' Agreed Construction |
|---|---|
| **"specified content information"**<br><br>*See* '102 Patent, Claim 72; '449 Patent, Claims 1, 38 and 53.<br><br>**"content information"**<br><br>*See* '241 Patent, Claim 35. | The term "specified content information" / "content information" means "information provided to a user's terminal for use in the display, such as a web page." |
| **"visual image"**<br><br>*See* '241 Patent, Claim 35. | Plain and ordinary meaning. |
| **"server"**<br><br>'102 Patent, Claim 72; '449 Patent, Claims 1, 38, 53; '241 Patent, Claim 35. | Plain and ordinary meaning. |

*See* P.R. 4-3 Disclosures, pp. 2-3.[2]

**C.    Disputed Claim Terms**

**1.    "cursor display code"**

(**'**102 Patent, Claim 72; '449 Patent, Claims 1, 38, and 53**)**

| Plaintiff's Proposed Construction | Amazon Defendants' Proposed Construction |
|---|---|
| "computer code for modifying the display of the cursor image" | Plain and ordinary meaning.  No construction required. |

---

[2]  Subsequent to the parties' P.R. 4-3 Disclosures, Plaintiff agreed to the Amazon Defendants' proposed "plain and ordinary meaning" construction of the term "corresponding to."

The plain and ordinary meaning of a term is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Philips*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*). The term has been described in a precise manner by the specification, and this description of the term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention. As described in the specification, the cursor display code comprises "a set of instructions which are executed on the user terminal 14 and which interact directly with application programming interface 30 of the user terminal 14 and operating system 28 so as to accomplish the actual change of cursor 44." *See* '102 Patent, col. 8, lines 52-57. Thus, the cursor display code causes the user's terminal to display that cursor image data in place of the original cursor, using the API of the operating system to effect these changes. *Id.* at 8:34–37, 8:52–57; 13:19–30.

Furthermore, the claim language itself bolsters Plaintiff's proposed construction. For example, claim 72 recites that the "cursor display code [is] operable to process said cursor display instruction to modify said cursor image to said cursor image in the shape and appearance of said specific image …" (*id.*, col. 24, lines 30-33). Thus, this situation is more analogous to *Innovative Display Techs. LLC v. Hyundai Motor Co.*, No. 2:14-CV-201-JRG, 2015 WL 2090651, at *17 (E.D. Tex. May 4, 2015), where the Court ruled that "on balance, the specification provides sufficient context for a person of ordinary skill in the art to understand the disputed terms." Therefore, cursor display code (generically) is code for modifying the display of the cursor image.

### 2. "cursor display instruction"

'102 Patent, Claim 72; '449 Patent, Claims 1, 38, 53; '241 Patent, Claim 35.

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "an instruction operable to modify the display, in conjunction with other information, of a cursor image" | Plain and ordinary meaning. No construction required. |

Similarly, the claim term "cursor display instruction" has been described with specificity in the specification. In particular, the cursor display instruction indicates where the cursor image data corresponding to the new appearance of the cursor resides. *Id.* at 8:49–64. As the specification explains:

> Typically a web browser retrieves a web page to be loaded on a user's terminal. The retrieved web page in accordance with one embodiment of the invention contains a set of predetermined instructions referred to herein as cursor display instructions. The browser or browser extension interprets the information contained in cursor display instructions and instructs the operating system of the user's terminal via an application programming interface (API) to check its memory to determine if the user terminal is capable of loading the coded image, animation, and/or soundbite.

*See* `102 Patent, 4:31-45.

Plaintiff's proposed construction also is in accordance with the claim language itself and that description in the specification. Using claim 72 of the '102 Patent as an example, the initial cursor image displayed on the display of the user terminal is transformed into the shape and appearance of a specific image in response to the cursor display instruction. Thus, the claim itself shows that the cursor display instruction operates in conjunction with other information to render the transformation.

### 3. "cursor image" and "initial cursor image"

'102 Patent, Claim 72; '449 Patent, Claims 1, 27, 53; '241 Patent, Claim 35.

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "the appearance of the cursor on a user's screen before the cursor image is modified into the specific image"<br><br>(Plaintiff contends that the terms "cursor image" and "initial cursor image" should be construed together and to mean the same thing.) | **"cursor image"** – "a movable image on a display screen whose position is controlled through a user interface and that indicates the location that will be affected by input from the user interface"<br><br>(Defendants contend that "cursor image" should be construed as a standalone term. Defendant's [sic] propose a plain and ordinary meaning for the terms "initial cursor image" and "said cursor image." No construction of those terms is needed beyond the construction of "cursor image.") |

The Court should adopt Plaintiff's construction and reject Defendants' construction for several reasons.

