Trials@uspto.gov                  Paper 21
Tel: 571-272-7822        Entered: April 3, 2020

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

RALPH LAUREN CORPORATION,
Petitioner,

v.

LEXOS MEDIA IP, LLC,
Patent Owner.

_____

IPR2018-01749
Patent 5,995,102

_____

Before PHILLIP J. KAUFFMAN, J. JOHN LEE, and SHARON FENICK,
*Administrative Patent Judges.*

FENICK, *Administrative Patent Judge.*

DECISION
Final Written Decision
Determining Some Challenged Claims Unpatentable
*35 U.S.C. § 318(a) and 37 C.F.R. § 42.73*

IPR2018-01749
Patent 5,995,102

# I.  INTRODUCTION

Ralph Lauren Corporation ("Petitioner") filed a Petition (Paper 2, "Pet."), requesting an *inter partes* review of claims 70–73 ("challenged claims") of U.S. Patent No. 5,995,102 (Ex. 1001, "the '102 patent").  Lexos Media IP, LLC ("Patent Owner") waived its right to file a preliminary response.  Paper 6.  Applying the standard set forth in 35 U.S.C. § 314(a), we instituted an *inter partes* review of the challenged claims of the '102 patent on the grounds asserted in the Petition.  Paper 7 ("Inst. Dec.").  Following institution, Patent Owner submitted a Response (Paper 14, "PO Resp."), Petitioner filed a Reply (Paper 15, "Pet. Reply"), and Patent Owner filed a Sur-Reply (Paper 16, "PO Sur-Reply").  An Oral Hearing on this matter and a related case (IPR2018-01755) was held on January 6, 2020.  The Hearing Transcript ("Tr.") is included in the record as Paper 20.

We have jurisdiction under 35 U.S.C. § 6(b)(4).  This Final Written Decision issues under 35 U.S.C. § 318(a).  Having considered the evidence of record, and for the reasons discussed below, Petitioner has demonstrated by a preponderance of the evidence that claims 71 and 73 of the '102 patent are unpatentable under 35 U.S.C. § 103(a), but has not demonstrated by a preponderance of the evidence that claims 70 and 72 of the '102 patent are unpatentable.

## II.      BACKGROUND

### *A.    Real Parties in Interest*

Petitioner identifies itself and Club Monaco Corporation, Club Monaco US LLC, Ralph Lauren Media LLC, PRL USA Holdings, Inc., and Adobe Systems Incorporated as real parties in interest.  Pet. 1.  Patent Owner identifies itself as the real party in interest, and notes that Cote IP Services,

2

IPR2018-01749
Patent 5,995,102

LLC and Lexos Media, Inc. each own 50% of Patent Owner Lexos Media IP, LLC's stock.  Paper 3, 2.

## B.   Related Proceedings

Petitioner and Patent Owner each indicate that the '102 patent is at issue in *Lexos Media IP, LLC v. Ralph Lauren Corp. et al.*, No. 1:17-cv-01319-LPS (D. Del.).  Pet. 1–2; Paper 3, 2.  Petitioner and Patent Owner additionally indicate that the '102 patent is at issue in *Lexos Media IP, LLC v. Jos A Bank Clothiers, Inc.*, No. 1:17-cv-01317 (D. Del).  Pet. 2; Paper 3, 2.  Patent Owner additionally indicates that the '102 patent is at issue in *Lexos Media IP, LLC v. TJX Cos., Inc.*, No. 1:17-cv-01320 (D. Del), and *Lexos Media IP, LLC v. Boscov's Department Store, LLC*, No. 2-17-cv-00373 (E. D. Tx.).  Paper 3, 2–3.  Along with these pending litigations, Petitioner and Patent Owner describe or list additional, now-terminated, cases in which Patent Owner asserted the '102 patent and/or U.S. Patent No. 6,118,449 (Ex. 1002, "the '449 patent"), which claims priority from the '102 patent.  Pet. 2; Paper 3, 2–4.  The '449 patent is the subject of IPR2018-01755, filed by Petitioner, in which a final written decision was issued on March 25, 2020.  Pet. 2; Paper 3, 4; *Ralph Lauren Corp. v. Lexos Media IP, LLC*, IPR2018-01755, Paper 22.

## C.   Overview of the '102 Patent

The '102 patent is directed to "[a] system for modifying a cursor image, as displayed on a video monitor of a remote terminal, to a specific image having a desired shape and appearance."  Ex. 1001, code (57).  The context of the invention relates to a graphical user interface in which a pointing device is used by the user to navigate a video display, and in which movement of the pointing device is indicated by a corresponding movement

3

IPR2018-01749
Patent 5,995,102

of a cursor on the video display. *Id.* at 8:24–37. A generic cursor may be an arrow, pointing hand, hourglass, etc. *Id*. at 3:57–61. The '102 patent relates to changing that generic cursor by sending data and control signals from a remote computer to replace such a cursor with a cursor having an appearance that is associated with other content being displayed to the user, e.g., a logo, mascot, or an image of a product or service, related to the other content being displayed to the user. *Id*. at 3:4–9, 17:5–18:3. Figure 8 of the '102 patent, reproduced below, shows a web page according to the invention.



FIG. 8

In Figure 8, shown above, web page 60a is displayed to a user, including banner ad 62 for cola. *Id.* at 13:31–37. The cursor to be used with this web page changes from a standard cursor (e.g., an arrow) to cola-bottle-shaped cursor 44a in association with the banner ad 62. *Id.*

The '102 patent describes interactions between a server system and a user's terminal to effect the cursor change. *Id.* at 4:4–9, 5:37–49, 5:48–65, 7:16–40. The user terminal is controlled by an operating system ("OS"), and

IPR2018-01749
Patent 5,995,102

application programs such as a browser running on the user terminal use an application programming interface ("API") to interface with the OS.  *Id.* at 7:29-40, Fig. 2.

The server system transmits specified content information to the user terminal, including information to be displayed on the user's computer (such as a hypertext markup language ("HTML") web page), cursor display instruction, and cursor display code.  *Id.* at 8:4–23.  The cursor display instruction indicates where the cursor image data corresponding to the new appearance of the cursor resides.  *Id.* at 8:49–64.  The cursor display code causes the user's terminal to display that cursor image data in place of the original cursor, using the API of the operating system to effect these changes.  *Id.* at 8:34–37, 8:52–57; 13:19–30.

### D.    Illustrative Claims

All of the challenged claims are independent.  Claims 70 is reproduced below, with formatting changes for readability.

