Trials@uspto.gov                                          Paper 22
Tel: 571-272-7822                              Entered: March 25, 2020

UNITED STATES PATENT AND TRADEMARK OFFICE

————————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————————

RALPH LAUREN CORPORATION,
Petitioner,

v.

LEXOS MEDIA IP, LLC,
Patent Owner.

————————————

IPR2018-01755
Patent 6,118,449

————————————

Before PHILLIP J. KAUFFMAN, J. JOHN LEE, and SHARON FENICK,
*Administrative Patent Judges.*

FENICK, *Administrative Patent Judge.*


DECISION
Final Written Decision
Determining Some Challenged Claims Unpatentable
*35 U.S.C. § 318(a) and 37 C.F.R. § 42.73*

IPR2018-01755
Patent 6,118,449

# I. INTRODUCTION

Ralph Lauren Corporation ("Petitioner") filed a Petition (Paper 2, "Pet."), requesting an *inter partes* review of claims 1–3, 5–7, 12–15, 27–29, 31–33, 38–41, 53–56, 58–63, 72–75, and 77–82 ("challenged claims") of U.S. Patent No. 6,118,449 (Ex. 1002, "the '449 patent"). Lexos Media IP, LLC ("Patent Owner") waived its right to file a preliminary response. Paper 6. Applying the standard set forth in 35 U.S.C. § 314(a), which authorizes institution of an inter partes review when "the information presented in the petition . . . and any response . . . shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition," we instituted an *inter partes* review of challenged claims of the '449 patent on the grounds asserted in the Petition. Paper 7 ("Inst. Dec."); Paper 9 (errata). Following institution, Patent Owner submitted a Response (Paper 15, "PO Resp."), Petitioner filed a Reply (Paper 16, "Pet. Reply"), and Patent Owner filed a Sur-Reply (Paper 17, "PO Sur-Reply"). An Oral Hearing on this matter and a related case (IPR2018-01749) was held on January 6, 2020. The Hearing Transcript ("Tr.") is included in the record as Paper 21.

We have jurisdiction under 35 U.S.C. § 6(b)(4). This Final Written Decision issues under 35 U.S.C. § 318(a). Having considered the evidence of record, and for the reasons discussed below, Petitioner has demonstrated by a preponderance of the evidence that claims 27, 33, 40, 41, 72, 81 and 82 of the '449 patent are unpatentable under 35 U.S.C. § 103(a), but has not demonstrated by a preponderance of the evidence that claims 1–3, 5–7, 12–15, 28, 29, 31, 32, 38, 39, 53–56, 58–63, 73–75, and 77–80 of the '449 patent are unpatentable.

IPR2018-01755
Patent 6,118,449

## II.   BACKGROUND

### A.   Real Parties in Interest

Petitioner identifies itself and Club Monaco Corporation, Club Monaco US LLC, Ralph Lauren Media LLC, PRL USA Holdings, Inc., and Adobe Systems Incorporated as real parties in interest. Pet. 1–2. Patent Owner identifies itself as the real party in interest, and notes that Cote IP Services, LLC and Lexos Media, Inc. each own 50% of Patent Owner Lexos Media IP, LLC's stock. Paper 4, 2.

### B.   Related Proceedings

Petitioner and Patent Owner each indicate that the '449 patent is at issue in: *Lexos Media IP, LLC v. Ralph Lauren Corp. et al.*, No. 1:17-cv-01319-LPS (D. Del.). Pet. 1; Paper 4, 2. Petitioner and Patent Owner additionally indicate that the '449 patent is at issue in: *Lexos Media IP, LLC v. Jos A Bank Clothiers, Inc.*, No. 1:17-cv-01317 (D. Del). Pet. 1; Paper 4, 2. Patent Owner additionally indicates that the '449 patent is at issue in: *Lexos Media IP, LLC v. TJX Cos., Inc.*, No. 1:17-cv-01320 (D. Del), and *Lexos Media IP, LLC v. Boscov's Department Store, LLC*, No. 2-17-cv-00373 (E. D. Tx.). Paper 4, 2–3. Along with these pending litigations, Petitioner and Patent Owner describe or list additional, now-terminated, cases in which Patent Owner asserted the '449 patent and/or U.S. Patent No. 5,995,102 (Ex. 1001, "the '102 patent"), from which the '449 patent claims priority. Pet. 2–3; Paper 4, 2–4. The '102 patent is the subject of IPR2018-01749, filed by Petitioner, in which a final written decision is pending. Pet. 2; Paper 4, 4; *Ralph Lauren Corp. v. Lexos Media IP, LLC*, IPR2018-01749.

3

IPR2018-01755
Patent 6,118,449

### C.   Overview of the '449 Patent

The '449 patent is directed to "[a] system for modifying a cursor image, as displayed on a video monitor of a remote terminal, to a specific image having a desired shape and appearance." Ex. 1001,[1] code (57).  The context of the invention relates to a graphical user interface in which a pointing device is used by the user to navigate a video display, and in which movement of the pointing device is indicated by a corresponding movement of a cursor on the video display.  *Id.* at 8:24–37.  A generic cursor may be an arrow, pointing hand, hourglass, etc.  *Id.* at 3:57–61.  The '449 patent relates to changing that generic cursor by sending data and control signals from a remote computer to replace such a cursor with a cursor with an appearance that is associated with other content being displayed to the user, e.g., a logo, mascot, or an image of a product or service, related to the other content being displayed to the user.  *Id.* at 3:4–9, 17:5–18:3.  Figure 8 of the '449 patent, reproduced below, shows a web page according to the invention.

---

[1] Exhibit 1001 is the '102 patent, which appears to have an identical specification to the '449 patent, excepting the priority information (Ex. 1002, 1:4–5) and the claims.  For consistency with the petition in IPR2018-01749, Petitioner's citations to the identical portions of the specification are to the '102 patent's specification.  Pet. 2 n.2.  We adopt this convention.

IPR2018-01755
Patent 6,118,449



*FIG. 8*

In Figure 8, shown above, web page 60a is displayed to a user, including banner ad 62 for cola. *Id.* at 13:31–37. The cursor to be used with this web page changes from a standard cursor (e.g., an arrow) to cola-bottle-shaped cursor 44a in association with the banner ad 62. *Id.*

The '449 patent describes interactions between a server system and a user's terminal to effect the cursor change. *Id.* at 4:4–9, 5:37–49, 5:48–65, 7:16–40. The user terminal is controlled by an operating system ("OS"), and application programs such as a browser running on the user terminal use an application programming interface ("API") to interface with the OS. *Id.* at 7:29-40, Fig. 2.

The server system transmits specified content information to the user terminal, including information to be displayed on the user's computer (such as a hypertext markup language ("HTML") web page), cursor display instruction, and cursor display code. *Id.* at 8:4–23. The cursor display instruction indicates where the cursor image data corresponding to the new

IPR2018-01755
Patent 6,118,449

appearance of the cursor resides.  *Id.* at 8:49–64.  The cursor display code causes the user's terminal to display that cursor image data in place of the original cursor, using the API of the operating system to effect these changes.  *Id.* at 8:34–37, 8:52–57; 13:19–30.

### D.    Illustrative Claims

Of the challenged claims, claims 1, 27, 53, and 72 are independent. Claims 27 and 53 are reproduced below, with formatting changes for readability:

Claim 27 recites:

27.    [Preamble][2] A server system for modifying a cursor image to a specific image having a desired shape and appearance displayed on a display of a remote user's terminal, said system comprising:

[a] cursor image data corresponding to said specific image;

[b] cursor display code, said cursor display code operable to modify said cursor image; and

[c.i] a first server computer for transmitting specified content information to said remote user terminal,

[c.ii] said specified content information including at least one cursor display instruction indicating a location of said cursor image data, said cursor display instruction and said cursor display code operable to cause said user terminal to display a modified cursor image on said user's display in the shape and appearance of said specific image,

[c.iii] wherein said specified content information is transmitted to said remote user terminal by said first server computer responsive to a request from said user terminal for said specified content information, and wherein said

---

[2] The Petition provides bracketed labels for the elements of the independent claims.  *See*, *e.g.*, Pet. 30–44; Ex. 1009.  For clarity, we use these labels in this Decision.

IPR2018-01755
Patent 6,118,449

specified content information further comprises information to be displayed on said display of said user's terminal,

[c.iv] said specific image including content corresponding to at least a portion of said information to be displayed on said display of said user's terminal, and wherein said cursor display code is operable to process said cursor display instruction to modify said cursor image to said cursor image in the shape and appearance of said specific image in response to movement of said cursor image over a specified location on said display of said user's terminal, and wherein said specific image relates to at least a portion of said information to be displayed on said display of said remote user's terminal.

