**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| LEXOS MEDIA IP, LLC,<br><br>         Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>         Defendant. | Civil Action No. 2:22-CV-00169-JRG<br>(Lead Case) |
| LEXOS MEDIA IP, LLC,<br><br>         Plaintiff,<br><br>v.<br><br>TARGET CORPORATION,<br><br>         Defendant. | Civil Action No. 2:22-CV-00175-JRG<br>(Member Case) |
| LEXOS MEDIA IP, LLC,<br><br>         Plaintiff,<br><br>v.<br><br>OFFICE DEPOT, LLC,<br><br>         Defendant. | Civil Action No. 2:22-CV-00273-JRG<br>(Member Case) |

**RESPONSE CLAIM CONSTRUCTION BRIEF OF DEFENDANTS AMAZON.COM,
INC., TARGET CORPORATION, AND OFFICE DEPOT, LLC**

# TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION ...................................................................................................... 1

II.    BACKGROUND OF THE TECHNOLOGY .......................................................... 2

     A.     Priority Date of the Patents-in-Suit .......................................................... 2

     B.     State of the Art Before June 1997 ............................................................. 2

III.    SUMMARY OF THE PATENTS .............................................................................. 4

IV.    LEGAL STANDARD ................................................................................................ 6

V.     ARGUMENT .............................................................................................................. 6

     A.     "cursor display code" and "cursor display instruction" .......................... 6

         1.      "cursor display code" ................................................................... 6

         2.      "cursor display instruction" ........................................................ 8

     B.     "cursor image" and "initial cursor image" ............................................... 9

     C.     "cursor image data" ................................................................................. 15

     D.     "modifying," "transforming," etc. ........................................................... 15

     E.     "specific image" ...................................................................................... 16

     F.     "tracks a movement" ............................................................................... 20

     G.     "promotional material" ........................................................................... 22

         1.      Legal Standard for the Printed Matter Doctrine. .................................. 23

         2.      Promotional Material Is Subject to the Printed Matter Doctrine and Not Entitled to Patentable Weight. ....................................................... 24

             a.      "Promotional Material" is directed to printed matter. ............. 24

             b.      "Promotional material" is not functionally related to display or other aspects of the claims. ...................................... 25

VI.    CONCLUSION ......................................................................................................... 26

# TABLE OF AUTHORITIES

**CASES**          **PAGE(S)**

*AFG Indus. Inc. v. Cardinal IG Co.*,
   239 F.3d 1239 (Fed. Cir. 2001) .................................................................................20

*Apple, Inc. v. Ameranth, Inc.*,
   842 F.3d 1229 (Fed. Cir. 2016) ...................................................................................7

*C R Bard Inc. v. AngioDynamics, Inc.*,
   979 F.3d 1372 (Fed. Cir. 2020) .........................................................................23, 24

*Digital Retail Apps, Inc. v. H-E-B, LP*,
   No. 6:19-cv-000167, 2020 WL 376664 (W.D. Tex. Jan. 23, 2020) ...........................22, 23, 25

*Ex Parte Gwinn*,
   112 USPQ 439 (Bd. Pat. App. & Int. 1955) .............................................................26

*Exigent Tech., Inc. v. Atrana Sols., Inc.*,
   442 F.3d 1301 (Fed. Cir. 2006) .................................................................................10

*In re DiStefano*,
   808 F.3d 845 (Fed. Cir. 2015) ........................................................................23, 24, 25

*In re Gulack*,
   703 F.2d 1381 (Fed. Cir. 1983) .................................................................................23

*In re Jie Xiao*,
   462 F. App'x 947 (Fed. Cir. 2011) .....................................................................23, 25

*In re Ngai*,
   367 F.3d 1336 (Fed. Cir. 2004) .................................................................................22

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008) .................................................................................10

*Oil States Energy Servs., L.L.C. v. Trojan Wellhead Prot., Inc.*,
   No. 6:12-cv-611, 2014 WL 12360946 (E.D. Tex. Jun. 23, 2014) ...........................6

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ...................................................................................2

*Praxair Distrib., Inc. v. Mallinckrodt Hosp. Prods. IP Ltd.*,
   890 F.3d 1024 (Fed. Cir. 2018) .................................................................................22

*SuperGuide Corp. v. DIRECTV Enters., Inc.*,
   358 F.3d 870 (Fed. Cir. 2004) ...................................................................................18

**TABLE OF AUTHORITIES (continued)**

<u>**PAGE(S)**</u>

*Thorner v. Sony Comput. Ent. Am. LLC,*
  669 F.3d 1362 (Fed. Cir. 2012)..............................................................................8

*TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.,*
  529 F.3d 1364 (Fed. Cir. 2008)............................................................................18

*U.S. Surgical Corp. v. Ethicon, Inc.,*
  103 F.3d 1554 (Fed. Cir. 1997)..............................................................................6

**OTHER AUTHORITIES**

MPEP § 2111.05 (9th ed. Rev. 7.2022, February 2023)........................................24, 26

162422898

**TABLE OF ABBREVIATIONS**

| Abbreviation | Term |
|---|---|
| '102 patent | U.S. Patent No. 5,995,102 |
| '449 patent | U.S. Patent No. 6,118,449 |
| '241 patent | U.S. Patent No. 7,975,241 |
| Pltf's Br. | Dkt. No. 98-3 (Plaintiff's Opening Claim Construction Brief) |
| POSITA | Person of ordinary skill in the art |

## I.      INTRODUCTION

The three patents-in-suit[1] describe a simple idea: using a cursor for marketing or advertising by changing its appearance to match content from the webpage the user is visiting.  This requires no complex means; the cursor image is modified from an initial image, such as a standard arrow shaped cursor, to an image that relates to other subject matter displayed on the screen, like a baseball bat shaped cursor on a sports website.  Much of the technology and functionality concern things every computer user for the past three decades should be comfortable with from their routine computer use, such as the cursor on a computer screen that moves in response to input from a mouse or trackpad.