First, the Court's claim construction order in *APMEX* went to some length to distinguish between a generic cursor image and cursor images "modified to an image that represents some or all of the subject matter being displayed on the website." *Lexos Media IP, LLC v. APMEX, Inc.* 2017 WL 1021366, at *1 (E.D. Tex. Mar. 16, 2017). The Court made it clear that "[t]he 'specific image' is not the 'cursor image,'" *id.*, and that "the specification uses 'cursor image' and 'specific image' to refer to different images." *Id.* at *2. "In sum," this Court held in *APMEX*, **the 'cursor image' recited in the claims is the image that appears before the cursor image is modified into the specific image."** *Id.* (emphasis added).

In addition, the specification consistently refers to cursor image appearing before any modification into a specific image as the "initial" cursor image before such modification. *See* `102 Patent, Abstract ("A system for modifying a cursor image, as displayed on a video monitor of a remote terminal, to a specific image having a desired shape and appearance."). *See also* `102

Patent, 5:15-18 ("FIG. 3 illustrates a flowchart diagram of an exemplary method of the present invention for obtaining information from a remote site for modifying a cursor image and implementing such information at numerous user sites.)" The claim language shows that the terms "initial cursor image" and "said cursor image" all refer to the cursor image **_before_** its transformation to the specific image. Thus, the term "initial cursor image" is used in the claims in the precisely the same manner as the term "cursor image," and, therefore, has the same meaning.

Furthermore, there is no support in the intrinsic record for the attempt by the Amazon-consolidated Defendants to inject into the meaning of the term "cursor image" the limitation "whose position is controlled through a user interface and that indicates the location that will be affected by input from the user interface." The specification teaches, and the claim language confirms, a system for modifying the shape and appearance of the cursor image, and not controlling the position of the cursor image on the user's display. Indeed, the specific image corresponds to the information *to be* displayed (*i.e.*, after transformation of the initial cursor image). The Amazon-consolidated Defendants improperly inject a requirement that the cursor image is always a movable image whose position is controlled through a user interface. But the only movement specified in the claims is that the cursor image transforms into the specific image when the cursor is positioned over a portion of the information to be displayed. *See* '102 Patent, claim 72.

Even if, as a technical matter, a cursor image is normally a movable image whose position is controlled through a user interface, engrafting this as requirement into the claim is entirely improper. Moreover, the specification describes that the cursor image's movement is not always controlled by a user interface but can have other modes of control. Specifically, the cursor position and movement can be controlled by the server:

"In an alternative embodiment of the present invention the position, as well as the image, of the user terminal's cursor may be controlled by a remote server. This embodiment would be implemented within the Cursor Display Code 52 such that additional information could be passed to Cursor Display Code 52 via Cursor Display Instructions 56. The additional information passed to Cursor Display Code 52 would contain code which indicates: (1) that the cursor position control is intended, (2) the conditions under which the cursor should be moved, and (3) the source of the data which specifies the particular movement that is intended. The latter could be stored in memory on a remote server and retrieved in a manner similar to retrieving Cursor Display Instructions 56 or the Cursor Display Code 52. For example, if no user input is received for a specified interval, the cursor image could change and the position of the cursor could be 45 set such that it follows a specified trajectory for several seconds, then reverts to its original state as illustrated by line 213 of FIG. 4."

*Id.* at col. 14, lines 28-46

Similarly, the specification explains, "[i]n accordance with another embodiment of the invention it is possible to vary the modification to the cursor as a function of cursor position. For example, the cursor pointer could be controlled such that it 'points' to a specific location on the screen regardless of the cursor's location on the screen as illustrated in line 214 of FIG. 4. In accordance with another embodiment of the invention it is possible to vary the modification to the cursor as a function of cursor velocity. For example, the cursor image could change from a stationary bird to a bird with flapping wings only when the cursor is moved quickly across the screen as illustrated in line 215 of FIG. 4." (*Id.* at col. 14, lines 47-59). Thus, the user interface does not necessarily control the movement of the modified cursor image.

For example, in one exemplary embodiment, a displayed homepage may have a picture of a bottle of Fizzy Cola in the middle of the page and "[a] dynamic cursor image could then be used to show a person holding a straw in such a way that the straw always points from the user towards the top of the Fizzy bottle, no matter where the cursor moves on the screen." '102 Patent, col. 17, lines 15-21. In this case, it is cursor instructions and ***not a user input*** that control the movement of the cursor image. Indeed, having the cursor movement controlled by the server and not by the user is described in detail for an alternative embodiment of the invention. *See* '102 Patent, col. 14, lines 28-46 (beginning, "In an alternative embodiment of the present invention the position, as well as the image, of the user terminal's cursor may be controlled ***by a remote server***.") (emphasis added). In this alternative embodiment, the cursor's position and movement are ***not controlled by user input*** but rather is controlled by cursor display code and instructions that "cursor position control is intended" and specify the "conditions under which the cursor should be moved" and the "source of the data which specifies the particular movement that is intended." *Id.* The specification even contemplates an example in which, ***without user input***, "…the position of the cursor could be set such that it follows a specified trajectory for several seconds, then reverts to its original state as illustrated by line 213 of FIG. 4." *Id*. at col. 14, lines 41-46. Therefore, Defendants' proposed construction contradicts the specification.