Claim 70 recites:

70. [Preamble][1]  A server system for modifying a cursor image to a specific image having a desired shape and appearance displayed on a display of a remote user's terminal, said system comprising:
    [a] cursor image data corresponding to said specific image;
    [b] cursor display code, said cursor display code operable to modify said cursor image; and
    [c.i] a first server computer for transmitting specified content information to said remote user terminal,

        [c.ii] said specified content information including at least

---

[1] The Petition provides bracketed labels for the elements of the independent claims.  *See, e.g.*, Pet. 31–44; Ex. 1008.  For clarity, we use these labels in this Decision.

5

IPR2018-01749
Patent 5,995,102

> one cursor display instruction indicating a location of said cursor image data, said cursor display instruction and said cursor display code operable to cause said user terminal to display a modified cursor image on said user's display in the shape and appearance of said specific image,
>
> [c.iii] wherein said specified content information is transmitted to said remote user terminal by said first server computer responsive to a request from said user terminal for said specified content information, and wherein said specified content information further comprises information to be displayed on said display of said user's terminal,
>
> [c.iv] said specific image including content corresponding to at least a portion of said information to be displayed on said display of said user's terminal, and wherein said cursor display code is operable to process said cursor display instruction to modify said cursor image to said cursor image in the shape and appearance of said specific image responsive to movement of said cursor image over
>
> a display of said at least a portion of said information to be displayed on said display of said remote user's terminal.

Ex. 1001, 23:15–46.

Claim 71 is identical to claim 70, with the exception of the recitation in corresponding limitation [c.iv] that the cursor display code is operable to process the cursor display instruction to modify the cursor image "responsive to movement of said cursor image *over a specified location on said display of said user's terminal*."  *Id.* at 23:47–24:9 (emphasis added).

Claim 72 is reproduced below, with formatting changes for readability.

IPR2018-01749
Patent 5,995,102

> 72. [Preamble] A method for modifying an initial cursor image displayed on a display of a user terminal connected to at least one server, comprising:
>
> [a] receiving a request at said at least one server to provide specified content information to said user terminal;
>
> [b] providing said specified content information to said user terminal in response to said request, said specified content information including at least one cursor display instruction and at least one indication of cursor image data corresponding to a specific image; and
>
> [c.i] transforming said initial cursor image displayed on said display of said user terminal into the shape and appearance of said specific image in response to said cursor display instruction, wherein said specified content information includes information that is to be displayed on said display of said user's terminal, wherein said specific image includes content corresponding to at least a portion of said information that is to be displayed on said display of said user's terminal, and
>
> [c.ii] wherein said cursor display instruction indicates a cursor display code operable to process said cursor display instruction to modify said cursor image to said cursor image in the shape and appearance of said specific image responsive to movement of said cursor image over a display of said at least a portion of said information to be displayed on said display of said user's terminal.

*Id.* at 24:9–36.

Claim 73 is identical to claim 72, with the exception of the recitation in corresponding limitation [c.ii] that the cursor display code is operable to process the cursor display instruction to modify the cursor image "responsive to movement of said cursor image over *a specified location on said display of said user's terminal*." *Id.* at 24:37–62 (emphasis added).

7

IPR2018-01749
Patent 5,995,102

### E.    Evidence Relied Upon by Petitioner

Petitioner relies on the following references:

| Reference | | Issue Date | Exhibit |
|---|---|---|---|
| Malamud et. al. ("Malamud") | U.S. Patent No. 6,437,800 B1 | Aug. 20, 2002 (filed Oct. 26, 1994) | Ex. 1004 |
| Anthias | U.S. Patent No. 5,920,311 | July 6, 1999 (filed Dec. 6, 1993) | Ex. 1005 |
| Baker | U.S. Patent No. 5,715,416 | Feb. 3, 1998 (filed Sept. 30, 1994) | Ex. 1007 |

Petitioner also relies on a declaration from Benjamin B. Bederson, Ph.D. (Ex. 1003).

### F.    Asserted Grounds

Petitioner presents the following grounds of unpatentability, each on the basis of pre-AIA 35 U.S.C. § 103(a):

| Claims Challenged | References |
|---|---|
| 70–73 | Malamud, Anthias |
| 70–73 | Baker, Anthias |

Pet. 1.

## III.  ANALYSIS

### A.  Legal Standards

It is a petitioner's burden to demonstrate unpatentability.  *See Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015) (citing *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1326–27 (Fed. Cir. 2008)).  Petitioner bears "the burden of proving

IPR2018-01749
Patent 5,995,102

. . . unpatentability by a preponderance of the evidence." 35 U.S.C.
§ 316(e); *see* 37 C.F.R. § 42.1(d) (2018).

A patent claim is unpatentable under 35 U.S.C. § 103 if the
differences between the claimed subject matter and the prior art are "such
that the subject matter as a whole would have been obvious at the time the
invention was made to a person having ordinary skill in the art to which said
subject matter pertains." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406
(2007). The question of obviousness is resolved based on underlying factual
determinations, including: (1) the scope and content of the prior art; (2) any
differences between the claimed subject matter and the prior art; (3) the level
of skill in the art; and (4) objective evidence of nonobviousness, i.e.,
secondary considerations.[2] *Graham v. John Deere Co.*, 383 U.S. 1, 17–18
(1966).

Additionally, the obviousness inquiry typically requires an analysis of
"whether there was an apparent reason to combine the known elements in
the fashion claimed by the patent at issue." *KSR*, 550 U.S. at 418 (citing
*In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006) (requiring "articulated
reasoning with some rational underpinning to support the legal conclusion of
obviousness")); *see In re Warsaw Orthopedic, Inc.*, 832 F.3d 1327, 1333
(Fed. Cir. 2016) (citing *DyStar Textilfarben GmbH & Co. Deutschland KG
v. C. H. Patrick Co.*, 464 F.3d 1356, 1360 (Fed. Cir. 2006)). "To satisfy its
burden of proving obviousness, a petitioner cannot employ mere conclusory
statements. The petitioner must instead articulate specific reasoning, based
on evidence of record, to support the legal conclusion of obviousness."

---

[2] The record contains no evidence relating to secondary considerations.

IPR2018-01749
Patent 5,995,102

*In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1380 (Fed. Cir. 2016).

We analyze the asserted grounds with the principles stated above in mind.