Ex. 1002, 20:35–67.

Claim 53 recites:

53. [Preamble] A method for modifying an initial cursor image displayed on a display of a user terminal connected to at least one server, comprising:

[a] receiving a request at said at least one server to provide specified content information to said user terminal;

[b] providing said specified content information to said user terminal in response to said request, said specified content information including at least one cursor display instruction and at least one indication of cursor image data corresponding to a specific image; and

[c.i] transforming said initial cursor image displayed on said display of said user terminal into the shape and appearance of said specific image in response to said cursor display instruction, wherein said specified content information includes information that is to be displayed on said display of said user's terminal, wherein said specific image includes content corresponding to at least a portion of said information that is to be displayed on said display of said user's terminal, and

IPR2018-01755
Patent 6,118,449

> [c.ii] wherein said cursor display instruction indicates a cursor display code operable to process said cursor display instruction to modify said cursor image to said cursor image in the shape and appearance of said specific image in response to movement of said cursor image over a display of said at least a portion of said information to be displayed on said display of said user's terminal, and wherein said specific image has a shape and appearance relating to said information to be displayed.

Ex. 1002, 22:29–58.

### E.    Evidence Relied Upon by Petitioner

Petitioner relies on the following references:

| Reference | | Issue Date | Exhibit |
|---|---|---|---|
| Malamud et. al. ("Malamud") | U.S. Patent No. 6,437,800 B1 | Aug. 20, 2002 (filed Oct. 26, 1994) | Ex. 1004 |
| Anthias | U.S. Patent No. 5,920,311 | July 6, 1999 (filed Dec. 6, 1993) | Ex. 1005 |
| Nielsen | U.S. Patent No. 5,991,781 | Nov. 23, 1999 (filed Sept. 27, 1996) | Ex. 1006 |
| Baker | U.S. Patent No. 5,715,416 | Feb. 3, 1998 (filed Sept. 30, 1994) | Ex. 1007 |

Petitioner also relies on a declaration from Benjamin B. Bederson, Ph.D. (Ex. 1003).

### F.    Asserted Grounds

Petitioner presents the following grounds of unpatentability, each on the basis of pre-AIA 35 U.S.C. § 103(a):

| Claims Challenged | References |
|---|---|
| 1, 7, 15, 27, 33, 41, 53, 54, 63, 72, 73, 82 | Malamud, Anthias |

IPR2018-01755
Patent 6,118,449

| Claims Challenged | References |
|---|---|
| 12, 14, 38, 40, 60, 62, 79, 81 | Malamud, Anthias, Nielsen |
| 2, 3, 5, 6, 28, 29, 31, 32, 55, 56, 58, 59, 74, 75, 77, 78 | Malamud, Anthias, Baker |
| 13,[3] 39, 61, 80 | Malamud, Anthias, Nielsen, Baker |
| 1, 7, 15, 27, 33, 41, 53, 54, 63, 72, 73, 82 | Baker, Anthias |
| 12, 14, 38, 40, 60, 62, 79, 81 | Baker, Anthias, Nielsen |

Pet. 1.

## III.  ANALYSIS

### A.  Legal Standards

It is a petitioner's burden to demonstrate unpatentability.  *See Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015) (citing *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1326–27 (Fed. Cir. 2008)).  Petitioner bears "the burden of proving . . . unpatentability by a preponderance of the evidence."  35 U.S.C. § 316(e); *see* 37 C.F.R. § 42.1(d) (2018).

A patent claim is unpatentable under 35 U.S.C. § 103 if the differences between the claimed subject matter and the prior art are "such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406

---

[3] Petitioner refers to claim 3, not claim 13, in the Petition table listing the grounds and references, but this appears to be a typographical mistake. *Compare* Pet. 1 *with id.* at 52–53; *see* Pet. Reply 5.

IPR2018-01755
Patent 6,118,449

(2007).  The question of obviousness is resolved based on underlying factual
determinations, including: (1) the scope and content of the prior art; (2) any
differences between the claimed subject matter and the prior art; (3) the level
of skill in the art; and (4) objective evidence of nonobviousness, i.e.,
secondary considerations.[4]  *Graham v. John Deere Co.*, 383 U.S. 1, 17–18
(1966).

    Additionally, the obviousness inquiry typically requires an analysis of
"whether there was an apparent reason to combine the known elements in
the fashion claimed by the patent at issue."  *KSR*, 550 U.S. at 418 (citing
*In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006) (requiring "articulated
reasoning with some rational underpinning to support the legal conclusion of
obviousness")); *see In re Warsaw Orthopedic, Inc.*, 832 F.3d 1327, 1333
(Fed. Cir. 2016) (citing *DyStar Textilfarben GmbH & Co. Deutschland KG
v. C. H. Patrick Co.*, 464 F.3d 1356, 1360 (Fed. Cir. 2006)).  "To satisfy its
burden of proving obviousness, a petitioner cannot employ mere conclusory
statements.  The petitioner must instead articulate specific reasoning, based
on evidence of record, to support the legal conclusion of obviousness."
*In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1380 (Fed. Cir. 2016).

    We analyze the asserted grounds with the principles stated above in
mind.

### B.    *Level of Ordinary Skill in the Art*

    Petitioner proposes that a person of ordinary skill in the art would
have had "at least a master's degree in Computer Science, Computer
Engineering, or a related field, or hold a bachelor's degree in Computer

---

[4] The record contains no evidence relating to secondary considerations.

IPR2018-01755
Patent 6,118,449

Science, Computer Engineering, or equivalent and have at least two years of relevant work experience in the fields of UI [(user interface)] design and OSs." Pet. 10–11. In the Institution Decision, we preliminary adopted Petitioner's proposed definition, noting that the prior art in this case demonstrated the level of ordinary skill in the art at the time of the invention. Inst. Dec. 10 (citing *Okajima v. Bourdeau*, 261 F.3d 1350, 1355 (Fed. Cir. 2001)). Patent Owner does not comment on or dispute Petitioner's proposal, and instead cites *Okajima*'s holding regarding the level of skill in the prior art without raising any issues regarding whether the prior art here reflects a level of ordinary skill different from that proposed by Petitioner. PO Resp. 10 (citing *Okajima*, 261 F.3d at 1355). We adopt Petitioner's definition as consistent with the '449 patent and the asserted prior art.

### C.      Claim Construction

Petitioner and Patent Owner agree that the '449 Patent is expired. Pet. 11; PO Resp. 9; *see also* Ex. 1002, 1; Ex. 1012, 135–138 (terminal disclaimer to the term of the '102 patent); Ex. 1001, code (22). "[T]he Board's review of the claims of an expired patent is similar to that of a district court's review." *In re Rambus Inc.*, 694 F.3d 42, 46 (Fed. Cir. 2012). In this context, claim terms generally are given their ordinary and customary meaning, as understood by a person of ordinary skill in the art, at the time of the invention, taking into consideration the language of the claims, the specification, and the prosecution history of record, because the expired claims are not subject to amendment. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–19 (Fed. Cir. 2005) (en banc).

Only terms that are in controversy need to be construed, and then only to the extent necessary to resolve the controversy. *Vivid Techs., Inc. v. Am.*

IPR2018-01755
Patent 6,118,449

*Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).  The Petitioner
proposed construction of several claim terms in the Petition.  Pet. 12–18.
However, none of these claim terms require construction to resolve the
controversy.  Petitioner also argued for a construction of an additional term
("wherein said specified content information further comprises information
to be displayed on said display of said user's terminal") in its Reply.  Pet.
Reply 13.  Patent Owner contends that this argument is a new argument
raised improperly for the first time in the Reply.  PO Sur-Reply 10–11.  We
agree.  Pursuant to 37 C.F.R. § 42.23(b), a reply "may only respond to
arguments raised in the corresponding ... patent owner response."  *See also
Acceleration Bay, LLC v. Activision Blizzard Inc.*, 908 F.3d 765, 775 (Fed.
Cir. 2018) (concluding that the Board did not abuse its discretion in refusing
to consider portions of a reply declaration "rais[ing] a new obviousness
argument for [a claim] limitation that could have been made in the petition"
but was not); *Intelligent Bio-Sys., Inc. v. Illumina Cambridge, Ltd.*, 821 F.3d
1359, 1369–1370 (Fed. Cir. 2016) (concluding that the Board did not abuse
its discretion in refusing to consider reply brief arguments advocating a
"new theory" of unpatentability under 37 C.F.R. § 42.23(b)).  Therefore, we
will not address the new construction proposed for this claim term.