Despite the straightforward nature of the technology, there remains a limited number of claim terms that require construction.  Defendants Amazon.com, Inc., Office Depot, LLC, and Target Corp. (together, "Defendants") have proposed constructions for those terms supported by both the intrinsic and extrinsic evidence.  Lexos, however, asks the Court to construe a number of additional terms that would be readily understood by a jury or do not relate to any disputed issues between the parties.  Moreover, several of Lexos's proposed constructions are incorrect or offer less clarity than the claim terms themselves and would muddy arguments that a jury would otherwise easily comprehend.  Those proposed constructions should be rejected.

---

[1] The patents-in-suit are U.S. Patent No. 5,995,102 ("the '102 patent") (Ex. A), U.S. Patent No. 6,118,449 ("the '449 patent") (Ex. B), and U.S. Patent No. 7,975,241 ("the '241 patent") (Ex. C).  Because the specifications of those three patents are substantively the same but vary slightly due to formatting and non-substantive differences, all citations herein to their specifications are to the '102 patent unless otherwise noted.

## II.      BACKGROUND OF THE TECHNOLOGY

### A.      Priority Date of the Patents-in-Suit

The earliest possible priority date for the '102 and '449 patents is June 25, 1997.  ('102 patent at cover page; '449 patent at cover page.)  The priority date for the '241 patent is currently in dispute between Lexos and the Patent Office.  The '241 patent does not contain a priority claim to an earlier-filed application, and therefore it is entitled to a priority date of January 21, 2005. ('241 patent at cover page.)  Lexos has requested a certificate of correction to add a priority claim back to June 25, 1997, but the Patent Office has rejected that request.  (*See* Ex. D at 2.)  Neither party, however, contends that the meaning of any claim term in the '241 patent changed between those two dates.

### B.      State of the Art Before June 1997[2]

A graphical user interface ("GUI") was the predominant form of human-computer interface by 1997.  (*See, e.g.*, Ex. E at 1 (discussing a user interface comprising a cursor and mouse in 1968); Ex. F at 158, Fig. 5-1 (depicting a GUI in 1994 from Windows 3.1).)  A GUI generally uses graphical icons to represent computer files and applications, and users can interact with the icons using a pointing device, such as a mouse, rollerball, touchpad, or stylus pen.

When a user moves a pointing device, an image called a "cursor" moves correspondingly onscreen.  (Ex. G at 723.)  The cursor image is the actual image drawn by the operating system ("OS") or application to visually indicate the cursor's position on the screen.  (Ex. F at 268.)

---

[2] The state of the art is relevant to claim construction because claims are construed from the perspective of a POSITA as of the patents' priority date.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) ("We have made clear, moreover, that the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application.").

Cursor images generally include a single pixel, called the "hotspot," that identifies the location on the screen where input from a user, such as a mouse click, would have an effect.  (Ex. H at 33.)

While OSs have for decades provided standard images for cursors, such as an arrow or a pointing hand, they also allowed applications to customize the appearance of cursors.  (Ex. I at 98.)  Because cursors were a part of the user experience and the user's attention was often focused on or near the onscreen cursor image, computer designers commonly placed additional information around the cursor.  For example, U.S. Patent No. 5,754,176 to Crawford (filed on October 2, 1995) describes a "tooltip" system built into Microsoft Windows to display help information when a user held the cursor over an object displayed on the screen.  (Ex. J at 2:28-37.)  Similarly, U.S. Patent No. 5,937,417 to Nielsen (filed on May 7, 1996) described the use of tooltips in conjunction with webpages downloaded from servers.  (Ex. K at Abstract ("A method and apparatus that allows a Web page designer to specify tooltips for his Web page.  Tooltips are text areas that display auto-matically when the user places the cursor over predetermined text on a display device.").)

In other prior systems, such as the one disclosed in U.S. Patent No. 6,437,800 to Malamud (issued from an initial application filed on April 28, 1993), the additional information was dis-played as part of a modified cursor image.  (Ex. L at Abstract.)  When the user placed a cursor over text or an image displayed on the screen, Malamud's system would display a modified cursor image that included additional information (text and/or images) about the object pointed to by the cursor.  (*See, e.g.*, *id*. at Figs. 2B, 2C, 3 and 4 (depicting different types of information cursors).)  As Malamud explains:

> The present invention provides "information cursors" which display graphical or textual information about an object to which the cursor points.  Each information cursor has two portions: a pointing portion and an information portion.  The pointing portion points to a position on a video display.  The information portion displays textual or

> graphical information about the object to which the pointing portion
> points.

(*Id*. at 2:66-3:6.)

## III.   SUMMARY OF THE PATENTS

The '102 patent admits that it was "not new" to change the shape of cursor images:

> Presently, pointer icons change from application to application and
> can also change within an application depending upon where on the
> screen the pointer is located, what state the computer exists in at a
> given moment, and what tools are being used, among other factors.

('102 patent at 3:39-44.)  The inventors, however, ignored previous work done in the field (*see supra* Section II(B)) and misrepresented that prior art cursors were only modified to represent functionality or the state of the computer or application.  (*Id*. at 3:44-46 ("Generally, pointers change shape to reflect an internal state of the computer or the present function within an application.").)  The inventors identified other alleged deficiencies in the prior art:

> While it is not new for pointers and cursors to change shape, pointers
> are not presently used to convey advertising.  In conventional sys-
> tems, the appearance of the cursor or pointer does not change to cor-
> respond with on-line content being displayed on the screen.

(*Id*. at 3:46-50.)  Thus, the Background section of the patent asserts that "there is a need for a simple means to deliver advertising elements, *i.e.*, logos, animations, sound, impressions, text, etc., without the annoyance of totally interrupting and intrusive content delivery, and without the passiveness of ordinary banner and frame advertisements which can be easily ignored."  (*Id*. at 2:27-32.)

The '102 patent purports to address those alleged deficiencies through "[a] system for modifying a cursor image … to a specific image having a desired shape and appearance" (*id*. at Abstract) where the specific image represents a corporate name or logo, a brand logo, an advertising or marketing icon or slogan, or an animated advertising image, to provide on-screen advertising.