4. **"cursor image data"**

'102 Patent, Claim 72; '449 Patent, Claims 1, 38, and 53.

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning. | "data identifying the appearance of the modified cursor image" |

Unlike the terms "cursor display instruction" and "cursor display code," the term "cursor image data" requires no construction because the claim language itself specifies that the cursor image data is simply the data that corresponds to the specific image. *See, e.g.*, '102 Patent, claim 72 (reciting "cursor image data corresponding to a specific image"). There is no requirement in the claim that the cursor image data be "data identifying the appearance of the modified cursor image." Instead it is merely data that corresponds to the specific image. The specification is clear that it is the cursor instructions, in conjunction with the cursor display code and cursor information that will ultimately define the appearance of the specific image:

> In general, the fundamental elements of the process of changing cursor 44 displayed on video monitor 24 of user terminal 14 are as follows: Cursor Display Instructions 56 are initially embedded inside an HTML document, e.g. a web page. When browser 32 of the user terminal14 encounters Cursor Display Instructions 56, Cursor Display Code 52 is retrieved then invoked. As part of the invocation, the browser passes to the Cursor Display Code coded information sufficient to specify the manner of the display. Cursor Display Code 52 then retrieves Cursor Information 54 either from within memory 20 of user terminal14 or from storage at a remote site and then causes the Cursor Information to interact with the display system, such as display driver 36, of user terminal14 via the application programming interface 30 of operating system 28. This interaction causes Cursor Information 54 to be accessed by the display driver 36 in order to accomplish the intended effect, e.g., the change or transformation of cursor 44 visible on video monitor 24, and a corresponding sound information may be heard on speakers 26.

'102 Patent, col. 9, lines 1-20.

Defendants' proposed construction is also erroneous because it is not even limited to identifying the cursor image or images, but rather requires that the cursor image data itself "identify the appearance of the modified cursor image." Such a proposition is directly contrary to the specification, which explains that other information may also be used to identify the appearance of the modified cursor image, such as both Cursor Display Instructions 56 and Cursor Display Code 52. *See id.* at col. 8, lines 48-67 (explaining how three components, the Cursor Display Code

52, Cursor Display Instructions 54, and Cursor Information 54, combine to identify the appearance of the modified cursor image).  Therefore, Defendants' proposed construction should be rejected.

### 5. "modifying"/"transforming" [said cursor image/initial cursor image]

`102 Patent, Claim 72; '449 Patent, Claim 38, 53; `241 Patent, Claim 35.

### (including "modify [said cursor image]" and "modifying [a cursor image]"

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "changing (change) or replacing (replace) the form, shape or appearance of a cursor image" | Plain and ordinary meaning.  No construction required. |

At issue here is whether the modification/transformation of the initial cursor image to the specific image can either **changing** the initial cursor image (such as by altering it) or **replacing** it completely, or whether such modification/transformation is limited to one or the other.  The claim language does not support the Amazon-consolidated Defendants' limiting language.  Certainly the specification is not so limiting.  Many preferred embodiments teach modify the cursor by replacing it.  But, the specification broadly teaches that the initial image may be modified to the specific image *in any manner based upon the cursor display code and instructions and cursor image data*.  *See, e.g.* `102 Patent, col. 8, lines 38-44 ("By combining the capabilities of browser extensions, such as indicated by 34 in FIG. 2, with the capabilities to modify cursor 44, it is possible for a WWW server, such as that indicated by 48 in FIG. 2, to control the display characteristics of cursor 44 displayed on video monitor 24 of the user's computer 14.")  There is no limitation as to how the cursor is modified, or how its display characteristics are controlled.  The Court should therefore adopt Plaintiff's construction.  *See also* `102 Patent, 10:23-41 (emphasis added) ("The Cursor Display Code is capable of interacting with the application programming interface 30 of operating system 28 for the purpose of **performing the change, transformation or "swap" of cursor 44** as it is presently displayed on video monitor 24.")

### 6. "specific image"

'102 Patent, Claim 72; '449 Patent, Claims 1, 38, and 53.

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| a "modified cursor image," and not the "cursor image" or the "initial cursor image" | "modified cursor image, which is static and representative of at least a portion of the subject or topic being displayed on the screen" |

Here the dispute centers primarily on Defendants' confusing and wrongful inclusion of a "static" limitation into its proposed construction. Moreover, Defendants' inclusion of the phrase "representative of at least a portion of the subject or topic being displayed on the screen" is duplicative and unnecessary because the parties have already agreed that the term "said specific image includes/including content corresponding to at least a portion of said information that is to be displayed on said display of said user's terminal" means "an image representative of at least a portion of the subject or topic being displayed on the screen." Therefore, the clause "representative of at least a portion of the subject or toping being displayed on the screen" is redundant, unnecessary, and possibly confusing to a jury.