### B.    Level of Ordinary Skill in the Art

Petitioner proposes that a person of ordinary skill in the art would have had "at least a master's degree in Computer Science, Computer Engineering, or a related field, or hold a bachelor's degree in Computer Science, Computer Engineering, or equivalent and have at least two years of relevant work experience in the fields of UI [(user interface)] design and OSs." Pet. 10–11. In the Institution Decision, we preliminarily adopted Petitioner's proposed definition, noting that the prior art in this case demonstrated the level of ordinary skill in the art at the time of the invention. Inst. Dec. 9 (citing *Okajima v. Bourdeau*, 261 F.3d 1350, 1355 (Fed. Cir. 2001)). Patent Owner does not comment on or dispute Petitioner's proposal, and instead cites *Okajima*'s holding regarding the level of skill in the prior art without raising any issues regarding whether the prior art here reflects a level of ordinary skill different from that proposed by Petitioner. PO Resp. 6 (citing *Okajima*, 261 F.3d at 1355). We adopt Petitioner's definition as consistent with the '102 patent and the asserted prior art.

### C.    Claim Construction

Petitioner and Patent Owner agree that the '102 patent is expired. Pet. 11; PO Resp. 7; *see also* Ex. 1001, code (22). "[T]he Board's review of the claims of an expired patent is similar to that of a district court's review." *In re Rambus Inc.*, 694 F.3d 42, 46 (Fed. Cir. 2012). In this context, claim terms generally are given their ordinary and customary meaning, as understood by a person of ordinary skill in the art, at the time of the

IPR2018-01749
Patent 5,995,102

invention, taking into consideration the language of the claims, the specification, and the prosecution history of record, because the expired claims are not subject to amendment. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–19 (Fed. Cir. 2005) (en banc).

Only terms that are in controversy need to be construed, and then only to the extent necessary to resolve the controversy. *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999). The Petitioner proposed construction of several claim terms in the Petition. Pet. 12–18. However, none of these claim terms require construction to resolve the controversy. Petitioner also argued for a construction of an additional term ("wherein said specified content information further comprises information to be displayed on said display of said user's terminal") in its Reply. Pet. Reply 10–11 (emphasis omitted). Patent Owner contends that this argument is a new argument raised improperly for the first time in the Reply. PO Sur-Reply 10–11. We agree. Pursuant to 37 C.F.R. § 42.23(b), a reply "may only respond to arguments raised in the corresponding . . . patent owner response." *See also Acceleration Bay, LLC v. Activision Blizzard Inc.*, 908 F.3d 765, 775 (Fed. Cir. 2018) (concluding that the Board did not abuse its discretion in refusing to consider portions of a reply declaration "rais[ing] a new obviousness argument for [a claim] limitation that could have been made in the petition" but was not); *Intelligent Bio-Sys., Inc. v. Illumina Cambridge, Ltd.*, 821 F.3d 1359, 1369–70 (Fed. Cir. 2016) (concluding that the Board did not abuse its discretion in refusing to consider reply brief arguments advocating a "new theory" of unpatentability under 37 C.F.R. § 42.23(b)). Therefore, we will not consider the new construction proposed for this claim term.

IPR2018-01749
Patent 5,995,102

D.     *Alleged Obviousness of Claims 70–73 over Malamud and Anthias*

Petitioner argues that claims 70–73 would have been obvious over a combination of Malamud and Anthias.  Pet. 31–49.  For the reasons discussed below, we determine that Petitioner has not demonstrated the unpatentability of claims 70 and 72 over Malamud and Anthias, but has demonstrated the unpatentability of claims 71 and 73 over Malamud and Anthias.

*1. Overview of Malamud (Ex. 1004)*

Malamud relates to information cursors for use in an operating system or application programs.  Ex. 1004, code (57).  "[An] information cursor includes a pointing portion to point to objects displayed on a video display and an information portion to display information about an object to which the pointing portion points."  *Id.*  One such information cursor is a "combined name and preview cursor," which is shown in Malamud's Figure 4, reproduced below:



12

IPR2018-01749
Patent 5,995,102

Figure 4 illustrates combined name and preview cursor 38 pointing to book icon 32. *Id.* at 4:4–18. Combined name and preview cursor 38 includes pointing portion 28 in the shape of an arrow pointing to book icon 32. *Id.* at 3:65–68, 4:4–6, 4:8–9. Preview portion also includes name box 30, which displays the name of the object the cursor is pointing to. *Id.* at 3:39–43, 4:9–13. Lastly, combined name and preview cursor 38 includes preview portion 36, which holds a preview of the contents of the object the cursor is pointing to. *Id.* at 4:14–18. Other cursors include only some of this information; a name cursor may include only the pointing portion and the name, and a preview cursor only the pointing portion and preview portion. *Id.* at 3:30–43, 3:59–4:3.

   To implement the display of cursors, the OS of the terminal maintains a message queue for each program that generates windows, and when a mouse event occurs, such as positioning or a mouse click, a message from the OS is placed into the queue for the program. *Id.* at 4:56–5:9. The application program can respond by passing, to the OS, information for the cursor, e.g., a text string for a name box and a pointer to graphical information for a preview portion. *Id.* at 5:47–65.

### 2. Overview of Anthias (Ex. 1005)

   Anthias relates to a distributed window presentation system in which graphics data, generated in a remote system, is displayed for a user. Ex. 1005, code (54), (57), 1:24–33. Anthias refers to the remote system as the client, and the user's system as the server presentation system. *Id.* 1:24–33. The remote system can associate a particular cursor type with a display area displayed at the user's system, and different cursors can be displayed in different parts of the display area. *Id.* at 4:16–23. For example, the cursor

IPR2018-01749
Patent 5,995,102

might change shape, color, or flashing frequency as it passes from the background window areas to an area associated with an application. *Id.* at 3:4–7, 4:21–23.

### 3.  Claim 70

Petitioner argues that claim 70 would have been obvious over Malamud and Anthias.  Pet. 31–44.

> a.  *Claim 70 [Preamble]: A server system for modifying a cursor image to a specific image having a desired shape and appearance displayed on a display of a remote user's terminal*

Petitioner argues that Malamud's information cursor teaches the modification of a cursor to appear as a specific image having a desired shape and appearance, including an information portion, which is displayed on a user's terminal.  Pet. 31–32 (citing Ex. 1004, 3:59–4:3; Ex. 1003 ¶ 116). Petitioner argues that a "server" and "remote user's terminal" are found in Anthias's teaching of a data processing system implemented with a client/server model, in which an application running on a remote system (denoted "client" in Anthias) controls a display on a terminal, including the use of a modified cursor in certain window areas. *Id.* at 32 (citing Ex. 1005, 1:24–33; Ex. 1003 ¶ 117).