> D.    *Alleged Obviousness of Claims 1, 7, 15, 27, 33, 41,
> 53, 54, 63, 72, 73, and 82 over Malamud and Anthias*

Petitioner argues that claims 1, 7, 15, 27, 33, 41, 53, 54, 63, 72, 73,
and 82 would have been obvious over a combination of Malamud and
Anthias.  Pet. 30–46.  For the reasons discussed below, we determine that
Petitioner has not demonstrated the unpatentability of claims 1, 7, 15, 53, 54,

IPR2018-01755
Patent 6,118,449

63, and 73 over Malamud and Anthias, but has demonstrated the

unpatentability of claims 27, 33, 41, 72, and 82 over Malamud and Anthias.

### 1. Overview of Malamud (Ex. 1004)

Malamud relates to information cursors for use in an operating system

or application programs. Ex. 1004, code (57). "[An] information cursor

includes a pointing portion to point to objects displayed on a video display

and an information portion to display information about an object to which

the pointing portion points." *Id.* One such information cursor is a

"combined name and preview cursor," which is shown in Malamud's Fig. 4,

reproduced below:



Figure 4 illustrates combined name and preview cursor 38 pointing to book

icon 32. *Id.* at 4:4–18. Combined name and preview cursor 38 includes

pointing portion 28 in the shape of an arrow pointing to book icon 32. *Id.* at

3:65–68, 4:4–6, 4:8–9. Preview portion also includes name box 30, which

IPR2018-01755
Patent 6,118,449

displays the name of the object the cursor is pointing to. *Id.* at 3:39–43, 4:9–13. Lastly, combined name and preview cursor 38 includes preview portion 36, which holds a preview of the contents of the object the cursor is pointing to. *Id.* at 4:14–18. Other cursors include only some of this information; a name cursor may include only the pointing portion and the name, and a preview cursor only the pointing portion and preview portion. *Id.* at 3:30–43, 3:59–4:3.

To implement the display of cursors, the OS of the terminal maintains a message queue for each program that generates windows, and when a mouse event occurs, such as positioning or a mouse click, a message from the OS is placed into the queue for the program. *Id.* at 4:56–5:9. The application program can respond by passing, to the OS, information for the cursor, e.g., a text string for a name box and a pointer to graphical information for a preview portion. *Id.* at 5:47–65.

## 2. Overview of Anthias (Ex. 1005)

Anthias relates to a distributed window presentation system in which graphics data, generated in a remote system, is displayed for a user. Ex. 1005, code (54), (57), 1:24–33. Anthias refers to the remote system as the client, and the user's system as the server presentation system. *Id.* 1:24–33. The remote system can associate a particular cursor type with a display area displayed at the user's system, and different cursors can be displayed in different parts of the display area. *Id.* at 4:16–23. For example, the cursor might change shape, color, or flashing frequency as it passes from the background window areas to an area associated with an application. *Id.* at 3:4–7, 4:21–23.

14

IPR2018-01755
Patent 6,118,449

### 3. *Claim 1*

Petitioner argues that claim 1 would have been obvious over Malamud and Anthias.  Pet. 30–38.

a. *Claim 1 [Preamble]: A server system for modifying a cursor image to a specific image having a desired shape and appearance displayed on a display of a remote user's terminal*

Petitioner argues that Malamud's information cursor teaches the modification of a cursor to appear as a specific image having a desired shape and appearance, including an information portion, which is displayed on a user's terminal.  Pet. 30 (citing Ex. 1004, 3:59–4:3; Ex. 1003 ¶ 116). Petitioner argues that a "server" and "remote user's terminal" are found in Anthias's teaching of a data processing system implemented with a client/server model, in which an application running on a remote system (denoted "client" in Anthias) controls a display on a terminal, including the use of a modified cursor in certain window areas.  *Id.* at 31 (citing Ex. 1005, 1:24–33; Ex. 1003 ¶¶ 117–118).

Petitioner contends that one of ordinary skill would have combined Malamud and Anthias, as contemporary references each dealing with responding to a cursor location on a screen, in order to reduce storage requirements and processing overhead at the user terminal.  *Id.* at 27–28, 31 (citing Ex. 1005, 2:30–34; Ex. 1003 ¶¶ 112, 117.)

Patent Owner does not make any arguments specific to the preamble of claim 1 or directed to the propriety of the combination of Malamud and Anthias.  *See, e.g.*, PO Resp. 9–18.

Generally, a preamble does not limit a claim.  *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002).  Here, we need

IPR2018-01755
Patent 6,118,449

not decide whether claim 1's preamble limits the claims because, whether the preamble is limiting or not, we agree with Petitioner that the combination of Malamud and Anthias teaches the preamble.  Specifically, the combination of Anthias' teaching of a data processing system implemented with a client/server model and Malamud's teaching regarding modification of a cursor displayed to a user teaches or suggests this preamble.  Ex. 1004, 3:59–4:3; Ex. 1005, 1:24–33; Ex. 1003 ¶¶ 116–118.

> b. *Claim 1[a]: cursor image data corresponding to said specific image*

Petitioner argues that Malamud teaches limitation [a].  Pet. 32.
Petitioner argues that Malamud discloses that the graphical preview portion of its information cursor is stored as a bitmap image.  *Id.* (citing Ex. 1004, 5:16–18, 5:59–62; Ex. 1003 ¶ 122).  Petitioner contends that the pointers to the bitmaps teach the cursor image data of limitation [a].  *Id.*

Patent Owner does not make any arguments specific to this limitation of claim 1.  *See, e.g.*, PO Resp. 9–18.

We agree with Petitioner that Malamud teaches limitation [a] of claim 1.  Specifically, Malamud teaches that appearance of cursors is dictated by bitmaps stored in an operating system, and that a pointer to a bitmap is used to identify which bitmap should be used for a cursor.  Ex. 1004, 5:16–18, 5:59–62.

> c. *Claim 1[b]: cursor display code, said cursor display code operable to modify said cursor image*

Petitioner contends Malamud's conventional OS would be understood by a person of ordinary skill in the art to "include[] functions or applications to display and modify graphics" on the user interface including cursors. Pet. 32–33 (citing Ex. 1004, 3:6–8, 5:47–53, Fig. 6; Ex. 1003 ¶ 122).

IPR2018-01755
Patent 6,118,449

Petitioner specifically notes Malamud's discussion relating to how the cursor display is effectuated, in which a window procedure "passes a message to the operating system . . . that tells the operating system what type of cursor to display and sets forth the contents and type of information to be displayed in the cursor." *Id.* at 33 (quoting Ex. 1004, 5:49–52). Thus, Petitioner argues that Malamud's functions or applications in the OS that display the changeable information cursors teach the cursor display code operable to modify the cursor image. *Id.* at 32–33.

Patent Owner does not make any arguments specific to this limitation of claim 1. *See, e.g.*, PO Resp. 9–18.

We agree with Petitioner that one of ordinary skill in the art would have understood Malamud to teach or suggest limitation [b] of claim 1. Specifically, Malamud teaches messages passed to the operating system relating to the display of cursors with different content (e.g., name or preview cursors), and one of ordinary skill would have understood code comprising functions or applications to be used to modify the cursor image. Ex. 1004, 5:16–18, 5:47–53; 5:59–62; Ex. 1003 ¶ 122.

        d. *Claim 1[c.i]: a first server computer for transmitting specified content information to said remote user terminal*

Petitioner argues that the combination of Malamud and Anthias teaches limitation [c.i]. Pet. 33–34. In the Petition, Petitioner argues with respect to this limitation that:

> Malamud, in view of Anthias, discloses an application program's window procedure ("*first server computer*") and an OS ("*remote user terminal*") on a client-server network. Malamud teaches that the window procedure transmits a message ("*specified content information*") to the OS, which employs

IPR2018-01755
Patent 6,118,449

functions or applications ("*cursor display code*") to display its
information portion.

*Id.* (citing Ex. 1004, 4:53–54, 5:53–57, Ex. 1003 ¶¶ 129–130).  The cited
portions of Malamud describe the OS's control over the windowing user
interface, and describe the operating system transmitting a message
requesting that an information cursor be displayed.  Ex. 1004, 4:53–54,
5:53–57.  Petitioner's contention is that the limitation's "specified content
information" is taught by Malamud's transmitted message, which is
described in Malamud as a message that "tells the operating system what
type of cursor to display and sets for the contents and type of information to
be displayed in the cursor."  *Id.* at 5:49–52.  Petitioner additionally describes
the specified content information as this message in arguments relating to
limitation [c.ii] and [c.iii].  Pet. 34, 36.