(*Id*. at 2:44-47, 2:63-3:3, 3:64-4:3.)  The cursor's appearance can also correspond to the content displayed on the user's screen.  (*Id*. at 2:58-62, 7:7-9.)  For example, the patent discloses that the cursor modification can be the rendering of the cursor as a baseball bat on a sports website (*id*. at 17:33-34) or as a pink cursor on a website about Pink Panther (*id*. at 17:34-35).  The patent provides other examples of a modified cursor image, such as a witch on a broomstick for Halloween (*id*. at 17:35-36) or as the Statue of Liberty for Fourth of July (*id*. at 17:36-37).

Figure 8 of the '102 patent, annotated below, shows an example in which the cursor is modified from a standard pointer arrow (shown in Figure 7 of the '102 patent) into the "specific image" of a bottle (designated "44a" and with the red circle highlight added) to advertise a cola drink:



**Figure 8 (annotated).**

## IV.     LEGAL STANDARD

Because the Court is well versed in the legal standards applicable to claim construction, Defendants will only address specific legal issues as they relate to particular claim terms below.

## V.     ARGUMENT

### A.     "cursor display code" and "cursor display instruction"

Both "cursor display code" and "cursor display instruction" are straight-forward terms that require no explanation to a jury, as their plain and ordinary meanings are easily understood.  More-over, Lexos's proposed constructions add limitations that are superfluous in view of other portions of the claims or are unsupported and ambiguous, thereby adding confusion for prospective jurors.

### 1.     "cursor display code"

| Claim Term | Lexos's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "cursor display code"<br><br>'102 patent, claim 72;<br>'449 patent, claims 1, 38, 53. | "computer code for modifying the display of the cursor image" | Plain and ordinary meaning. No construction required. |

"Cursor display code" has a straightforward meaning that comports with the words of the claim limitation—code for cursor display.  The term needs no construction, as that meaning would be easily understood by a jury viewing the claims and patents.  *See, e.g., Oil States Energy Servs., L.L.C. v. Trojan Wellhead Prot., Inc.*, No. 6:12-cv-611, 2014 WL 12360946, at *10 (E.D. Tex. Jun. 23, 2014) (term "engaging the locking member of the first lockdown mechanism" was "unambiguous and easily understood," and thus "no construction [was] necessary."); *see also U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement.  It

is not an obligatory exercise in redundancy.").  Indeed, Lexos concedes that the claim term is understandable to a jury as it uses each word of the claim term in its proposed construction.

Lexos, however, seeks to rearrange the words of the claim and add superfluous verbiage. But reordering claim terms with unnecessary window dressing is not construing a term—it is obfuscating its plain meaning.  First, Lexos changes "code" to "computer code."  This is not needed as anyone reading the patents or claims would understand that the "code" referenced in the claims is computer code, not, for example, Morse code or genetic code.  Second, Lexos changes "cursor display" to "display of the cursor image."  Again, this change is not needed as anyone, including a lay jury, reading the patents and claims would understand that "cursor display" in the claims refers to the image of the cursor displayed on the screen.  Lexos's proposed construction says the same thing using more words.

Third, Lexos's proposed construction adds the words "for modifying."  That the "cursor display code" is used to modify the cursor image, however, is recited elsewhere in the claims. (*See, e.g.*, '102 patent at 24:30-32 ("… cursor display code operable to process said cursor display instruction to **modify said cursor imag**e …") (emphasis added); '449 patent at 18:45-46 ("… said cursor display code operable to **modify said cursor image** …") (emphasis added); *id*. at 20:40-41 (same); *id*. at 22:50-51 ("… cursor display code operable to process said cursor display instruction to **modify said cursor imag**e …") (emphasis added).)  *See Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1237 (Fed. Cir. 2016) (affirming Patent Trial and Appeal Board construction for "menu" because allegedly-missing aspects of construction were "already recited in the claims," and would have "ma[d]e those expressly recited features redundant.").  Therefore, adding "for modifying" to the construction "cursor display code" would be superfluous and potentially confusing.

Thus, "cursor display code" need not be construed and should be ascribed its plain and ordinary meaning.

### 2.    "cursor display instruction"

| Claim Term | Lexos's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "cursor display instruction"<br><br>'102 patent, claim 72;<br>'449 patent, claims 1, 38, 53;<br>'241 patent, claim 35. | "an instruction operable to modify the display, in conjunction with other information, of a cursor image" | Plain and ordinary meaning. No construction required. |

Like "cursor display code," "cursor display instruction" has a straightforward meaning—an instruction for cursor display.  The term requires no construction, as Lexos fails to offer any explanation of why a jury would not understand this term, or otherwise identify any reason to depart from the term's plain and ordinary meaning (such as the inventors acting as their own lexicographers or disavowing claim scope).  *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (noting that a construction can deviate from plain and ordinary meaning "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution.").

Lexos nevertheless proposes a construction in which it once again rearranges the words of the limitation and adds language that is superfluous over other portions of the claims.  For example, Lexos's proposed construction adds "to modify the display … of a cursor image."  The claims, however, recite elsewhere that that cursor display instruction is an instruction to modify the displayed cursor image.  (*See, e.g.*, '102 patent at 24:30-32 ("… operable to process said cursor display instruction to **modify said cursor imag**e …") (emphasis added); '449 patent at 18:51-53 ("… said cursor display instruction and said cursor display code operable to cause said user terminal to display a **modified cursor image** …") (emphasis added); *id*. at 20:46-48 (same); *id*. at 22:50-51

("… operable to process said cursor display instruction to **modify said cursor imag**e …") (emphasis added).)  Moreover, Lexos's proposed construction adds the ambiguous clause "in conjunction with other information," without any explanation of what that other information may be.  This proposed term is nothing more than an open-ended invitation to introduce complexity where it is unnecessary.  The claim term's plain meaning is straightforward, but proposing an imprecise term like "information" with no modifiers to define its scope (let alone its meaning) will only result in further debates between the parties about a term with no grounding in the intrinsic evidence.  Lexos's proposed construction, therefore, adds superfluous and ambiguous language that will only confuse a jury, rather than provide clarification.

Thus, no construction is necessary and Lexos's proposed instruction is inappropriate.