Regarding Defendants' insertion of the manufactured "static" limitation, ***no asserted claim includes the term "static,"*** let alone in connection with the term "specific image." The word is simply nonexistent in any of the language of the asserted claims.

In addition, the Amazon-consolidated Defendants' proposed "static" limitation contradicts the specification, which describes examples of cursor images which can be transformed into non-static images, such as text or numbers," "Right-Click Now" or information such as "stock prices, baseball game scores, the temperature in Florida, etc. ***The data can be static, semi-static (i.e. updated periodically), or dynamic (updated frequently possibly incorporating available***

*streaming-data and data-compression technologies)*." *Id.* at col. 17, lines 5-61 (emphasis added).

Thus, the specification shows specific images need not be static. Indeed, the specification expressly describes a "dynamic cursor image" that could be used to "show a person holding a straw in such a way that the straw always points from the user towards the top of the Fizzy bottle, no matter where the cursor moves on the screen." *Id.* at col. 17, lines 15-31. The specification also describes additional "examples of modification to the cursor include rendering the cursor as a baseball bat (on a site with sports information), a pink but otherwise standard-shaped pointer (on a site about the Pink Panther), a witch-on-a-stick to celebrate Halloween, the Statue of Liberty to celebrate the Fourth of July, etc. All of the foregoing cursor images *could be enhanced with related animations, such as the bat hitting the ball*." *Id.* at col. 17, lines 32-40 (emphasis added). Such are examples are of dynamic specific images, not "static" ones. Therefore, even if the Amazon Defendants' proposed construction should be rejected.

   7.    **"tracks a movement"**

          '241 Patent, Claim 35.

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "moves according to a movement [of the modified cursor]" | Plain and ordinary meaning. No construction required. |

The claim term "tracks a movement" is used in connection with the following phrase in the Claim 35 of the '241 Patent, "wherein the visual image includes promotional material, and the visual image tracks a movement of the modified cursor image." The primary reason Plaintiff believe that this construction of this claim term be adopted is that there should be no jury confusion that the term "tracks a movement" is somehow limited to some kind of a one-for-one linear relationship, or specific positional relationship (i.e. from behind). As the specification explains,

the visual image may move or change in a non-linear way relative to the movement of the modified cursor image. For example, the visual image in the exemplary "Fizzy" preferred embodiment of "a person holding a straw in such a way that the straw always points from the user towards the top of the Fizzy bottle, no matter where the cursor moves on the screen" (*see* '102 Patent, col. 17, lines 15-31). In this embodiment, the visual image of the person holding a straw tracks a movement of the modified cursor image because the visual image moves in orientation and changes in appearance according to the movement of the modified cursor image. Plaintiff's proposed construction precludes any jury confusion that the term "tracking" is limited to moving in some kind of a one-for-one linear or positional relationship, inconsistent with the specification. The Court should therefore adopt Plaintiff's proposed construction.

## CONCLUSION

As discussed above, Plaintiff's proposed constructions are well supported by the claim language and the specification. The Amazon-consolidated Defendants' proposed constructions are not supported by the claim language or specification. For all of the foregoing reasons, Plaintiff respectfully asks that this Court adopt the constructions that Plaintiff has proposed herein.

Dated: June 21, 2023

Respectfully submitted,

**BUETHER JOE & COUNSELORS, LLC**

By:  /s/ Eric W. Buether
Eric W. Buether (Lead Counsel)
State Bar No. 03316880
Eric.Buether@BJCIPLaw.com
Christopher M. Joe
State Bar No. 00787770
Chris.Joe@BJCIPLaw.com
Kenneth P. Kula
State Bar No. 24004749
Ken.Kula@BJCIPLaw.com
Michael W. Doell
State Bar No. 24127525
Mike.Doell@ BJCIPLaw.com

1700 Pacific Avenue
Suite 4750
Dallas, Texas 75201
Telephone:     (214) 466-1270
Facsimile:     (214) 635-1842

**SETHLAW PLLC**

Sandeep Seth
Texas State Bar No. 18043000
ss@sethlaw.com
700 Milam Street, Suite 1300
Houston, Texas 77002
Telephone:     (713) 244-5017
Facsimile:     (713) 244-5017

**ATTORNEYS FOR PLAINTIFF**
**LEXOS MEDIA IP, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a) on June 21, 2023.  Any other counsel of record will be served by facsimile transmission and first class mail.

*/s/ Eric W. Buether*
Eric W. Buether