Petitioner contends that one of ordinary skill would have combined Malamud and Anthias, as contemporary references each dealing with responding to a cursor location on a screen, in order to reduce storage requirements and processing overhead at the user terminal. *Id.* at 29–30, 32 (citing Ex. 1005, 2:30–34; Ex. 1003 ¶¶ 112, 117.)

14

IPR2018-01749
Patent 5,995,102

Patent Owner does not make any arguments specific to the preamble of claim 70 or directed to the propriety of the combination of Malamud and Anthias. *See, e.g.*, PO Resp. 8–17.

Generally, a preamble does not limit a claim. *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002). Here, we need not decide whether claim 70's preamble limits the claims because, whether the preamble is limiting or not, we agree with Petitioner that the combination of Malamud and Anthias teaches the preamble. Specifically, the combination of Anthias' teaching of a data processing system implemented with a client/server model, and Malamud's teaching regarding modification of a cursor displayed to a user, teaches or suggests this preamble. Ex. 1004, 3:59–4:3; Ex. 1005, 1:24–33; Ex. 1003 ¶¶ 116–118.

> b. *Claim 70[a]: cursor image data corresponding to said specific image*

Petitioner argues that Malamud teaches limitation [a]. Pet. 35–36. Petitioner argues that Malamud discloses that the graphical preview portion of its information cursor is stored as a bitmap image. *Id.* (citing Ex. 1004, 5:16–18, 5:59–62; Ex. 1003 ¶ 122). Petitioner contends that the pointers to the bitmaps teach the cursor image data of limitation [a]. *Id.*

Patent Owner does not make any arguments specific to this limitation of claim 70. *See, e.g.*, PO Resp. 8–17.

We agree with Petitioner that Malamud teaches limitation [a] of claim 70. Specifically, Malamud teaches that appearance of cursors is dictated by bitmaps stored in an operating system, and that a pointer to a bitmap is used to identify which bitmap should be used for a cursor. Ex. 1004, 5:16–18, 5:59–62.

IPR2018-01749
Patent 5,995,102

> c. *Claim 70[b]: cursor display code, said cursor display
> code operable to modify said cursor image*

Petitioner contends Malamud's conventional OS would be understood by a person of ordinary skill in the art to "use[] functions or applications to display and modify graphics" on the user interface including cursors. Pet. 36 (citing Ex. 1004, 3:6–8, 5:47–53, Fig. 6; Ex. 1003 ¶ 125). Petitioner specifically notes Malamud's discussion relating to how the cursor display is effectuated, in which a window procedure "passes a message to the operating system . . . that tells the operating system what type of cursor to display and sets forth the contents and type of information to be displayed in the cursor." *Id.* at 37 (quoting Ex. 1004, 5:49–52). Thus, Petitioner argues that Malamud's functions or applications in the OS that display the changeable information cursors teach the cursor display code operable to modify the cursor image. *Id.* at 36–37.

Patent Owner does not make any arguments specific to this limitation of claim 70. *See, e.g.*, PO Resp. 8–17.

We agree with Petitioner that one of ordinary skill in the art would have understood Malamud to teach or suggest limitation [b] of claim 70. Specifically, Malamud teaches messages passed to the operating system relating to the display of cursors with different content (e.g., name or preview cursors), and one of ordinary skill would have understood that code comprising functions or applications in the OS would be used to modify the cursor image. Ex. 1004, 5:16–18, 5:47–53; 5:59–62; Ex. 1003 ¶¶ 125–126.

16

IPR2018-01749
Patent 5,995,102

> ### d. *Claim 70[c.i]: a first server computer for transmitting specified content information to said remote user terminal*

Petitioner argues that the combination of Malamud and Anthias teaches limitation [c.i]. Pet. 37–38. In the Petition, Petitioner argues with respect to this limitation that:

> Malamud, in view of Anthias, discloses an application program's window procedure ("*first server computer*") and an OS ("*remote user terminal*") on a client-server network. Malamud discloses that an application program's window procedure ("*first server computer*") transmits a message ("*specified content information*") to the OS ("*remote user terminal*"), and the functions and applications it employs ("*cursor display code*") to display its information portion.

*Id.* (internal citations omitted) (citing Ex. 1004, 4:53–54, 5:53–57, Ex. 1003 ¶ 130). The cited portions of Malamud describe the OS's control over the windowing user interface, and describe the OS transmitting a message requesting that an information cursor be displayed. Ex. 1004, 4:53–54, 5:53–57. Petitioner's contention is that the limitation's "specified content information" is taught by Malamud's transmitted message, which is described in Malamud as a message that "tells the operating system what type of cursor to display and sets forth the contents and type of information to be displayed in the cursor." *Id.* at 5:49–52. Petitioner additionally identifies this message as the specified content information in arguments relating to limitation [c.ii] and [c.iii]. Pet. 38–41.

Our Decision on Institution noted the Petition's reliance on Malamud's message sent relating to a preview cursor to teach the "specified content information" of this claim limitation. Inst. Dec. 15–19. In the Reply, however, Petitioner argues that the "specified content information"

17

IPR2018-01749
Patent 5,995,102

includes any information to be displayed on the client, such as "all information necessary to display [a] website" and, more broadly, "all graphics data."  Pet. Reply 5–11.  Petitioner argues that the Petition referred to the discussion of the preamble and the teachings of Anthias "for disclosure of the transmission of launch information, including underlying objects," and that the "*specified content information* would have included all of the information to be displayed on the *remote user terminal* on launch, including the objects over which cursors could later be moved and modified."  *Id.* at 7; Tr. 10:4–15, 21:24–23:1, 25:2–27:17.

However, we agree with the Patent Owner that the Petition did not relate the "specified content information" broadly to all information transferred, but rather specifically to information in a message concerning the display of an information cursor.  *See* PO Resp. 11 n.1, 13–14; PO Sur-Reply 2–3.  While Petitioner argues that the reference to Anthias' teachings as addressed in the portion of the Petition relating to the preamble of claim 70 teaches the origination at a server of all graphics data, the Petition describes the "specified content information" as taught by the message relating to cursor display.  Pet. 37–38.  Even when describing Anthias' teachings, the Petition and the cited declaration describe the combination in terms of messages regarding the movement of a cursor and responsive messages regarding cursor display, not other information transferred between the remote system and the user's system.  *Id.* at 32; Ex. 1003 ¶¶ 117–118.