Our Decision on Institution noted the Petition's reliance on
Malamud's message sent relating to a preview cursor to teach the "specified
content information" of this claim limitation.  Inst. Dec. 16–18.  In the
Reply, however, Petitioner argues that the "specified content information"
includes any information to be displayed on the client, such as "all
information necessary to display [a] website" and, more broadly, "all
graphics data."  Pet. Reply 6–10.  Petitioner argues that the Petition referred
to the discussion of the preamble and the teachings of Anthias "for
disclosure of the transmission of launch information, including underlying
objects," and that the "*specified content information* would have included all
of the information to be displayed on the *remote user terminal* on launch,
including the objects over which cursors could later be moved and
modified."  *Id.* at 8–9; Tr. 10:4–15, 21:24–23:1, 25:2–27:17.

18

IPR2018-01755
Patent 6,118,449

However, we agree with the Patent Owner that the Petition did not
relate the "specified content information" broadly to all information
transferred, but rather specifically to information in a message concerning
the display of an information cursor.  *See* PO Resp. 13 n.1, 15–16; PO Sur-
Reply 3.  While Petitioner argues that the reference to Anthias' teachings as
addressed in the portion of the Petition relating to the preamble of claim 1
teaches the origination at a server of all graphics data, the Petition describes
the "specified content information" as taught by the message relating to
cursor display.  Pet. 33–34.  Even when describing Anthias' teachings, the
Petition and the cited declaration describe the combination in terms of
messages regarding the movement of a cursor and responsive messages
regarding cursor display, not other information transferred between the
remote system and the user's system.  *Id.* at 30–31; Ex. 1003 ¶¶ 117–118.

A petitioner must choose which grounds of invalidity to assert in the
petition and "the expedited nature of IPRs bring with it an obligation for
petitioners to make their case in their petition to institute."  *Intelligent Bio-
Sys.*, 821 F.3d at 1369 (Fed. Cir. 2016); *Wasica Fin. GmbH v. Cont'l Auto.
Sys., Inc.*, 853 F.3d 1272, 1286 (Fed. Circ. 2017) (a petitioner is foreclosed
from "shifting" in post-petition arguments to a new theory of *prima facie*
obviousness based on a different passage of a prior art reference than was
used in the petition); *see* PTAB Consolidated Trial Practice Guide
November 2019,[5] 73 ("Petitioner may not submit new evidence or argument
in reply that it could have presented earlier, e.g., to make out a prima facie

---

[5] Available at https://www.uspto.gov/TrialPracticeGuideConsolidated

IPR2018-01755
Patent 6,118,449

case of unpatentability."); Trial Practice Guide Update August 2018,[6] 14
(same).

Therefore, we evaluate Petitioner's arguments with respect to
limitation [c.i] relying upon Malamud's message relating to a preview cursor
in Malamud to teach the "specified content information."  Patent Owner
does not make any arguments relating to whether Malamud's message, in
view of the teachings of Anthias, teaches limitation [c.i] of claim 1.  *See,
e.g.*, PO Resp. 9–18.

We agree with Petitioner that the combination of Malamud and
Anthias teaches limitation [c.i] of claim 1.  Specifically, Malamud teaches
the transmission of a message relating to the display of information cursors
(e.g., name or preview cursors), and Anthias teaches or suggests the
server/client configuration.  Ex. 1004, 4:53–54, 5:53–57; Ex. 1005, 1:24–33;
Ex. 1003 ¶¶ 117, 130.

> e.  *Claim 1[c.ii]: said specified content information
> including at least one cursor display instruction
> indicating a location of said cursor image data, said
> cursor display instruction and said cursor display code
> operable to cause said user terminal to display a
> modified cursor image on said user's display in the shape
> and appearance of said specific image*

Petitioner, as discussed *supra*, argues that the "cursor image data" is
taught by Malamud's preview portion of an information cursor, which is
stored as a bitmap.  Consistently, Petitioner contends that the pointer to the
location of that bitmap for the preview portion, described by Malamud as
being transmitted from the window procedure to the OS, teaches or suggests

---

[6] Available at https://go.usa.gov/xU7GP

IPR2018-01755
Patent 6,118,449

limitation [c.ii]'s "at least one cursor display instruction indicating a location of said cursor image data." Pet. 34 (citing Ex. 1004, 5:57–62; Ex. 1003 ¶ 136). Petitioner additionally notes that this pointer and the functions or applications in the OS (which Petitioner argues teaches cursor display code) operate together to cause the display of a modified cursor image including the preview portion. Pet. 34–35 (citing Ex. 1004, 3:6–8, 4:53–55, 5:47–57, Fig. 6; Ex. 1003 ¶ 134).

Patent Owner does not make any arguments specific to this limitation of claim 1. *See, e.g.*, PO Resp. 9–18.

We agree with Petitioner that Malamud teaches limitation [c.ii] of claim 1. Specifically, Malamud's disclosure that "if the cursor to be displayed is a preview cursor . . . a message . . . includ[ing] a pointer to a bitmap of graphical information that the operating system should use in the preview portion," teaches a cursor display instruction including a location of the cursor image data, and that instruction, along with the cursor display code, is used to cause the terminal to display a modified cursor. Ex. 1004 5:57–62 (element number omitted); *see* Ex. 1004 3:6–8, 4:53–55, 5:47–57, Fig. 6; Ex. 1003 ¶¶ 134, 136.

> f. *Claim 1[c.iii]: wherein said specified content information is transmitted to said remote user terminal by said first server computer responsive to a request from said user terminal for said specified content information, and wherein said specified content information further comprises information to be displayed on said display of said user's terminal*

Petitioner argues in the Petition, as detailed *supra* regarding limitations [c.i] and [c.ii], that the cursor-related message transmitted by a window procedure to the OS in Malamud teaches the transmission of

IPR2018-01755
Patent 6,118,449

specified content information.  Consistent with those arguments, with respect to limitation [c.iii], Petitioner argues in the Petition that that transmission is responsive to the use of the mouse to move a cursor position within a given window, which causes the OS to generate and send a message requesting that the program's window procedure send a message back identifying information regarding the cursor to be displayed.  Pet. 35–36 (citing Ex. 1004, 5:7–10, 5:22–28).  Petitioner contends that the movement of the cursor position teaches the request by the user terminal (OS) to the first server computer (window procedure) for content information.  *Id.* Petitioner additionally notes that the message in Malamud transmitted by the window procedure to the OS also, in the case of a combined name and preview cursor, includes the name of the object the cursor is pointing to, to be displayed in the information cursor of Malamud.  Pet. 36 (citing Ex. 1004, 4:4–17; Ex. 1003 ¶ 140.)  Petitioner, thus, argues that the "information to be displayed on said display of said user's terminal" is taught or suggested by the name portion of the preview cursor.  *Id.*

In the Reply, consistent with its other reply arguments regarding "specified content information," Petitioner additionally argues that the "request from said user for said specified content information" is taught by Malamud's UI program, which, when launched by a user, "sends the necessary information that the OS needs to render the associated window's contents."  Pet. Reply 9–10 (citing Pet. 19–20; Ex. 1003 ¶¶ 97, 118, 129; Ex. 1004, 4:53–65); Tr. 19:16–10:18.  However, the argument presented in the Petition for this claim limitation is limited to the teachings of Malamud for display of a cursor and modifying or moving the cursor.  Pet. 35–36.  We will, therefore, not consider the argument in the Reply that the request for

22

IPR2018-01755
Patent 6,118,449

the contents of a window in Malamud teaches or suggests the request of limitation [c.iii]. *See Intelligent Bio-Sys.*, 821 F.3d at 1369; *Wasica Fin.,* 853 F.3d at 1286. Petitioner argues in its Reply that the object in Malamud is the claimed "information to be displayed," presenting examples from the Petition describing the operation of Malamud, e.g., to display "preview and name portions" of an information cursor when a user positions a cursor over an object displayed in a window. Pet. Reply 14–15 (citing Pet. 20, 30). However, while the Petition does describe the operation of Malamud more generally, the "information to be displayed" in the Petition is only argued to be taught by the name of the object "in the case of a combined name and preview cursor." Pet. 36.

Because we are cautioned to evaluate only the arguments presented in the Petition, and not additional arguments from the Reply relating to other requests or information to be displayed, we only evaluate Petitioner's arguments with respect to limitation [c.iii] and the teachings of Malamud relating to a request from the user terminal for the message relating to a preview cursor. Pet. 35–36.

Patent Owner does not make any arguments relating to whether these teachings of Malamud, in view of the teachings of Anthias, teach or suggest limitation [c.iii] of claim 1. *See, e.g.*, PO Resp. 9–18.

We agree with Petitioner that the combination of Malamud and Anthias teaches limitation [c.iii] of claim 1. Specifically, Malamud teaches the request for and transmission of a message relating to the display of cursors with different content (e.g., name or preview cursors), and Anthias teaches or suggests the server/client configuration. Ex. 1004, 4:53–54, 5:7–10, 5:22–28; Ex. 1003 ¶ 140. Additionally, Malamud teaches that the

23

IPR2018-01755
Patent 6,118,449

request comprises "information to be displayed on said display of said user's terminal" in disclosing that the message includes information that will be displayed in the Malamud information cursor.  Ex. 1004, 4:4–17, 5:54–62; Ex. 1003 ¶ 140.