### B.      "cursor image" and "initial cursor image"

| Claim Term | Lexos's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "cursor image" and "initial cursor image"<br><br>'102 patent, claim 72;<br>'449 patent, claims 1, 27, 53. | "the appearance of the cursor on a user's screen before the cursor image is modified into the specific image"<br><br>(Plaintiff contends that the terms "cursor image" and "initial cursor image" should be construed together and to mean the same thing.) | "cursor image" – "a movable image on a display screen whose position is controlled through a user interface and that indicates the location that will be affected by input from the user interface"<br><br>(Defendants contend that "cursor image" should be construed as a standalone term.  Other than defining "cursor image" as set forth above, Defendants propose a plain and ordinary meaning for the terms "initial cursor image" and "said cursor image."  No additional construction of those terms is needed.) |

There is a clear dispute between the parties concerning the meaning of "cursor image," specifically in defining which images on a display screen comprise the "cursor image," that cannot

be resolved by resort to the plain and ordinary meaning of that term.  This claim therefore requires construction.  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co*., 521 F.3d 1351, 1362–63 (Fed. Cir. 2008).  And while reference to the accused product is not appropriate for construing a claim term, it is appropriate for demonstrating the need to construe a particular term.  *See Exigent Tech., Inc. v. Atrana Sols., Inc*., 442 F.3d 1301, 1309 n.10 (Fed. Cir. 2006) ("[I]t is appropriate for a court to consider the accused device when determining what aspect of the claim should be construed.").

The dispute over "cursor image" can be concretized through the example of the brown recliner web page from Amazon's website that is shown in Lexos's Amended Complaint (Dkt. 12 at 11) and Lexos's Opening Brief (Pltf's Br. at 8).[3]  When the cursor is located elsewhere on the page, the full image (i.e., all pixels) of the recliner can be seen, as shown below:



When the cursor is moved over the chair, an array of blue dots surrounds the pointing hand and a close-up image of the chair is depicted on the right side of the page separate from the cursor.

---

[3] This webpage as it existed in the 2017 time frame can be accessed through the Internet Archive's Wayback Machine at https://web.archive.org/web/20160530141608/http://www.amazon.com/ACME-Arcadia-Recliner-Chocolate-Microfiber/dp/B002WGJHHW.

In between the blue dots that surround the pointing hand, the pixels from the image of the chair can still be seen, as shown in this second image:



In its opposition to Amazon's motion for judgment on the pleadings, Lexos contended that the "cursor image" includes the image of the pointing hand, the array of dots, **and** the portions of the chair image that can be seen between the dots.  (*See* Dkt. No. 25 at 3 ("the Amazon website transformed the initial cursor image on a web page into a 'specific image' comprising the shaded and semi-transparent box described above **that included an image representative of the product that is the subject of the displayed web page**.") (emphasis in original).)[4]  The pixels that comprise the image of the chair, however, were already present before the cursor was moved over them, do not move as the user moves the positioning device, such as a mouse, and do not indicate the location that will be affected by input from the user interface.  The Court must therefore resolve the dispute between the parties regarding the meaning of "cursor image" so that a trier of fact can

---

[4] Lexos makes similar contentions against Office Depot and Target in Lexos's Infringement Contentions for each of those Defendants.

assess Lexos's assertion that, for example, pixels comprising the image of the recliner constitute part of the "cursor image."

The intrinsic evidence supports Defendants' construction of "cursor image."  The patents-in-suit explain the relationship between a user's positioning device, such as a mouse, the image of the cursor displayed on the screen, and other images displayed on the screen:

> Nearly all online computer interfaces utilize a wired or remote control positioning device such as a mouse or roller or track ball which ***controls the cursor's movement on the screen***.  It is the cursor controlled by the mouse or positioning device which a user uses to "navigate" or ***move the cursor over objects, buttons, menus, scroll bars, etc., which appear on-screen*** and then clicking or in some cases double-clicking in order to activate a screen or task, or to commence an application or some function.

('102 patent at 3:25-34 (emphasis added).)  That passage describes how the positioning device "controls the cursor's movement," and it distinguishes the cursor image from the other images/objects displayed on the screen that the cursor can be moved "over."  (*Id.*; *see also id.* at 8:28-34 ("Fundamental to the graphical user interface is the pointing device, generally mouse 22 which allows the user to manipulate or input information into the user terminal 14.  Movement of mouse 22 is monitored by user terminal 14 which translates this movement into a corresponding movement of cursor 44 viewable on video monitor 24.").)  In other words, content images that the user cannot move are not part of the cursor image. There is no support for any contention that, when the cursor is moved over and partially covers an object's image on the screen, the object image becomes part of the cursor image.

In light of that disclosure in the patents, Defendants have proposed that "cursor image" be construed as "a movable image on a display screen whose position is controlled through a user interface and that indicates the location that will be affected by input from the user interface."  Not

only does this construction align with the intrinsic evidence cited above, it is also supported by extrinsic evidence defining a cursor:

- "An on-screen icon that the user manipulates by moving the mouse, or in some cases, by using the arrow keys from the keyboard.  The arrow, watch, and I-beam are common Macintosh cursors."  (Ex. G at 723.)

- "A symbol on a display screen that indicates the active position, e.g., the position at which the next character to be entered will be displayed.  The underline symbol is often used: it is made to blink of flash so that it is easily noticed and can be distinguished from an underline that is part of the text.  Other symbols, such as an arrow, pointing finger, or cross are also used.  The exact shape can be used to convey status information to the user.  The cursor can be moved to a new position on the screen by means of arrow keys on the keyboard or a pointing device such as a mouse." (Ex. M at 114-15.)

In its Opening Brief, Lexos argues that Defendants' proposed construction conflicts with two disclosures in the specification.  First, Lexos points to an "alternative embodiment" in which, under specified conditions such as a period of inactivity, the position of the cursor image might be controlled by a remote server for a limited period of time.  (Pltf's Br. at 15-16; *see also* '102 patent at 14:29-47.)  There is nothing in the asserted claims that addresses this alternative embodiment, nor is there anything in Lexos's infringement allegations that concerns this alternative embodiment.  It is therefore a nonissue in regard to this litigation.  But to the extent the Court believes that this alternative embodiment must be accounted for in the construction, Defendants propose that their construction be slightly modified to "a movable image on a display screen whose position ***can be*** controlled through a user interface and that indicates the location that will be affected by input from the user interface."