A petitioner must choose which grounds of invalidity to assert in the petition and "the expedited nature of IPRs bring with it an obligation for petitioners to make their case in their petition to institute."  *See Intelligent*

18

IPR2018-01749
Patent 5,995,102

*Bio-Sys.*, 821 F.3d at 1369; *Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1286 (Fed. Circ. 2017) (a petitioner is foreclosed from "shifting" in post-petition arguments to a new theory of *prima facie* obviousness based on a different passage of a prior art reference than was used in the petition); PTAB Consolidated Trial Practice Guide November 2019,[3] 73 ("Petitioner may not submit new evidence or argument in reply that it could have presented earlier, e.g., to make out a prima facie case of unpatentability."); Trial Practice Guide Update August 2018,[4] 14 (same).

Therefore, we evaluate Petitioner's arguments with respect to limitation [c.i] relying upon Malamud's message relating to a preview cursor to teach the "specified content information."  Patent Owner does not make any arguments relating to whether Malamud's message, in view of the teachings of Anthias, teaches limitation [c.i] of claim 70.  *See, e.g.*, PO Resp. 8–17.

We agree with Petitioner that the combination of Malamud and Anthias teaches limitation [c.i] of claim 70.  Specifically, Malamud teaches the transmission of a message relating to the display of information cursors (e.g., name or preview cursors), and Anthias teaches or suggests the server/client configuration.  Ex. 1004, 4:53–54, 5:53–57; Ex. 1005, 1:24–33; Ex. 1003 ¶¶ 117, 129–131.

---

[3] Available at https://www.uspto.gov/TrialPracticeGuideConsolidated

[4] Available at https://go.usa.gov/xU7GP

IPR2018-01749
Patent 5,995,102

> e. *Claim 70[c.ii]: said specified content information including at least one cursor display instruction indicating a location of said cursor image data, said cursor display instruction and said cursor display code operable to cause said user terminal to display a modified cursor image on said user's display in the shape and appearance of said specific image*

Petitioner, as discussed *supra*, argues that the "cursor image data" is taught by Malamud's preview portion of an information cursor, which is stored as a bitmap.  Consistently, Petitioner contends that the pointer to the location of that bitmap for the preview portion, described by Malamud as being transmitted from the window procedure to the OS, teaches or suggests limitation [c.ii]'s "at least one cursor display instruction indicating a location of said cursor image data."  Pet. 38–40 (citing Ex. 1004, 5:57–62; Ex. 1003 ¶ 136).  Petitioner additionally notes that this pointer and the functions or applications in the OS (which Petitioner argues teaches cursor display code) operate together to cause the display of a modified cursor image including the preview portion.  Pet. 38 (citing Ex. 1004, 3:6–8, 4:53–55, 5:47–57, Fig. 6; Ex. 1003 ¶ 134).

Patent Owner does not make any arguments specific to this limitation of claim 70.  *See, e.g.*, PO Resp. 8–17.

We agree with Petitioner that Malamud teaches limitation [c.ii] of claim 70.  Specifically, Malamud's disclosure that "if the cursor to be displayed is a preview cursor . . . a message . . . includ[ing] a pointer to a bitmap of graphical information that the operating system should use in the preview portion," teaches a cursor display instruction including a location of the cursor image data, and that instruction, along with the cursor display code, is used to cause the terminal to display a modified cursor.  Ex. 1004

20

IPR2018-01749
Patent 5,995,102

5:57–62 (element number omitted); *see* Ex. 1004 3:6–8, 4:53–55, 5:47–57,
Fig. 6; Ex. 1003 ¶¶ 134, 136.

> f.  *Claim 70[c.iii]: wherein said specified content
> information is transmitted to said remote user terminal
> by said first server computer responsive to a request from
> said user terminal for said specified content information,
> and wherein said specified content information further
> comprises information to be displayed on said display of
> said user's terminal*

Petitioner argues in the Petition, as detailed *supra* regarding
limitations [c.i] and [c.ii], that the cursor-related message transmitted by a
window procedure to the OS in Malamud teaches the transmission of
specified content information.  Consistent with those arguments, with
respect to limitation [c.iii], Petitioner argues in the Petition that transmission
is responsive to the use of the mouse to move a cursor position within a
given window, which causes the OS to generate and send a message
requesting that the program's window procedure send a message back
identifying information regarding the cursor to be displayed.  Pet. 40–41
(citing Ex. 1004, 5:7–10, 5:22–28).  Petitioner contends that the movement
of the cursor position teaches the request by the user terminal (OS) to the
first server computer (window procedure) for content information.  *Id.*
Petitioner additionally notes that the message in Malamud transmitted by the
window procedure to the OS also, in the case of a combined name and
preview cursor, includes the name of the object the cursor is pointing to, to
be displayed in the information cursor of Malamud.  Pet. 40 (citing
Ex. 1004, 4:4–17; Ex. 1003 ¶ 140.)  Petitioner, thus, argues that the
"information to be displayed on said display of said user's terminal" is
taught or suggested by the name portion of the preview cursor.  *Id.*

IPR2018-01749
Patent 5,995,102

In the Reply, consistent with its other reply arguments regarding "specified content information," Petitioner additionally argues that the "request from said user terminal for said specified content information" is taught by Malamud's UI program, which, when launched by a user, "sends the necessary information that the OS needs to render the associated window's contents." Pet. Reply 7–8 (citing Pet. 19–20; Ex. 1003 ¶¶ 97, 118, 129, 415–416; Ex. 1004, 4:53–65); Tr. 19:16–10:18. However, the argument presented in the Petition for this claim limitation is limited to the teachings of Malamud for display of a cursor and modifying or moving the cursor. Pet. 40–41. We will, therefore, not consider the argument in the Reply that the request for the contents of a window in Malamud teaches or suggests the request of limitation [c.iii]. *See Intelligent Bio-Sys.*, 821 F.3d at 1369; *Wasica Fin.,* 853 F.3d at 1286. Petitioner argues in its Reply that the object in Malamud is the claimed "information to be displayed," presenting examples from the Petition describing the operation of Malamud, e.g., to display "preview and name portions" of an information cursor when a user positions a cursor over an object displayed in a window. Pet. Reply 12–13 (citing Pet. 20, 30). However, while the Petition does describe the operation of Malamud more generally, the "information to be displayed" in the Petition is only argued to be taught by the name of the object "in the case of a combined name and preview cursor." Pet. 41.