> g. *Claim 1[c.iv]: said specific image including content corresponding to at least a portion of said information to be displayed on said display of said user's terminal, and wherein said cursor display code is operable to process said cursor display instruction to modify said cursor image to said cursor image in the shape and appearance of said specific image in response to movement of said cursor image over a display of said at least a portion of said information to be displayed on said display of said user's terminal, and wherein said specific image relates to at least a portion of said information to be displayed on said display of said remote user's terminal*

With respect to limitation [c.iv] of claim 1, Petitioner argues in the Petition that Malamud's OS functions and applications are used to display cursors "in their initial, standard forms[,] as well as any subsequent modifications."  *Id.* at 37–38 (citing Ex. 1004, 5:59–62; Ex. 1003 ¶¶ 144–145.)  Petitioner contends that Malamud's information cursors, when pointing to an object displayed on the screen, are modified so that the modified cursor's preview portion displays a preview of the contents of that object.  Pet. 38 (citing Ex. 1004, 3:61–63).

In our Institution Decision, we noted that because the Petition relied on information to be displayed in Malamud's information cursor as teaching or suggesting "information to be displayed on said display of said user's terminal," the Petition did not establish sufficiently that Malamud teaches or suggests the claimed modification in the cursor image "in response to

IPR2018-01755
Patent 6,118,449

movement of said cursor image over a display of said at least a portion" of
that information to be displayed.  Inst. Dec. 19–20.

Patent Owner contends that the Petition's only argument with respect
to the modification of a cursor "in response to movement of said cursor
image over a display of said at least a portion of said information" is the
statement that "[w]hen a preview cursor points to an object displayed on the
screen, the cursor is modified so that the preview portion appears displaying
graphical data depicting the object's contents."  PO Resp. 15–17 (quoting
Pet. 38).  Patent Owner, therefore, argues that "none of Petitioner's
argument explains how, when a cursor image is moved 'over a display of'
any portion of the *information to be displayed*, the cursor image is modified
as recited in" limitation [c.iv].  *Id.* at 17.

Consistent with the other arguments in the Petitioner's Reply,
Petitioner argues that the "specified content information" of claim 1 includes
Malamud's earlier transmitted launch data "including objects over which
cursors could be later moved and modified."  Pet. Reply 7–10, 14–15.
However, this argument, that the "specified content information" is taught or
suggested by data in Malamud and Anthias other than Malamud's
information cursor message data, was not made in the Petition, and, thus, we
do not consider it to be part of the case for unpatentability in the Petition.

Limitation [c.iv] of claim 1 requires that the cursor image is modified
"in response to movement of said cursor image over a display of said at least
a portion of said information to be displayed on said display of said user's
terminal."  Petitioner identified the information to be displayed in Malamud
as contained in the cursor display message, but has not provided an

25

IPR2018-01755
Patent 6,118,449

explanation of how there is "movement of said cursor image" over such information.

In other words, Petitioner has not adequately demonstrated how Malamud (or Anthias) teaches or suggests this limitation because it has failed to explain how Malamud's cursor image could exhibit movement over itself. The modification in limitation [c.iv] occurs in response to movement of "said cursor image" over "a display of said at least a portion of said information to be displayed on said display of said user's terminal." Since the Malamud cursor display message teaches or suggests, according to the Petition, the "information to be displayed on said display of said user's terminal," and that cursor display message is itself part of the Malamud information cursor (which is used to teach "said cursor image"), the movement described in this claim limitation would be taught or suggested by movement of Malamud's information cursor over a portion of Malamud's information cursor. Pet. 30, 36; Ex. 1004, 2:30–33, 4:4–17, Fig. 4. Petitioner does not demonstrate how such movement would be taught or suggested by Malamud or the proposed combination. Thus, we do not find that the preponderance of the evidence supports Petitioner's contentions of unpatentability with respect to limitation [c.iv].

h. *Claim 1 – Conclusion*

On this record, we do not find that the preponderance of the evidence supports Petitioner's contentions of unpatentability with respect to the obviousness of claim 1 over the combination of Malamud and Anthias.

*4. Claims 7, 15, 53, 54, and 63*

Claim 53 is independent, and Petitioner argues its unpatentability over Malamud and Anthias using similar logic and citations as those provided for

26

IPR2018-01755
Patent 6,118,449

claim 1, including an argument relating to modifying a cursor "in response to movement of said cursor image over a display of said at least a portion of said information to be displayed on said display of said user's terminal," echoing the argument provided for corresponding limitations of claim 1. Pet. 39–44; *compare id.* at 42–44 *with id* at 35–38.  Petitioner again argues with respect to claim 53 that the "specified content information" corresponds to the cursor messages in Malamud relating to new positions for the cursor and type of cursor to be displayed, not other information exchanged with the OS.  *Id.* at 41–43 (citing Ex. 1004, 4:4–17, 5:7–10, 5:47–62; Ex. 1003 ¶ 172).

For the same reasons described with respect to claim 1, the preponderance of the evidence does not support Petitioner's contention that claim 53 is unpatentable as obvious over Malamud and Anthias. Additionally, for the same reasons, the preponderance of the evidence does not support Petitioner's contention that claims 7, 15, 54, and 63 are unpatentable as obvious over Malamud and Anthias, as each is dependent from claim 1 or claim 53 and argued on the same basis with respect to the incorporated base claim limitations.

### 5. *Claims 27, 33, 41, 72, 73, and 82*

#### a. *Claim 27*

As discussed above, Petitioner contends that claim 27 is unpatentable for the same reasons provided for the unpatentability of claim 1.  Pet. 39. However, claim 27 recites modification of the cursor "in response to a movement of said cursor image over a specified location on said display of said user's terminal" and not, as in claim 1, in response to movement "over a

27

IPR2018-01755
Patent 6,118,449

display of said at least a portion of said information to be displayed on said display of said user's terminal."

Petitioner's contentions regarding limitation [c.iv] of claim 27, in which the preview cursor is modified when the cursor is moved to point to an object displayed on the screen do not contain the same flaws noted with respect to claim 1. Petitioner argues that the functions and applications of the OS are used to display cursors "in their initial, standard forms[,] as well as any subsequent modifications." Pet. 37–38 (citing Ex. 1004, 5:59–62; Ex. 1003 ¶¶ 144–145.) Petitioner contends that Malamud's information cursors, when pointing to an object displayed on the screen, are modified so that the modified cursor's preview portion displays a preview of the contents of that object. *Id*. at 38 (citing Ex. 1004, 3:61–63).

Patent Owner does not make any arguments regarding the unpatentability of claim 27 over Malamud and Anthias. Tr. 50:25–51:5.

We agree with Petitioner that Malamud teaches limitation [c.iv] of claim 27. Malamud discloses an information cursor in which the cursor information is modified in response to movement over a specified location on the user's display. Ex. 1004, 5:59–62; Ex. 1003 ¶¶ 144–145. With respect to the other claim elements of claim 27, these are identical to those addressed *supra* with respect to claim 1, and we find in each instance that the combination of Malamud and Anthias teaches or suggests these limitations for the same reasons. Petitioner has, thus, shown by a preponderance of the evidence that claim 27 is unpatentable as obvious over Malamud and Anthias.

IPR2018-01755
Patent 6,118,449

### b. *Claim 72*

Claim 72 is an independent method claim, which Petitioner argues is unpatentable using similar logic and citations as those provided for claims 1, 27, and 53.  Pet. 30–38 (claim 1), 39 (claim 27), 39–44 (claim 53), 46.

Patent Owner does not make any arguments regarding the unpatentability of claim 72 over Malamud and Anthias.  Tr. 50:25–51:5.

We agree with Petitioner that the steps of method claim 72 are taught or suggested in the combination of Malamud and Anthias described above with reference to claim 27.  That is, in the context of a combination with the teachings of a client and server from Anthias, the step of receiving a request at a server is taught or suggested by the combination of Malamud's message sent when a cursor is moved within an application.  The provision of the content information is taught or suggested by the provision in Malamud of a responsive cursor display message.  That message, in Malamud, is provided to the user terminal to cause the transformation of the initial cursor image.

Petitioner has shown by a preponderance of the evidence that claim 72 is unpatentable as obvious over Malamud and Anthias.