Second, Lexos points to a portion of the specification that discusses another alternative embodiment where the cursor image can be changed as it is moved around the screen, for example, such that a straw in a drink points toward another image on the screen.  (Pltf's Br. at 16-17; *see also* '102 patent at 17:15-31.)  That portion of the specification does not contradict Defendants'

construction because it discloses changing the cursor image as the user moves the cursor, such as changing the direction the straw points.  It does not disclose that the location of the cursor is controlled by a server or any other external device.  Instead of contending with the intrinsic evidence that supports Defendants' construction, Lexos is left relying on a series of non-sequiturs that fails to undermine Defendants' proposal.

As to Lexos's proposed construction, it does not provide any guidance to distinguish between the "cursor image" and other images displayed on the screen.  Instead, Lexos's proposed construction simply attempts to distinguish between which uses of "cursor image" in the claims refer to the cursor image before or after the image is modified.  But nothing about the term "cursor image," in either the words themselves or how they are used in the specification, require importing the concept of modification into those terms, as opposed to other language used in the claims.  Indeed, the patents' claims make clear which references concern the cursor image before or after modification, and infusing "modification" into cursor image will only result in more confusion over the term's meaning, not less.[5]  Moreover, Lexos's proposed construction of "cursor image" is incorrect because it conflicts with instances when the term "cursor image" is used in the claims to refer to the modified cursor image, such as "said *cursor image* in the shape and appearance of said specific image."  ('102 patent at 24:31-33 (emphasis added).)  A "cursor image" in the shape and appearance of the specific image refers to the modified cursor image, directly contradicting

---

[5] For example, the parties agree that in claim 72 of the '102 patent, "transforming said initial *cursor image*," "modify said *cursor image*," and "responsive to movement of said *cursor image*" all refer to the cursor image before modification, and "said *cursor image* in the shape and appearance of said specific image" refers to the cursor image after modification.  This is made clear by the context of the term in the claims.  The same is true for the asserted claims of the '449 and '241 patents.  Therefore, Lexos's proposed construction is not needed and does not address any issue in dispute.

Lexos's proposed construction.  Lexos's proposed construction should therefore be rejected, and

Amazon's should be adopted.

### C.    "cursor image data"

| Claim Term | Lexos's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "cursor image data"<br><br>'102 patent, claim 72;<br>'449 patent, claims 1, 38, 53. | Plain and ordinary meaning. | Plain and ordinary meaning. |

Defendants have agreed that "cursor image data" does not need to be construed by the

Court and should be given its plain and ordinary meaning.

### D.    "modifying," "transforming," etc.

| Claim Term | Lexos's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "modifying [an initial cursor image]"<br><br>'102 patent, claim 72;<br>'449 patent, claim 53.<br><br>"transforming [said initial cursor image]"<br><br>'102 patent, claim 72;<br>'449 patent, claim 53.<br><br>"modify [said cursor image]"<br><br>'102 patent, claim 72;<br>'449 patent, claims 1, 38, 53.<br><br>"modifying [a cursor image]"<br><br>'449 patent, claims 1 and 35;<br>'241 patent, claim 35. | "changing (change) or replacing (replace) the form, shape or appearance of a cursor image" | Plain and ordinary meaning. No construction required. |

"Modify[ing]" and "transform[ing]" are common verbs whose plain and ordinary meaning

can be easily understood by the jury.  These verbs, as used in the asserted claims, do not carry any

special meaning that deviate from their plain and ordinary meaning.  Their use here is consistent

with everyday parlance, which is confirmed by Lexos's attempt to convert "modify[ing]" and "transform[ing]" into other workaday terms—"changing" and "replacing."  But no such conversion is necessary as the jury will be comfortable with the actual claim language at issue, and Lexos has failed to make any reasonable argument to the contrary.  Therefore, no construction is necessary for these terms.

Curiously, Lexos accuses Defendants of proposing "limiting language" that is not supported by the claim language.  (Pltf's Br. at 19.)  Lexos, however, is tilting at windmills, as Defendants have not proposed any construction for these claim terms, much less a limiting construction.  Instead, Defendants ask that these common terms be given their common meaning as understood by laypersons in light of the dearth of intrinsic or extrinsic evidence to support departing from the plain meaning of these easily understandable terms.

In fact, Lexos's proposed construction adds ambiguity, as one is left to wonder, for example, how "form" differs from "shape" or "appearance" and why all three terms are recited in the construction.  Lexos's proposed construction, therefore, is not only unnecessary, it could add juror confusion.

### E.    "specific image"

| Claim Term | Lexos's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "specific image"<br><br>'102 patent, claim 72;<br>'449 patent, claims 1, 38, 53. | a "modified cursor image," and not the "cursor image" or the "initial cursor image" | "modified cursor image, which is static and representative of at least a portion of the subject or topic being displayed on the screen" |

In the Early Claim Construction Opinion and Order in the *APMEX* litigation involving the same patents asserted here, Judge Payne noted that Lexos's proposed construction for "specific image" ignored the word "specific," and in doing so rendered "specific image" to "effectively

mean[ ] nothing more than a 'modified' cursor image." *APMEX*, Dkt. 86, No. 2:16-CV-00747-JRG-RSP, slip op. at 4–9 (E.D. Tex. Mar. 16, 2017).  Lexos's proposed construction here is equally flawed insofar as it *directly equates* the "specific image" with the "modified cursor image," with nothing more, other than what the "specific image" is not.  As Judge Payne noted, Lexos's prior proposed construction was inconsistent with the specification because the claims require the "specific image" to include "'content corresponding to at least a portion of said information to be displayed' on the screen." *Id.*  This requirement relates "the *content displayed within* the 'specific image' to the content being displayed on the screen." *Id.* (emphasis in original).  Lexos's proposed construction here suffers from the same deficiency, as it fails to address the "specific" portion of the claim term.