Because we must evaluate only the arguments presented in the Petition, and not additional arguments from the Reply relating to other requests or information to be displayed, we only evaluate Petitioner's arguments with respect to limitation [c.iii] and the teachings of Malamud

relating to a request from the user terminal for the message relating to a preview cursor.  Pet. 40–41.

Patent Owner does not make any arguments relating to whether these teachings of Malamud, in view of the teachings of Anthias, teach or suggest limitation [c.iii] of claim 70.  *See, e.g.*, PO Resp. 8–17.

We agree with Petitioner that the combination of Malamud and Anthias teaches limitation [c.iii] of claim 70.  Specifically, Malamud teaches the request for and transmission of a message relating to the display of cursors with different content (e.g., name or preview cursors), and Anthias teaches or suggests the server/client configuration.  Ex. 1004, 4:53–54, 5:7–10, 5:22–28; Ex. 1003 ¶ 140.  Additionally, Malamud teaches that the request comprises "information to be displayed on said display of said user's terminal" in disclosing that the message includes information that will be displayed in the Malamud information cursor.  Ex. 1004, 4:4–17, 5:54–62; Ex. 1003 ¶ 140.

> g. *Claim 70[c.iv]: said specific image including content corresponding to at least a portion of said information to be displayed on said display of said user's terminal, and wherein said cursor display code is operable to process said cursor display instruction to modify said cursor image to said cursor image in the shape and appearance of said specific image responsive to movement of said cursor image over a display of said at least a portion of said information to be displayed on said display of said user's terminal*

With respect to limitation [c.iv] of claim 70, Petitioner argues in the Petition that Malamud's OS functions and applications are used to display cursors "in their initial, standard forms[,] as well as any subsequent modifications."  *Id.* at 42–43 (citing Ex. 1004, 5:59–62; Ex. 1003 ¶¶ 144–

IPR2018-01749
Patent 5,995,102

145.)  Petitioner contends that Malamud's information cursors, when pointing to an object displayed on the screen, are modified so that the modified cursor's preview portion displays a preview of the contents of that object.  Pet. 43 (citing Ex. 1004, 3:61–63).

In our Institution Decision, we noted that because the Petition relied on information to be displayed in Malamud's information cursor as teaching or suggesting "information to be displayed on said display of said user's terminal," the Petition did not establish sufficiently that Malamud teaches or suggests the claimed modification in the cursor image "in response to movement of said cursor image over a display of said at least a portion" of that information to be displayed.  Inst. Dec. 18–19.

Patent Owner contends that the Petition's only argument with respect to the modification of a cursor "in response to movement of said cursor image over a display of said at least a portion of said information" is the statement that "[w]hen a preview cursor points to an object displayed on the screen, the cursor is modified so that the preview portion appears displaying graphical data depicting the object's contents."  PO Resp. 14–16 (quoting Pet. 43).  Patent Owner, therefore, argues that "none of Petitioner's argument explains how, when a cursor image is moved 'over a display of' any portion of the *information to be displayed*, the cursor image is modified as recited in" limitation [c.iv].  *Id.* at 15.

Consistent with the other arguments in the Petitioner's Reply, Petitioner argues that the "specified content information" of claim 70 includes Malamud's earlier transmitted launch data "including the objects over which cursors could later moved and modified."  Pet. Reply 5–8, 12–14.  However, this argument, that the "specified content information" is

24

IPR2018-01749
Patent 5,995,102

taught or suggested by data in Malamud and Anthias other than Malamud's information cursor message data, was not made in the Petition, and, thus, we do not consider it to be part of the case for unpatentability in the Petition.

Limitation [c.iv] of claim 70 requires that the cursor image is modified "[in] response to movement of said cursor image over a display of said at least a portion of said information to be displayed on said display of said user's terminal." Petitioner identified the information to be displayed in Malamud as contained in the cursor display message, but has not provided an explanation of how there is "movement of said cursor image" over such information.

In other words, Petitioner has not adequately demonstrated how Malamud (or Anthias) teaches or suggests this limitation because it has failed to explain how Malamud's cursor image could exhibit movement over itself. The modification in limitation [c.iv] occurs in response to movement of "said cursor image" over "a display of said at least a portion of said information to be displayed on said display of said user's terminal." Since the Malamud cursor display message teaches or suggests, according to the Petition, the "said information to be displayed on said display of said user's terminal," and that cursor display message is itself part of the Malamud information cursor (which is used to teach "said cursor image"), the movement described in this claim limitation would be taught only by movement of Malamud's information cursor over a portion of Malamud's information cursor. Pet. 36, 42; Ex. 1004, 2:30–33, 4:4–17, Fig. 4. Petitioner does not demonstrate how such movement would be taught or suggested by Malamud or the proposed combination. Thus, we do not find

IPR2018-01749
Patent 5,995,102

that the preponderance of the evidence supports Petitioner's contentions of unpatentability with respect to limitation [c.iv].

### h.  *Claim 70 – Conclusion*

On this record, we do not find that the preponderance of the evidence supports Petitioner's contentions of unpatentability with respect to the obviousness of claim 70 over the combination of Malamud and Anthias.

### 4.  *Claim 72*

Claim 72 is independent, and Petitioner argues its unpatentability over Malamud and Anthias using similar logic and evidence as those provided for claim 70, including an argument relating to modifying a cursor "[in] response to movement of said cursor image over a display of said at least a portion of said information to be displayed on said display of said user's terminal," echoing the argument provided for corresponding limitations of claim 70.  Pet. 44–49; *compare id.* at 47–48 *with id* at 41–43.  Petitioner again argues with respect to claim 72 that the "specified content information" corresponds to the cursor messages in Malamud relating to new positions for the cursor and type of cursor to be displayed, not other information exchanged with the OS.  *Id.* at 48 (citing Ex. 1004, 4:4–17, 5:54–62; Ex. 1003 ¶ 182).

For the same reasons described with respect to claim 70, the preponderance of the evidence does not support Petitioner's contention that claim 72 is unpatentable as obvious over Malamud and Anthias.

### 5.  *Claims 71 and 73*

### a.  *Claim 71*

Petitioner contends that claim 71 is unpatentable for the same reasons provided for the unpatentability of claim 70.  Pet. 44.  However, claim 71

IPR2018-01749
Patent 5,995,102

recites modification of the cursor "responsive to  movement of said cursor image over a specified location on said display of said user's terminal" and not, as in claim 70, responsive to movement "over a display of said at least a portion of said information to be displayed on said display of said user's terminal."