### c. *Claim 33*

Claim 33 depends from claim 27 and adds the further limitation that "said specific image has a shape and appearance corresponding to said information to be displayed on said display of said user's terminal." Petitioner relies on the same arguments for claim 33 as for claim 7.  Pet. 39. While we determined that claim 7 is not unpatentable due to its dependency from claim 1, we evaluate the claim 7 arguments with respect to claim 33.

Patent Owner does not make any arguments regarding the unpatentability of claim 33 over Malamud and Anthias.  Tr. 50:25–51:5.

IPR2018-01755
Patent 6,118,449

We agree with Petitioner that Malamud teaches a cursor with an
appearance corresponding to the information to be displayed as sent in the
cursor display instruction.  Pet. 30, 38; Ex. 1004, 3:32–35, 3:61–63.
Petitioner has shown by a preponderance of the evidence that claim 33 is
unpatentable as obvious over Malamud and Anthias.

d. *Claims 41 and 82*

Claim 41 depends from claim 27 and adds the further limitation that
the cursor display instruction further comprises "an image identifier
indicating said cursor image data corresponding to said specific image."
Claim 82 depends from claim 72 and adds the further limitation that the
specified content information comprises "an image identifier that
corresponds to the location of data representing said specific image."

Petitioner argues that the image identifier as claimed is taught by
Malamud's pointer to the location of a bitmap of an image to be used in an
information cursor.  Pet. 38–39 (citing Ex. 1004, 4:53–54, 5:53–62;
Ex. 1003 ¶¶ 153–154).

Patent Owner does not make any arguments regarding the
unpatentability of claims 41 and 82 over Malamud and Anthias.  Tr. 50:25–
51:5.

We agree with Petitioner that Malamud teaches a cursor display
message including a pointer to the location of a bitmap image to be used in
the cursor, which teaches the limitations specific to claims 41 and 82.  Ex.
1004, 5:53–62; Ex. 1003 ¶ 154.  Petitioner has shown by a preponderance of
the evidence that claims 41 and 82 are unpatentable as obvious over
Malamud and Anthias.

IPR2018-01755
Patent 6,118,449

e. *Claim 73*

Claim 73 depends from claim 27 and adds the further limitation that "transforming further comprises executing said cursor display code so as to display said specific cursor image while at least a portion of said information to be displayed is displayed on said display of said user's terminal." Petitioner relies on the same arguments for claim 73 as for claim 54.  Pet. 46.

Petitioner argues that this limitation is taught because graphical data from a cursor is displayed along with an object that the cursor is pointing to. *Id.* at 45.  However, this argument is premised on the object being the "information to be displayed," which is inconsistent with the argument that the "said information to be displayed" corresponds with the name of the object displayed in an information cursor. *See id.* at 36.  On this record, we do not find that the preponderance of the evidence supports Petitioner's contentions of unpatentability with respect to the obviousness of claim 73 over the combination of Malamud and Anthias.

E.     *Alleged Obviousness of Claims 12, 14, 38, 40, 60, 62, 79, and 81 over Malamud, Anthias, and Nielsen*

Petitioner argues that claims 12, 14, 38, 40, 60, 62, 79, and 81 would have been obvious over a combination of Malamud, Anthias, and Nielsen. Pet. 46–48.  For the reasons discussed below, we determine that Petitioner has not demonstrated the unpatentability of claims 12, 14, 38, 60, 62, and 79 over Malamud, Anthias, and Nielsen, but has demonstrated the unpatentability of claims 40 and 81 over Malamud, Anthias, and Nielsen.

*1. Overview of Nielsen (Ex. 1006)*

Nielsen describes "enhancements to client-side image maps in HTML based documents."  Ex. 1007, code (57).  Nielsen teaches that an HTML

IPR2018-01755
Patent 6,118,449

document can be transmitted to a user at a client system remotely from a server, and presented using an application program executing on the client computer. *Id.* at 2:16–33. The HTML document can include definitions of specific areas of a display in an image map, and indicate attributes related to them. *Id.* at 7:51–8:32. An area may be associated with a text attribute, and if a cursor is in the area for a specified period of time, it will trigger the provision of the text to a speech synthesis facility with the resulting sound presented by the client system. *Id.* at 8:18–9:13.

### 2. Claims 12, 14, 60, and 62

Claims 12, 14, 60, and 62 are each dependent, directly or indirectly, from claim 1 or claim 53. Petitioner does not present an argument with respect to the combination of Malamud, Anthias, and Nielsen that cures the deficiency in the arguments relating to the independent claims from which these claims depend. Pet. 46–48; *see* PO Resp. 19–21. For the same reasons described with respect to claims 1 and 53, the preponderance of the evidence does not support Petitioner's contention that claims 12, 14, 60, and 62 are unpatentable as obvious over Malamud, Anthias, and Nielsen.

### 3. Claims 38 and 79

Claim 38 depends from claim 27 and further requires that "said specified content information is transmitted in the form of HTML files that define a web page." Claim 79 depends from claim 72 and further requires that "said specified content further comprises HTML files that define a web page."

Petitioner's argument describes Nielsen's teachings relating to HTML web pages being transmitted and that such pages are divided into image

IPR2018-01755
Patent 6,118,449

maps, which are responsive to cursor positioning by playing an audio file. Pet 46 (arguing with respect to claim 12).

In our Institution Decision, we noted that the Petition did not explain how Nielsen's teachings would teach or suggest the transmission of "said specified content information" that the Petition described as taught by the window procedure message transmitted to the OS in Malamud, or how and whether such window procedure messages would be transmitted in HTML files, or more particularly in HTML files defining a web page. Inst. Dec. 25–26.

Petitioner argues in its Reply that Nielsen "teaches using HTML to instruct a windows-based graphical user interface to modify the information presented to a user." Pet. Reply 19–21. However, this argument is based on Petitioner's contention that the "specified content information" is taught by information beyond the cursor display messages in Malamud, including launch information, which we have rejected as untimely as discussed above. While Nielsen does describe an HTML document being presented to a user via a browser, we find no teaching or suggestion in the proposed combination that a message such as Malamud's identified cursor display message would be transmitted via HTML from a server computer responsive to a request for such a message from a user terminal.

For these reasons, the preponderance of the evidence does not support Petitioner's contention that claims 38 and 79 are unpatentable as obvious over Malamud, Anthias, and Nielsen.

*4. Claims 40 and 81*

Claim 40 depends from claim 27 and further requires that "said user terminal includes a browser application responsive to said cursor display

33

IPR2018-01755
Patent 6,118,449

instruction, said browser application executing said cursor display code using parameters defined in said cursor display instruction." Claim 81 depends from claim 72 and requires that the transforming "further comprises: employing a browser application including said cursor display code responsive to said cursor display instruction; and executing said cursor display code by employing parameters defined in said cursor display instruction."

Petitioner discusses Nielsen's teachings relating to a browser, which detects a cursor's movement and determines whether the cursor is in a defined area having an associated audio attribute, then playing the associated audio. Pet. 47–48 (citing Ex. 1006, 8:36-48, 9:64–10:6; Ex. 1003 ¶ 214).

Patent Owner does not make any arguments regarding the unpatentability of claims 40 and 81 over Malamud, Anthias, and Nielsen. Tr. 50:25–51:5.

We agree with Petitioner that, in combination with Malamud and Anthias, Nielsen teaches the claimed limitation in its teaching of a browser that detects cursor movement and plays associated audio if the cursor is in a defined area. Pet. 47–48; Ex. 1006, 8:36–48, 9:64–10:6; Ex. 1003 ¶ 214. Nielsen's browser acts in response to a cursor's movement within an image map, teaching or suggesting a browser application responsive to a cursor display instruction. Pet. 47; Ex. 1006, 8:36–39; Ex. 1003 ¶ 214. The execution of cursor display code is taught or suggested by the browser invoking a process to play a sound associated with the element corresponding to the cursor position. Pet. 47; Ex. 1006 at 8:44–48, 9:64–10:6; Ex. 1003 ¶ 214.

IPR2018-01755
Patent 6,118,449

Petitioner has shown by a preponderance of the evidence that claims 40 and 81 are unpatentable as obvious over Malamud, Anthias, and Nielsen.

F.    *Alleged Obviousness of Claims 2, 3, 5, 6, 28, 29, 31, 32, 55, 56, 58, 59, 74, 75, 77, and 78 over Malamud, Anthias, and Baker*

Petitioner argues that claims 2, 3, 5, 6, 28, 29, 31, 32, 55, 56, 58, 59, 74, 75, 77, and 78 would have been obvious over a combination of Malamud, Anthias, and Baker.  Pet. 48–52.  For the reasons discussed below, we determine that Petitioner has not demonstrated the unpatentability of claims 2, 3, 5, 6, 28, 29, 31, 32, 55, 56, 58, 59, 74, 75, 77, and 78 over Malamud, Anthias, and Baker.