In accordance with the guidance from Magistrate Payne in *APMEX* (*id*. at 12-13), "specific image" should be construed according to Defendants' proposal as a "modified cursor image, which is static and representative of at least a portion of the subject or topic being displayed on the screen."  In its Opening Brief, Lexos does not dispute that the "specific image" must be "representative of at least a portion of the subject or topic being displayed on the screen."  Instead, Lexos just asserts that the clause is redundant.  But nothing about "specific" standing alone suggests the inherency that Lexos claims.  Instead, it is the relationship to content displayed on the screen that makes the image "specific," and thus that language is a necessary part of the definition of "specific image."

Lexos also disputes whether the "specific image" must be static, but the intrinsic evidence demonstrates that it does.  The Abstract summarizes the invention by explaining that it is "[a] system for modifying a cursor image, as displayed on a video monitor of a remote terminal, to a **specific image** having **a desired shape and appearance**." ('102 patent at Abstract (emphasis

added).)  "[A] desired shape and appearance" is singular, which aligns with the fact than an "image" is a singular visual depiction, as opposed to a video or film.  The Abstract further explains that "[t]he cursor display code contains information in response to which the cursor image is modified to **the** specific image."  (*Id.* (emphasis added).)  Again, the reference to the specific image is singular.  (*See also id.* at Abstract ("The cursor display instruction is operable to modify, in conjunction with the cursor information and the cursor image data, a cursor image displayed by a display of the remote terminal in the shape and appearance of the specific image."); *id.* at 2:40-43 (Summary of Invention: "A more specific object of the present invention is to provide a server system for modifying a cursor image to **a specific image** displayed on a video monitor of a remote user's terminal.") (emphasis added).)

Lexos argues that the specification discloses an embodiment where the cursor image might contain semi-static or dynamic text or numbers that get updated.  (Pltf's Br. at 20-21 (citing '102 patent at 17:5[0]-61).)  While the specification discloses such an embodiment, the inventors chose not to claim that embodiment.  Instead, the claims repeatedly refer to "a specific image" or "said specific image," and there is no reference to dynamic text or numerals.  It would be improper to allow Lexos to recapture now what was disclosed, but plainly not claimed in the asserted claims.  *See SuperGuide Corp. v. DIRECTV Enters., Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004) (specification cannot be "a substitute for, nor … used to rewrite, the chosen claim language" because "[s]pecifications teach[;] [c]laims claim") (citation omitted); *see also TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1373–75 (Fed. Cir. 2008) ("claims need not be construed to encompass all disclosed embodiments when the claim language is clearly limited to one or more embodiments.").  For example, an image of a stock at a price of $1.99 and image of stock at a price

of $2.01 would be different images, which would contradict the asserted claims' repeated references to "said specific image."

Lexos also points to a portion of the specification that discusses a "dynamic cursor" that might change as the user moves the cursor around the screen, such as pointing a straw in a coke bottle in different directions.  (Pltf's Br. at 21 (citing '102 patent at 17:15-31).)  But nowhere do the claims recite a dynamic cursor or the use of multiple cursor images to depict, for example, a straw pointing in different directions.  Instead, as noted above, the claims reference a singular "specific image."

Finally, Lexos tries to rely on a portion of the specification that discusses animations.  (Pltf's Br. at 21 (citing '102 patent at 17:32-40).)  But that portion of the specification discusses "related animations," not the "specific image" recited in the claims.  Indeed, the language Lexos relies on clearly distinguishes between "cursor images" and these "related animations" that could "enhance[]" the image.  (*See* '102 patent at 17:38-40.)  The invention that Lexos chose to claim recites a "specific image" (singular), so the term should be construed accordingly to require that the image be static.

Lexos also proposes two negative limitations for the construction of "specific image."  It is clear from the claims, and Defendants do not dispute, that the "specific image" is not the "initial cursor image," so that negative limitation is not needed.  But the "specific image" is a type of "cursor image" (i.e., a "modified cursor image," as both parties propose), and it would therefore confuse a jury to say that the "specific image" is not the "cursor image," when it is the cursor image after the modification has occurred.

### F.   "tracks a movement"

| Claim Term | Lexos's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "tracks a movement"<br><br>'241 patent, claim 35. | "moves according to a movement" | Plain and ordinary meaning. No construction required. |

Lexos fails to establish why the construction of "tracks a movement" is necessary.  A lay jury would be familiar with the term "tracks a movement," which is an easily understood phrase with which they would be familiar.  For example, a dog may track the movement of its owner on a walk around the block.  A cornerback might track the movement of a wide receiver.  An image on a radar screen might track the movement of an airplane.  In this case, the "visual image tracks a movement of [a] modified cursor image."  ('241 patent, claim 35.)  The specification describes just one embodiment where a visual image tracks a cursor image movement, with the cursor being the image of a mouse whose movement is tracked around the screen by the visual image of a cat, depicting a familiar example of a predator tracking the movement of its prey.  ('102 patent at 16:14-20.)  Nothing in the specification suggests that in the context of the '241 patent, tracking a movement means something different to a POSITA than how a lay juror would understand or use the term.  *Cf. AFG Indus. Inc. v. Cardinal IG Co.*, 239 F.3d 1239, 1248 (Fed. Cir. 2001) (term of art must be construed consistent with scientific and technical context).  As such, no construction is required.

Further, "tracks a movement" is particularly easy to understand in the context of claim 35 of the '241 patent, which is the only asserted claim that recites this limitation.  Claim 35 first recites "modifying the cursor image to include the visual image and displaying the modified cursor image," and it then recites that the "visual image tracks a movement of the modified cursor image." ('241 patent at 21:1-6.)  Obviously if the visual image is "include[d]" in the modified cursor image,

the visual image will have to track the movement of the modified cursor image.  This would be easily understood by a lay jury.  Thus, construction of the term is unnecessary.