Petitioner's contentions regarding limitation [c.iv] of claim 71, in which the preview cursor is modified when the cursor is moved to point to an object displayed on the screen do not contain the same flaws noted with respect to claim 70.  Petitioner argues that the functions and applications of the OS are used to display cursors "in their initial, standard forms[,] as well as any subsequent modifications." Pet. 42–43 (citing Ex. 1004, 5:59–62; Ex. 1003 ¶¶ 144–145.)  Petitioner contends that Malamud's information cursors, when pointing to an object displayed on the screen, are modified so that the modified cursor's preview portion displays a preview of the contents of that object. *Id*. at 43 (citing Ex. 1004, 3:61–63).

Patent Owner does not make any arguments regarding the unpatentability of claim 71 over Malamud and Anthias.  Tr. 50:25–51:5.

We agree with Petitioner that Malamud teaches limitation [c.iv] of claim 71.  Malamud discloses an information cursor in which the cursor information is modified in response to movement over a specified location on the user's display.  Ex. 1004, 5:59–62; Ex. 1003 ¶¶ 144–145.  With respect to the other claim elements of claim 71, these are identical to those addressed *supra* with respect to claim 70, and we find in each instance that the combination of Malamud and Anthias teaches or suggests these limitations for the same reasons.  Petitioner has, thus, shown by a

IPR2018-01749
Patent 5,995,102

preponderance of the evidence that claim 71 is unpatentable as obvious over Malamud and Anthias.

### b. *Claim 73*

Claim 73 is an independent method claim, which Petitioner argues is unpatentable using similar logic and evidence as those provided for claims 70–72.  Pet. 49.

Patent Owner does not make any arguments regarding the unpatentability of claim 73 over Malamud and Anthias.  Tr. 50:25–51:5.

We agree with Petitioner that the steps of method claim 73 are taught or suggested in the combination of Malamud and Anthias described above with reference to claim 71.  That is, in the context of a combination with the teachings of a client and server from Anthias, the step of receiving a request at a server is taught or suggested by the combination of Malamud's message sent when a cursor is moved within an application.  The provision of the content information is taught or suggested by the provision in Malamud of a responsive cursor display message.  That message, in Malamud, is provided to the user terminal to cause the transformation of the initial cursor image.

Petitioner has shown by a preponderance of the evidence that claim 73 is unpatentable as obvious over Malamud and Anthias.

### E.    *Alleged Obviousness of Claims 70–73 over Baker and Anthias*

Petitioner argues that claims 70–73 would have been obvious over a combination of Baker and Anthias.  Pet. 49–61.  For the reasons discussed below, we determine that Petitioner has not demonstrated the unpatentability of claims 70–73 over Baker and Anthias.

IPR2018-01749
Patent 5,995,102

*1. Overview of Baker (Ex. 1007)*

Baker describes an interface for accessing information, presented in a pictorial image with an overlaid animated character.  Ex. 1007, code (57). Baker's animated character is responsive to an input device and "roughly corresponds to the cursor or pointer" in a "[w]indows, [i]cons, [m]enus, and [p]ointers" GUI (graphical user interface).  *Id.* at 13:5–29, 2:35–38.  Baker describes the cursor as a component of the animated character, and gives as an example the use of the foot of the animated character as the cursor.  *Id.* at 13:24–29.  Figure 3 of Baker, reproduced below, shows an animated character overlaid on a background image:



FIG.  3

In Figure 3, character 22, including pin 60, is drawn over an image 12. *Id.* at 20:65–21:6.  Character 22 can be moved using arrow keys, or a

IPR2018-01749
Patent 5,995,102

command can be issued that will attach the pin to the image at the indicated location.  *Id.*

Baker teaches that "[a] vendor or advertiser may define and configure a particular pictorial environment for use by a client where the pictures and objects represent the vendor's goods or services."  *Id.* at 11:53–56.  One possibility in such cases is the Baker animated character interacting with an icon on the screen, with both icon and character becoming part of a single animation.  *Id.* at 13:13:49–51.

### a. *Claim 70*

Petitioner argues that claim 70 would have been obvious over Baker and Anthias.  Pet. 53–61.

### *(1) Claim 70 – Preamble and limitations [a] and [b]*

With respect to the preamble, Petitioner argues that Baker's animated character teaches the cursor image, which is modified to a "specific image" when the animated character takes on a new position depending on the location of the cursor on screen.  Pet. 49–50 (citing Ex. 1007, 13:12–13, 13:47–52, 21:6–8; Ex. 1003 ¶ 290).

Petitioner argues that a "server" and "remote user's terminal" are found in Anthias' teaching of a data processing system implemented with a client/server model, in which an application running on a remote system (denoted "client" in Anthias) controls a display on a terminal, including the use of a modified cursor in certain window areas.  *Id.* at 50–51 (citing Ex. 1005, 1:24–33; Ex. 1003 ¶ 291).  Petitioner contends that one of ordinary skill would have combined Baker and Anthias, as contemporary references each dealing with responding to a cursor location on a screen, in order to reduce storage requirements and processing overhead at the user

IPR2018-01749
Patent 5,995,102

terminal. *Id.* at 28–30, 50–51 (citing Ex. 1005, 2:30–34; Ex. 1003 ¶¶ 111–112, 291.)

With respect to limitation [a] of claim 70, Petitioner argues that Baker teaches storing information about the cursor's size and specific position in a "character_model list or array," and that such information is "cursor image data" as per limitation [a]. Pet. 52 (citing Ex. 1007, 23:1–29; Ex. 1003 ¶ 299). Additionally, Petitioner argues that Baker's character_model contains location information for animation frames for the animated cursor, which is also "cursor image data." *Id.* (citing Ex. 1007, 23:24–26; Ex. 1003 ¶ 299).

For limitation [b] of claim 70, Petitioner argues Baker would have been understood by a person of ordinary skill in the art to include the limitation's "functions or applications to display and modify graphics" on the user interface including cursors. Pet. 52–53 (citing Ex. 1007, 2:32–56; Ex. 1003 ¶ 303).

Patent Owner does not make any arguments relating to whether these teachings of Baker and Anthias teach or suggest the preamble or limitations [a] or [b] of claim 70. *See, e.g.*, PO Resp. 19–22.

We agree with Petitioner that the combination of Baker and Anthias teaches the preamble and limitations [a] and [b] of claim 70.