*1. Overview of Baker (Ex. 1007)*

Baker describes an interface for accessing information, presented in a pictorial image with an overlaid animated character.  Ex. 1007, code (57).  Baker's animated character is responsive to an input device and "roughly corresponds to the cursor or pointer" in a "windows, icons, menus, and pointers" GUI (graphical user interface).  *Id.* at 13:5–29, 2:35–38.  Baker describes the cursor as a component of the animated character, and gives as an example the use of the foot of the animated character as the cursor.  *Id.* at 13:24–29.  Figure 3 of Baker, reproduced below, shows an animated character overlaid on a background image:

IPR2018-01755
Patent 6,118,449



FIG. 3

In Figure 3, character 22, including pin 60, is drawn over an image 12. *Id.* at 20:65–21:6. Character 22 can be moved using arrow keys, or a command can be issued that will attach the pin to the image at the indicated location. *Id.*

Baker teaches that "[a] vendor or advertiser may define and configure a particular pictorial environment for use by a client where the pictures and objects represent the vendor's goods or services." *Id.* at 11:53–56. One possibility in such cases is the Baker animated character interacting with an icon on the screen, with both icon and character becoming part of a single animation. *Id.* at 13:13:49–51.

### 2. Claims 2, 3, 5, 6, 55, 56, 58, and 59

Claims 2, 3, 5, 6, 55, 56, 58 and 59 are each dependent, directly or indirectly, from claim 1 or claim 53. Petitioner does not present an argument with respect to the combination that cures the deficiency in the arguments relating to the independent claims from which these claims depend. Pet. 48–52; *see* PO Resp. 21–23. For the same reasons described with respect to claims 1 and 53, the preponderance of the evidence does not support Petitioner's contention that claims 2, 3, 5, 6, 55, 56, 58, and 59 are unpatentable as obvious over Malamud, Anthias, and Baker.

### 3. Claims 28 and 74

Claim 28 depends from claim 27 and further requires that "said specific image comprises advertising material related to at least a portion of said information to be displayed on said display of said user's terminal." Claim 74 depends from claim 72 and adds the limitation that "said displaying of said specific image further comprises displaying advertising material related to at least a portion of said information to be displayed."

Petitioner argues that Baker discloses a cursor that conveys advertising material regarding pictures and objects appearing as icons in the pictorial image that are overlaid with the character/cursor. *Id.* at 48–49 (citing Ex. 1007, 11:53–56).

As discussed *supra*, Petitioner relies on Malamud's display of an object name in a combined name and preview cursor for the "information to be displayed." Pet. 36. The relationship between parts of the Malamud information cursor is, thus, critical to claims 28 and 74. To be consistent with that argument, the Petition must present an argument that the specific image displayed (preview image in a preview cursor) "comprises advertising

IPR2018-01755
Patent 6,118,449

material" related to the "at least a portion of said information to be displayed" (the displayed object name). Petitioner focuses instead, in its arguments for these claims, on the relationship between the cursor and the object that the cursor is pointing to, and provides no argument regarding the relationship between parts of the Malamud information cursor. *Id.* at 48–49; Pet. Reply 21–23; *see* PO Resp. 3, 21–23. Petitioner does not explain this discrepancy between its contentions for the independent claims, and its contentions for dependent claims 28 and 74, which undermines its arguments.

Thus, the preponderance of the evidence does not support Petitioner's contention that claims 28 and 74 are unpatentable as obvious over Malamud, Anthias, and Baker.

### 4. Claims 29, 31, 32, 75, 77, and 78

Claims 29, 31, and 32 each depend from claim 28, and further limit the advertising material in the specific image to comprise a brand logo, images of a good or a service, or messages relating to "said information to be displayed." Claims 75, 77, and 78 similarly depend from claim 74.

Petitioner does not present an argument with respect to the combination that cures the deficiency in the arguments relating to the claims 28 and 74. Pet. 49–52. For the same reasons described with respect to claims 28 and 74, the preponderance of the evidence does not support Petitioner's contention that claims 29, 31, 32, 75, 77, and 78 are unpatentable as obvious over Malamud, Anthias, and Baker.

### G. Alleged Obviousness of Claims 13, 39, 61, and 80 over Malamud, Anthias, Nielsen, and Baker

Petitioner argues that claims 13, 39, 61, and 80 would have been obvious over a combination of Malamud, Anthias, Nielsen, and Baker.

38

IPR2018-01755
Patent 6,118,449

Pet. 52–53.  These claims depend from claims 12, 38, 60, and 79, respectively.  Petitioner does not present an argument with respect to the combination that cures the deficiency in the arguments relating to the unpatentability of claims 12, 38, 60, and 80 over Malamud, Anthias, and Nielsen.  Pet. 52–53; *see* PO Resp. 23.  For the same reasons described with respect to claims 12, 38, 60, and 79 relating to patentability over Malamud, Anthias, and Nielsen, the preponderance of the evidence does not support Petitioner's contention that claims 13, 39, 61, and 80 are unpatentable as obvious over Malamud, Anthias, Nielsen, and Baker.

> ## H.  *Alleged Obviousness of Claims 1, 7, 15, 27, 33, 41, 53, 54, 63, 72, 73, and 82 over Baker and Anthias*

Petitioner argues that claims 1, 7, 15, 27, 33, 41, 53, 54, 63, 72, 73, and 82 would have been obvious over a combination of Baker and Anthias. Pet. 53–65.  For the reasons discussed below, we determine that Petitioner has not demonstrated the unpatentability of claims 1, 7, 15, 27, 33, 41, 53, 54, 63, 72, 73, and 82 over Baker and Anthias.

> ### a.  *Claim 1*

Petitioner argues that claim 1 would have been obvious over Baker and Anthias.  Pet. 53–61.

> #### (1) *Claim 1 – Preamble and limitations [a] and [b]*

With respect to the preamble, Petitioner argues that Baker's animated character teaches the cursor image, which is modified to a "specific image" when the animated character takes on a new position depending on the location of the cursor on screen.  Pet. 53 (citing Ex. 1007, 13:12–13, 13:47–52, 21:6–8; Ex. 1003 ¶ 290).

Petitioner argues that a "server" and "remote user's terminal" are found in Anthias' teaching of a data processing system implemented with a

IPR2018-01755
Patent 6,118,449

client/server model, in which an application running on a remote system (denoted "client" in Anthias) controls a display on a terminal, including the use of a modified cursor in certain window areas. *Id.* at 54 (referring to Pet. 31, citing Ex. 1005, 1:24–33; Ex. 1003 ¶ 291). Petitioner contends that one of ordinary skill would have combined Baker and Anthias, as contemporary references each dealing with responding to a cursor location on a screen, in order to reduce storage requirements and processing overhead at the user terminal. *Id.* at 27–29, 54 (citing Ex. 1005, 2:30–34; Ex. 1003 ¶¶ 111–112, 291.)

      With respect to limitation [a] of claim 1, Petitioner argues that Baker teaches storing information about the cursor's size and specific position in a "character_model list/array," and that such information is "cursor image data" as per limitation [a]. Pet. 55 (citing Ex. 1007, 23:1–29; Ex. 1003 ¶ 299). Additionally, Petitioner argues that Baker's character_model contains location information for animation frames for the animated cursor, which is also "cursor image data." *Id.* (citing Ex. 1007, 23:24–26; Ex. 1003 ¶ 299).

      For limitation [b] of claim 1, Petitioner argues Baker would have been understood by a person of ordinary skill in the art to include the limitation's "functions or applications to display and modify graphics" on the user interface including cursors. Pet. 55 (citing Ex. 1007, 2:32–56; Ex. 1003 ¶ 303).

      Patent Owner does not make any arguments relating to whether these teachings of Baker and Anthias teach or suggest the preamble or limitations [a] or [b] of claim 1. *See, e.g.*, PO Resp. 25–29.

IPR2018-01755
Patent 6,118,449

We agree with Petitioner that the combination of Baker and Anthias teaches the preamble and limitations [a] and [b] of claim 1.

*(2) Claim 1- limitations [c.i], [c.ii], [c.iii], and [c.iv]*

Petitioner argues that the combination of Baker and Anthias teaches limitation [c.i] of claim 1, as Baker describes a pictorial UI system that, together with Anthias' distributed client/server architecture, would teach the first server computer transmitting information used to modify the animated character cursor. Pet. 56 (citing Ex. 1003 ¶¶ 308–311). Petitioner, as discussed, argues that the "character_model" as taught in Baker includes location information for animation frames for the animated cursor. *Id.* at 55. In order to show how Baker teaches or suggests the transmission (as required in limitation [c.i]) by a first server computer of specified content, including (as required in limitation [c.ii]) a location of said cursor image data, Petitioner contends that Baker's "character_model" is provided to the OS by the pictorial UI. Pet. 56–57 (citing Ex. 1007, Appendix E; Ex. 1003 ¶¶ 308–311, 315). Petitioner additionally notes that information in character_model is provided to the OS to execute cursor animations. Pet. 57–58 (citing Ex. 1007, Abstract, 23:1–29; Ex. 1003 ¶ 316).