Although Lexos argues that the term must be construed, Lexos provides no justification why.  Even worse, Lexos's proposed construction of "moves according to a movement" would generate—rather than mitigate—potential juror confusion.  Lexos offers no explanation of why a lay juror would better understand "moves according to a movement," as it is not a common phrase.  The specification also never uses the phrase "moves according to a movement," so it would not offer any guidance.  Additionally, "moves according to a movement" is worded so broadly that it could arguably cover two objects that move at the same time but in no spatial relationship to each other, or even objects that move in the opposite directions, neither of which comports with the concept of one object tracking the movement of another object.  Providing such a word salad for a construction unquestionably introduces unnecessary confusion.

Notably, the sole example from the specification that Lexos cites in its brief does not concern an object tracking the movement of another object.  (Pltf's Br. at 22 (citing '102 patent at 17:15-31).)  In that example, the specification proposes that on a website for a cola company, there might be an image of a cola bottle in the middle of the page.  ('102 patent at 17:15-17.)  The dynamic cursor image in the example depicts a person holding a straw where the straw always points toward the top of the cola bottle "no matter where the cursor moves on the screen."  (*Id*. at 17:17-21.)  This would not be a case of a visual image (the straw) tracking the movement of the cursor image because the soda bottle is not a cursor image and it is stationary.  Instead, the dynamic cursor image is the image of the person holding the straw, with the straw constantly pointing to a fixed position on the screen, i.e., to the top of a cola bottle image.  Thus, it is not surprising that the specification never uses the phrase "tracks the movement" in conjunction with the description

of the embodiment in the specification.  Lexos's proposed construction should therefore be rejected.

### G.    "promotional material"

| Claim Term | Lexos's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| "promotional material"<br><br>'241 patent, claim 35. | Plain and ordinary meaning. No construction required. | Plain and ordinary meaning.<br><br>But subject to the printed matter doctrine and not entitled to patentable weight. |

The parties do not dispute the scope or meaning of "promotional material" as that term is used in the sole asserted claim of the '241 patent.  The parties do, however, dispute whether that claim term is entitled to patentable weight in view of the printed matter doctrine.  This issue is appropriately addressed during claim construction because the printed matter doctrine "only require[s] analyzing and interpreting the meaning of the claim language."  *See Praxair Distrib., Inc. v. Mallinckrodt Hosp. Prods. IP Ltd.*, 890 F.3d 1024, 1033 (Fed. Cir. 2018).  And a determination now that the limitation refers to printed matter will simplify case issues going forward as the parties will know if this term is entitled to patentable weight.  *See id.* at 1032 ("the printed matter will not distinguish the invention from the prior art in terms of patentability.") (*quoting In re Ngai*, 367 F.3d 1336, 1339 (Fed. Cir. 2004)); *see also Digital Retail Apps, Inc. v. H-E-B, LP*, No. 6:19-cv-000167, 2020 WL 376664, at *1, *11 (W.D. Tex. Jan. 23, 2020) (deciding whether a claim term is subject to the printed matter doctrine as part of the claim construction proceedings).[6]

---

[6] During the claim construction exchanges and in an email, Defendants informed Lexos that Defendants intended to raise the printed matter issue during the *Markman* proceedings.  (Ex. N at 6; Ex. O.)  Lexos acknowledged this (Ex. P) but then chose not to address the printed matter issue in its opening claim construction brief.

For the reasons set forth below, "promotional material" is subject to the printed matter doctrine and is not entitled to patentable weight.

### 1.    Legal Standard for the Printed Matter Doctrine.

"While historically 'printed matter' referred to claim elements that literally encompassed 'printed' material, the doctrine has evolved over time to guard against attempts to monopolize the conveyance of information using any medium." *C R Bard Inc. v. AngioDynamics, Inc.*, 979 F.3d 1372, 1381 (Fed. Cir. 2020).  In the modern era, such media includes, for example, a computer display presenting digital information.  *See In re DiStefano*, 808 F.3d 845, 848-51 (Fed. Cir. 2015); *see also Digital Retail Apps, Inc.*, 2020 WL 376664, at *1, 11 (claim limitations covering categories of information shown on a digital purchase receipt are directed to printed matter).

The Federal Circuit has established a two-step analysis for determining whether to give patentable weight to a limitation allegedly directed to printed matter.  *See DiStefano*, 808 F.3d at 848-51.  "The first step . . . is the determination [whether] the limitation . . . is in fact directed toward printed matter."  *Id.* at 848.  Under the first step of the analysis, "a limitation is printed matter only if it claims the content of information."  *Id.*  In other words, printed matter is "matter claimed for its communicative content," *i.e.*, "matter claimed for what it communicates."  *Id.* at 849, 850; *see also In re Jie Xiao*, 462 F. App'x 947, 951-52 (Fed. Cir. 2011) (printed matter is that which is "useful and intelligible only to the human mind") (*quoting In re Bernhart*, 417, F.2d 1395, 1399 (CCPA 1969)).

The second step of the analysis is to determine whether the printed matter is "functionally or structurally related to the physical substrate holding the printed matter."  *DiStefano*, 808 F.3d at 848 (*citing In re Gulack*, 703 F.2d 1381, 1384-85 (Fed. Cir. 1983)).  "In evaluating the existence of a functional relationship, [the Federal Circuit has] considered whether the printed matter merely informs people of the claimed information, or whether it instead interacts with the other elements

-23-

of the claim to create a new functionality in a claimed device or to cause a specific action in a claimed process." *C R Bard*, 979 F.3d at 1381.  Thus, for example, "a generically claimed substrate having a picture of a golf ball thereupon[] would lack a functional relationship" because it is "directed towards conveying … an aesthetically pleasing image (unrelated to the substrate) to the reader."  MPEP § 2111.05 (9th ed. Rev. 7.2022, February 2023).

### 2. Promotional Material Is Subject to the Printed Matter Doctrine and Not Entitled to Patentable Weight.

#### a. "Promotional Material" is directed to printed matter.

Under the first step of the analysis, the recitation in claim 35 of the '241 patent to "promotional material" refers to the **content** of the information displayed on the user's screen.  *DiStefano*, 808 F.3d at 848 ("a limitation is printed matter only if it claims **the content of information**") (emphasis added).  Indeed, while asserted claim 35 uses the term "promotional material," claim 43, which depends from claim 35, refers to "said promotional **content**."  (*See* '241 patent, claim 43 (emphasis added).)