(2) *Claim 70- limitations [c.i], [c.ii], [c.iii], and [c.iv]*

Petitioner argues that the combination of Baker and Anthias teaches limitation [c.i] of claim 70, as Baker describes a pictorial UI system that, together with Anthias' distributed client/server architecture, would teach the first server computer transmitting information used to modify the animated character cursor. Pet. 53 (citing Ex. 1003 ¶¶ 308, 310). Petitioner, as

31

IPR2018-01749
Patent 5,995,102

discussed, argues that the "character_model" as taught in Baker includes
location information for animation frames for the animated cursor. *Id*. at 52.
In order to show how Baker teaches or suggests the transmission (as
required in limitation [c.i]) by a first server computer of specified content,
including (as required in limitation [c.ii]) a location of said cursor image
data, Petitioner contends that Baker's "character_model" is provided to the
OS by the pictorial UI. Pet. 53 (citing Ex. 1007, Appendix E; Ex. 1003
¶ 310). Petitioner additionally notes that information in character_model is
provided to the OS to execute cursor animations. Pet. 57–58 (citing
Ex. 1007, Abstract, 23:1–29; Ex. 1003 ¶ 316).

Petitioner's citation to Baker for the contention that the
"character_model" data structure is requested from the pictorial UI is to
Appendix E of Baker. *Id.* at 54. Appendix E is 39 pages, and it is unclear
where in Appendix E Baker teaches or suggests a request by an OS for the
character_model data structure from the pictorial UI. Ex. 1007, cols. 117–
194. Appendix E provides a list of "internal procedures," which are used to
implement the system functions, along with procedure prototype and a
description of the procedure. *Id.* at 31:48–56. Petitioner also relies on the
transmission of "character_model" as part of the specified content
information to teach or suggest limitation [c.iii]. Pet. 55–56.

Patent Owner argues that the Petition does not point to sufficient
evidence in Baker for the transmission of the "character_model" data
structure from the pictorial UI (which Petitioner argues teaches the first
server computer) as required by claim 70. PO Resp. 21. Patent Owner
further argues that the cited Appendix E lists internal procedures used to
implement system functions and actions, but that Petitioner did not identify

IPR2018-01749
Patent 5,995,102

which of the procedures teaches or suggests a request from the pictoral UI
for the character_model data structure.  *Id.* at 21–22.  Generally, Petitioner,
in reply, argues that the Petition cited a portion of Dr. Bederson's
declaration describing transmission of the information in the
character_model in Baker from the pictorial UI to the OS in the
play_animation procedure.  Pet. Reply 14 (citing Inst. Dec. 27).  Dr.
Bederson's declaration does describe the play_animation procedure as
"read[ing] and updat[ing] the character_model when modifying the location,
size, and appearance of the animated character cursor."  Ex. 1003 ¶ 315; *see
also* Pet. 54 (substantially similar language).

However, even were we to credit Petitioner's argument that the
play_animation procedure was sufficiently identified in the Petition as the
portion of Baker that teaches or suggests the transmission of specified
content information, no description is provided relating to which portion of
the Baker system utilizes these functions, including play_animation.  While
the Petition describes play_animation as a function that "reads and updates"
character_model, this does not describe transmission of character_model
from the pictorial UI to the OS as required by the Petitioner's other
arguments regarding the teachings of Baker, and by limitation [c.iii] of
claim 70.  Given the gaps in Petitioner's arguments and evidence relating to
character_model, Petitioner has not met the burden of demonstrating
unpatentability.

Given these deficiencies with respect to Petitioner's theory of
unpatentability with respect to limitation [c.iii], we do not find that the
preponderance of the evidence supports Petitioner's contentions of

IPR2018-01749
Patent 5,995,102

unpatentability with respect to the obviousness of claim 70 over the combination of Baker and Anthias.

> b. *Claims 71–73*

Claim 71 is argued on the same basis as claim 70. Pet. 59. Claim 72 is argued on similar grounds as claim 70. *Id.* at 59–61. Claim 73 is argued on the same basis as claim 72. *Id.* at 61. For the same reasons described with respect to claim 70, the preponderance of the evidence does not support Petitioner's contention that claims 71–73 are unpatentable as obvious over Baker and Anthias.

## IV. CONCLUSION[5]

Based on the evidence presented with the Petition, the evidence introduced during the trial, and the parties' respective arguments, Petitioner has shown by a preponderance of the evidence that claims 71 and 73 are unpatentable under § 103(a) as obvious over Malamud and Anthias. However, Petitioner has not shown by a preponderance of the evidence that any other claims are unpatentable on the grounds advanced in the Petition, as discussed above and set forth in the chart below.

In summary:

———————————

[5] Should Patent Owner wish to pursue amendment of the challenged claims in a reexamination proceeding subsequent to the issuance of this decision, we draw Patent Owner's attention to the April 2019 Notice Regarding Options for Amendments by Patent Owner Through Reissue or Reexamination During a Pending AIA Trial Proceeding. *See* 84 Fed. Reg. 16,654 (Apr. 22, 2019). If Patent Owner chooses to file a request for reexamination of the challenged patent, we remind Patent Owner of its continuing obligation to notify the Board of any such related matters in updated mandatory notices. *See* 37 C.F.R. § 42.8(a)(3), (b)(2).

IPR2018-01749
Patent 5,995,102

| Claims | 35 U.S.C. § | Reference(s)/ Basis | Claims Shown Unpatentable | Claims Not Shown Unpatentable |
|---|---|---|---|---|
| 70–73 | 103(a) | Malamud, Anthias | 71, 73 | 70, 72 |
| 70–73 | 103(a) | Baker, Anthias | | 70–73 |
| **Overall Outcome** | | | 71, 73 | 70, 72 |

## V. ORDER

In consideration of the foregoing, it is hereby:

ORDERED that claims 70 and 72 of the '102 patent are not determined to be unpatentable;

ORDERED that claims 71 and 73 of the '102 patent are determined to be unpatentable; and

FURTHER ORDERED that, because this is a Final Written Decision, the parties to the proceeding seeking judicial review of the decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.

IPR2018-01749
Patent 5,995,102

PETITIONER:

James F. Valentine
Daniel T. Shvodian
PERKINS COIE LLP
valentine-ptab@perkinscoie.com
shvodian-ptab@perkinscoie.com


PATENT OWNER:

Tarek N. Fahmi
Holly J. Atkinson
ASCENDA LAW GROUP, PC
tarek.fahmi@ascendalaw.com
holly.atkinson@ascendalaw.com