Petitioner's citation to Baker for the contention that the "character_model" data structure is requested from the pictorial UI is to Appendix E of Baker. *Id.* at 57. Appendix E is 39 pages, and it is unclear where in Appendix E Baker teaches or suggests a request by an OS for the character_model data structure from the pictorial UI. Ex. 1007, cols. 117–194. Appendix E provides a list of "internal procedures," which are used to implement the system functions, along with procedure prototype and a description of the procedure. *Id.* at 31:48–56. Petitioner also relies on the

41

IPR2018-01755
Patent 6,118,449

transmission of "character_model" as part of the specified content information to teach or suggest limitation [c.iii].  Pet. 58–59.

Patent Owner argues that the Petition does not point to sufficient evidence in Baker for the transmission of the "character_model" data structure from the pictorial UI (which Petitioner argues teaches the first server computer) as required by claim 1.  PO Resp. 28.  Patent Owner further argues that the cited Appendix E lists internal procedures used to implement system functions and actions, but that Petitioner did not identify which of the procedures teaches or suggests a request from the pictoral UI for the character_model data structure.  *Id.*  Generally, Petitioner, in reply, argues that the Petition cited a portion of Dr. Bederson's declaration describing transmission of the information in the character_model in Baker from the pictorial UI to the OS in the play_animation procedure.  Pet. Reply 16 (citing Inst. Dec. 35).  Dr. Bederson's declaration does describe the play_animation procedure as "read[ing] and updat[ing] the character_model when modifying the location, size, and appearance of the animated character cursor."  Ex. 1003 ¶ 315; *see also* Pet. 57 (substantially similar language).

However, even were we to credit Petitioner's argument that the play_animation procedure was sufficiently identified in the Petition as the portion of Baker that teaches or suggests the transmission of specified content information, no description is provided relating to which portion of the Baker system utilizes these functions, including play_animation.  While the Petition describes play_animation as a function that "reads and updates" character_model, this does not describe transmission of character_model from the pictorial UI to the OS as required by the Petitioner's other arguments regarding the teachings of Baker, and by limitation [c.iii] of

42

IPR2018-01755
Patent 6,118,449

claim 1.   Given the gaps in Petitioner's arguments and evidence relating to character_model, Petitioner has not met the burden of demonstrating unpatentability.

Given these deficiencies with respect to Petitioner's theory of unpatentability with respect to limitation [c.iii], we do not find that the preponderance of the evidence supports Petitioner's contentions of unpatentability with respect to the obviousness of claim 1 over the combination of Baker and Anthias.

b.  *Claims 27, 53, and 72*

Claims 27, 53, and 72 are argued on similar grounds as claim 1. Pet. 62–64, 65.  For the same reasons described with respect to claim 1, the preponderance of the evidence does not support Petitioner's contention that claims 27, 53, and 72 are unpatentable as obvious over Baker and Anthias.

c.  *Claims 7, 15, 33, 41, 54, 63, 73, and 82*

Claims 7, 15, 33, 41, 54, 63, 73, and 82 are each dependent from one of claims 1, 27, 53, or 72.  Petitioner does not present an argument with respect to the combination of Baker and Anthias that cures the deficiency in the arguments relating to the independent claims from which these claims depend.  Pet. 61, 62, 64, 65.  For the same reasons described with respect to the independent claims, the preponderance of the evidence does not support Petitioner's contention that claims 7, 15, 33, 41, 54, 63, 73, and 82 are unpatentable as obvious over Baker and Anthias.

I.  *Alleged Obviousness of Claims 12, 14, 38, 40,*
*60, 62, 79, and 81 over Baker, Anthias, and Nielsen*

Petitioner argues that claims 12, 14, 38, 40, 60, 62, 79, and 81 would have been obvious over a combination of Baker, Anthias, and Nielsen. Pet. 65–66.  Petitioner does not present an argument with respect to the

43

IPR2018-01755
Patent 6,118,449

combination that cures the deficiency in the arguments relating to the unpatentability of the independent claims from which these claims variously depend, namely claims 1, 27, 53, and 72, over the combination of Baker and Anthias. *Id.*; *see* PO Resp. 30–31. For the same reasons described with respect to claims 1, 27, 53, and 72, the preponderance of the evidence does not support Petitioner's contention that claims 12, 14, 38, 40, 60, 62, 79, and 81 are unpatentable as obvious over Malamud, Anthias, Nielsen, and Baker.

## IV. CONCLUSION[7]

Based on the evidence presented with the Petition, the evidence introduced during the trial, and the parties' respective arguments, Petitioner has shown by a preponderance of the evidence that claims 27, 33, 41, 72, and 82 are unpatentable under § 103(a) as obvious over Malamud and Anthias, and that claims 40 and 81 are unpatentable under § 103(a) as obvious over Malamud, Anthias, and Nielsen. However, Petitioner has not shown by a preponderance of the evidence that any other claims are unpatentable on the other grounds advanced in the Petition, as discussed above and set forth in the chart below.

———————————

[7] Should Patent Owner wish to pursue amendment of the challenged claims in a reexamination proceeding subsequent to the issuance of this decision, we draw Patent Owner's attention to the April 2019 Notice Regarding Options for Amendments by Patent Owner Through Reissue or Reexamination During a Pending AIA Trial Proceeding. See 84 Fed. Reg. 16,654 (Apr. 22, 2019). If Patent Owner chooses to file a request for reexamination of the challenged patent, we remind Patent Owner of its continuing obligation to notify the Board of any such related matters in updated mandatory notices. See 37 C.F.R. § 42.8(a)(3), (b)(2).

IPR2018-01755
Patent 6,118,449

In summary:

| Claims | 35 U.S.C. § | Reference(s)/Basis | Claims Shown Unpatentable | Claims Not shown Unpatentable |
|---|---|---|---|---|
| 1, 7, 15, 27, 33, 41, 53, 54, 63, 72, 73, 82 | 103(a) | Malamud, Anthias | 27, 33, 41, 72, 82 | 1, 7, 15, 53, 54, 63, 73 |
| 12, 14, 38, 40, 60, 62, 79, 81 | 103(a) | Malamud, Anthias, Nielsen | 40, 81 | 12, 14, 38, 60, 62, 79 |
| 2, 3, 5, 6, 28, 29, 31, 32, 55, 56, 58, 59, 74, 75, 77, 78 | 103(a) | Malamud, Anthias, Baker | | 2, 3, 5, 6, 28, 29, 31, 32, 55, 56, 58, 59, 74, 75, 77, 78 |
| 13, 39, 61, 80 | 103(a) | Malamud, Anthias, Nielsen, Baker | | 13, 39, 61, 80 |
| 1, 7, 15, 27, 33, 41, 53, 54, 63, 72, 73, 82 | 103(a) | Baker, Anthias | | 1, 7, 15, 27, 33, 41, 53, 54, 63, 72, 73, 82 |
| 12, 14, 38, 40, 60, 62, 79, 81 | 103(a) | Baker, Anthias, Nielsen | | 12, 14, 38, 40, 60, 62, 79, 81 |
| **Overall Outcome** | | | 27, 33, 40, 41, 72,  81, 82 | 1–3, 5–7, 12–15, 28, 29, 31, 32, 38, 39, 53–56, 58–63, 73–75, 77–80 |

## V.  ORDER

In consideration of the foregoing, it is hereby:

ORDERED that claims 1–3, 5–7, 12–15, 28, 29, 31, 32, 38, 39, 53–56, 58–63, 73–75, and 77–80 of the '449 patent are not determined to be unpatentable;

IPR2018-01755
Patent 6,118,449

ORDERED that claims 27, 33, 40, 41, 72, 81, and 82 of the '449 patent are determined to be unpatentable; and

FURTHER ORDERED that, because this is a Final Written Decision, the parties to the proceeding seeking judicial review of the decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.

IPR2018-01755
Patent 6,118,449

PETITIONER:

James F. Valentine
Daniel T. Shvodian
Victoria Q. Smith
Amisha K. Manek
PERKINS COIE LLP
valentine-ptab@perkinscoie.com
shvodian-ptab@perkinscoie.com


 PATENT OWNER:

Tarek N. Fahmi
Holly J. Atkinson
ASCENDA LAW GROUP, PC
tarek.fahmi@ascendalaw.com
holly.atkinson@ascendalaw.com


kis