That "promotion material" claims the content of the information being displayed is demonstrated through the patent's repeated example of modifying a cursor to the shape of a cola bottle, where it is the display of that content (*i.e.*, the image of a bottle) on the user's screen that conveys advertising to the user.  (*See, e.g.*, '102 patent at 13:38-45, 17:5-14.)  While the specification does not use the term "promotional material," it does discuss "advertisements," including "advertising content" that is part of a displayed cursor.  (*See, e.g.*, '102 patent at 3:22-26 ("An exemplary embodiment of the present invention is directed to a system that provides online advertising **content** using the on-screen cursor") (emphasis added); *id*. at 3:67-4:3 ("The cursor or pointer image may also appear in a specified shape or color that is intended to convey a message that relates to the advertising **content** within the web page being transmitted and displayed.") (emphasis added).)  It

is the content displayed in the modified cursor that conveys promotional information to the user, which is only useful and recognizable as a "promotion" or "advertising" to the human mind.  *See Jie Xiao,* 462 F. App'x at 951-52.  Thus, "promotional material" is directed to communicative content, so the first step of the printed matter analysis is satisfied.

While Lexos did not address "promotion material" or the printed matter doctrine in its brief, Lexos previously proposed that "promotional material" be construed to mean "**information** about, or representing, a brand, product, or service, …"  (Ex. Q at 7 (emphasis added).)  Further, according to Lexos, that "information … relat[es] to [the] **commercial availability**" of, for example, a product or service.  (*Id.* (emphasis added).)  Lexos therefore acknowledges that the display of a modified cursor image, such as an image of a cola bottle, conveys information about the brand, product, or service, as well as its commercial availability.  And because such information is only useful and recognizable to the human mind, it is printed matter.  *Jie Xiao*, 462 F. App'x at 951-52.

> ### b.  "Promotional material" is not functionally related to display or other aspects of the claims.

Under the second step of the printed matter analysis, "promotional material" is not "functionally or structurally related to the physical substrate holding the printed matter," *i.e.*, the computer display.  *See DiStefano*, 808 F.3d at 848-51.  It is simply "displayed on the" user's display, and "does not play any other role in the claim."  *Digital Retail Apps*, 2020 WL 376664, at *11.

Moreover, the contents of the promotional material in claim 35 of the '241 patent are not functionally related to any other portion of the claim.  In the asserted claims of the '102 and '449 patents, the specific image that replaces the initial cursor image is related to other information displayed on the user's screen.  For example, claim 72 of the '102 patent recites that "said specific image includes content corresponding to at least a portion of said information that is to be displayed on said display of said user's terminal," thereby establishing a relationship between the content of

the specific image and another element of the claim.  ('102 patent at 24:25-28.)  By contrast, claim 35 of the '241 patent does not recite any such functional relationship between the content of the promotional material and any other element of the claim.  Instead, the content of the promotional material could be anything promotional.  One could be looking at a sports website, yet the promotional material could be an image of a Gucci handbag or an advertisement for Disneyland.

That "promotional material" is directed to printed matter is further demonstrated by the fact it could be swapped out for terms describing the depiction of other matter without altering any other aspect of the claims.  For example, claim 35 could be altered to recite "wherein the visual image includes humorous material" or "wherein the visual image includes instructional material" without altering any other aspect of the claims.  Instead, the only thing that would change would be the content of the matter displayed, which is not entitled to patentable weight in the same way that content of images displayed on different dice are not patentably distinct even though the dice faces contain different symbols relevant to different dice games.  *See* MPEP § 2111.05 (9th ed. Rev. 7.2022, February 2023) (discussing *Ex Parte Gwinn*, 112 USPQ 439, 446-47 (Bd. Pat. App. & Int. 1955).)

## VI.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court adopt Defendants' proposed claim constructions and hold that "printed matter" is not entitled to patentable weight.

Dated:  July 28, 2023

Respectfully submitted,

_____/s/ Janice L. Ta_____

Janice L. Ta, Texas 24075138
JTa@perkinscoie.com
PERKINS COIE LLP
405 Colorado St., Suite 1700
Austin, TX 78701
Tel: (737) 256-6100
Fax: (737) 256-6300

Daniel T. Shvodian, California 184576
DShvodian@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304
Tel: (650) 838-4300
Fax: (650) 838-4350

Adam G. Hester, Wisconsin 1128794
(*Admitted Pro Hac Vice*)
AHester@perkinscoie.com
PERKINS COIE LLP
33 East Main Street Suite 201
Madison, WI 53703-3095
Tel: (650) 838-4311
Fax: (650) 838-4350

**ATTORNEYS FOR DEFENDANT
AMAZON.COM, INC.**

Dated:  July 28, 2023

*/s/ Janice L. Ta*

Janice L. Ta, Texas 24075138
JTa@perkinscoie.com
PERKINS COIE LLP
405 Colorado St., Suite 1700
Austin, TX 78701
Tel: (737) 256-6100
Fax: (737) 256-6300

James F. Valentine, California 149269
JValentine@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Tel: (650) 838-4300
Fax: (650) 838-4350

Adam G. Hester, Wisconsin 1128794
AHester@perkinscoie.com
(*Admitted Pro Hac Vice*)
PERKINS COIE LLP
33 East Main Street Suite 201
Madison, WI 53703-3095
Tel: (650) 838-4311
Fax: (650) 838-4350

**ATTORNEYS FOR DEFENDANT
OFFICE DEPOT, LLC**

Dated:  July 28, 2023

                      */s/ Benjamin E. Weed*

Benjamin E. Weed (*Admitted Pro Hac Vice*)
benjamin.weed@klgates.com
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, IL 60602
Tel: (312) 372-1121

Melissa Smith (Texas Bar No. 24001351)
Gillam & Smith LLP
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257
melissa@gillamsmithlaw.com

**ATTORNEYS FOR DEFENDANT AND
COUNTERCLAIMANT
TARGET CORPORATION**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing

document has been served July 28, 2023 to all counsel of record, via the Court's CM/ECF system.

*/s/ Janice L. Ta*
Janice L. Ta

\