# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| LEXOS MEDIA IP, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | No. 2:22-CV-00169-JRG |
| | § | (Lead Case) |
| AMAZON.COM, INC., | § | |
| | § | |
| *Defendant.* | § | |
| | § | |
| | § | |
| v. | § | |
| | § | |
| TARGET CORPORATION, | § | No. 2:22-CV-00175-JRG |
| | § | (Member Case) |
| *Defendant.* | § | |
| | § | |
| | § | |
| v. | § | |
| | § | |
| OFFICE DEPOT, LLC, | § | No. 2:22-CV-00273-JRG |
| | § | (Member Case) |
| *Defendant.* | § | |

## CLAIM CONSTRUCTION MEMORANDUM OPINION AND ORDER

In these consolidated patent cases, Lexos Media IP, LLC ("Lexos") asserts claims from

three patents against Amazon.com, Inc., Target Corporation, and Office Depot, LLC (together,

"Defendants"). Each of the patents relates to modifying a cursor image displayed on a computer.

*See* U.S. Patent 5,995,102 (the "'102 Patent") at 1:6–8 ("This invention relates . . . to a server

system capable of modifying a cursor image displayed on a remote client computer."); U.S. Patent

6,118,449 (the "'449 Patent") at 1:9–11 (same); U.S. Patent 7,975,241 (the "'241 Patent") at 11:8–

10 (same).

The parties dispute the proper construction of six terms from the asserted patents. In addition, Defendants challenge whether "promotional material" in Claim 35 of the '241 Patent is entitled to patentable weight. Having considered the parties' briefing, along with arguments of counsel during an August 16, 2023 hearing, the Court resolves the disputes as follows.

## I.   BACKGROUND

The asserted patents relate to on-line advertising during the infancy of the world wide web.[1] As background, the patents describe three prominent types of on-line advertising and the various problems with each. For example, the most common type of advertisements at the time were "banner ads"—"generally square or rectangular boxes provided with some combination of graphics, color and text directed to the product or service being advertised." '102 Patent at 1:29–31. However, because banner ads typically occupy a small part of a web page, they are easily ignored. *Id.* at 1:41–49. As an alternative, web page "frames" divide the display into separate sections, some of which may be used for advertising. The content, however, can still be difficult to read and is easily ignored by resizing or eliminating the frames. *Id.* at 1:55–2:3. Finally, the patents describe pop-up ads as an intrusive advertising method that annoys users by generating dialogue boxes that temporarily control the user's screen. *Id.* at 2:4–26.

Against that background, the asserted patents describe the technical problem as "a need for a simple means to deliver advertising elements, i.e. logos, animations, sound, impressions, text,

---

[1] Two of the patents are related. The application underlying the '449 Patent claims priority to the application from which the '102 Patent issued. '449 Patent at [63]. The '241 Patent does not claim priority to an earlier-filed application. Defendants characterize the three specifications as "substantively the same but vary[ing] slightly due to formatting and non-substantive differences." Dkt. No. 105 at 1 n.1.

etc., without the annoyance of totally interrupting and intrusive content delivery, and without the passiveness of ordinary banner and frame advertisements which can be easily ignored." *Id.* at 2:27–32. To address that need, the patents teach storing (1) "cursor image data" that corresponds to a "specific image," and (2) "cursor display code" that modifies the cursor image to the specific image. When instructed by a server, the system modifies the cursor image to the shape and appearance of the specific image. *Id.* at [57].

As an example, FIG. 8 (below) of the '102 Patent shows a web browser displaying a web page called "SportsNews." When loading the web page, the browser also loads a banner advertisement (62) for Fizzy Cola that contains "cursor display instructions." Based on those instructions, the user's computer changes the cursor image from its normal arrow shape into a bottle shape (44a) to promote the product. *See id.* at 13:36–41.



**FIG. 8 of the '102 Patent**

3

Claim 72 of the '102 Patent is representative of the claims at issue and includes most of the disputed terms. That claim recites:

> 72. A method for **modifying** an **initial cursor image** displayed on a display of a user terminal connected to at least one server, comprising:
>
> receiving a request at said at least one server to provide specified content information to said user terminal;
>
> providing said specified content information to said user terminal in response to said request, said specified content information including at least one **cursor display instruction** and at least one indication of cursor image data corresponding to a **specific image**; and
>
> **transforming** said **initial cursor image** displayed on said display of said user terminal into the shape and appearance of said **specific image** in response to said **cursor display instruction**, wherein said specified content information includes information that is to be displayed on said display of said user's terminal, wherein said **specific image** includes content corresponding to at least a portion of said information that is to be displayed on said display of said user's terminal, and wherein said **cursor display instruction** indicates a **cursor display code** operable to process said **cursor display instruction** to **modify** said **cursor image** to said **cursor image** in the shape and appearance of said **specific image** responsive to movement of said **cursor image** over a display of said at least a portion of said information to be displayed on said display of said user's terminal.

'102 Patent at 24:10–36 (disputed terms bolded). In addition, the parties dispute the scope of "tracks a movement" in Claim 35 of the '241 Patent, and whether "promotional material" in that claim is entitled to patentable weight.

## II.   LEGAL STANDARDS

"[T]he claims of a patent define the invention to which the patentee is entitled the right to

exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure-Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). As such, if the parties dispute the scope of the claims, the court must determine their meaning. *See, e.g.*, *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1317 (Fed. Cir. 2007); *see also Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996), *aff'g*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc).

Claim construction, however, "is not an obligatory exercise in redundancy." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Rather, "[c]laim construction is a matter of [resolving] disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims . . . ." *Id.* A court need not "repeat or restate every claim term in order to comply with the ruling that claim construction is for the court." *Id.*

When construing claims, "[t]here is a heavy presumption that claim terms are to be given their ordinary and customary meaning." *Aventis Pharm. Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013) (citing *Phillips*, 415 F.3d at 1312–13). Courts must therefore "look to the words of the claims themselves . . . to define the scope of the patented invention." *Id.* (citations omitted; ellipses in original). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313. This "person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*

Intrinsic evidence is the primary resource for claim construction. *See Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1348 (Fed. Cir. 2010) (citing *Phillips*, 415 F.3d at 1312). For

certain claim terms, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314; *see also DeMarini Sports, Inc., v. Worth*, 239 F.3d 1314, 1324 (Fed. Cir. 2001) ("We cannot look at the ordinary meaning of the term . . . in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history . . . ."). However, for claim terms with less-apparent meanings, courts consider "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean[,] [including] the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Phillips*, 415 F.3d at 1314 (quoting *Innova*, 381 F.3d at 1116).

## III.   THE LEVEL OF ORDINARY SKILL IN THE ART

The level of ordinary skill in the art is the skill level of a hypothetical person who is presumed to have known the relevant art at the time of the invention. *In re GPAC*, 57 F.3d 1573, 1579 (Fed. Cir. 1995). In resolving the appropriate level of ordinary skill, courts consider the types of and solutions to problems encountered in the art, the speed of innovation, the sophistication of the technology, and the education of workers active in the field. *Id.* Importantly, "[a] person of ordinary skill in the art is also a person of ordinary creativity, not an automaton." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007).

Here, Lexos notes that the PTAB previously found, in a related IPR proceeding concerning the '102 Patent, that a person of ordinary skill in the art would have "at least a master's degree in Computer Science, Computer Engineering, or a related field, or hold a bachelor's degree in

Computer Science, Computer Engineering, or equivalent and have at least two years of relevant work experience in the fields of [user interface] design and [operating systems]." Dkt. No. 98-3 at 9 (quoting Final Written Decision, Dkt. No. 98-4 at 10). Because Defendants do not challenge this proposed level of skill in the art, the Court adopts this characterization for its analysis.

## IV.    THE DISPUTED TERMS

### A.    "cursor display code" ('102 Patent, Claim 72; '449 Patent, Claims 1, 27, 53)

| Lexos's Construction | Defendants' Construction |
|---|---|
| "computer code for modifying the display of the cursor image" | Plain and ordinary meaning. |

Lexos asserts that the specification describes "cursor display code" as a set of instructions executed on the user terminal to change the cursor. Dkt. No. 98-3 at 12 (quoting '102 Patent at 8:52–57). Lexos interprets this to mean "the cursor display code causes the user's terminal to display that cursor image data in place of the original cursor, using the API of the operating system to effect these changes." *Id.* (citing '102 Patent at 8:34–37, 8:52–57, 13:19–30).

Defendants appear to agree with most of Lexos's position but instead argue construction is not necessary. For example, they argue "anyone reading the patents or claims would understand that the 'code' referenced in the claims is computer code." Dkt. No. 105 at 7. Similarly, Defendants claim changing "cursor display" to "display of the cursor image" is unnecessary "as anyone, including a lay jury, reading the patents and claims would understand that 'cursor display' in the claims refers to the image of the cursor displayed on the screen." *Id.* As for the phrase "for modifying," Defendants stress that the claims already recite "the 'cursor display code' is used to modify the cursor image." *Id.* (citing '102 Patent at 24:30–32; '449 Patent at 18:45–46, 20:40–41, 22:50–51).

At the hearing, the parties called the dispute over this term "small." Hr'g Tr., Dkt. No. 125 at 5:18 ("It's a very small issue . . . ."); *id.* at 7:5–6 ("there really isn't a large dispute here"). Lexos characterized its concern as clarifying that "cursor display code" is not code for *displaying* the *cursor*, but rather code for *modifying* the display of the cursor *image*. *Id.* at 6:13–15. Defendants do not dispute the accuracy of that characterization. *See id.* at 7:11–15.

Lexos has a point. One could read "cursor display code" and form an incorrect position about the code's purpose. Despite the fact that Lexos's proposed construction is already accounted for elsewhere in the surrounding claim language, the Court sees some benefit and no harm in articulating the cursor display code's purpose separately. Accordingly, the Court construes "cursor display code" as "computer code for modifying the display of the cursor image."

### B.   "cursor display instruction" ('102 Patent, Claim 72; '449 Patent, Claims 1, 27, 53; '241 Patent, Claim 35)

| Lexos's Construction | Defendants' Construction |
|---|---|
| "an instruction operable to modify the display, in conjunction with other information, of a cursor image" | Plain and ordinary meaning. No construction required. |

For "cursor display instruction," the parties' arguments are generally the same as those made with respect to "cursor display code." In support of its construction, Lexos points to one excerpt in particular:

> Typically a web browser retrieves a web page to be loaded on a user's terminal. The retrieved web page in accordance with one embodiment of the invention contains a set of predetermined instructions referred to herein as cursor display instructions. The browser or browser extension interprets the information contained in cursor display instructions and instructs the operating system of the user's terminal via an application programming interface (API) to check its memory to determine if the user terminal is capable of loading the coded image, animation, and/or soundbite.

Dkt. No. 98-3 at 13 (quoting '102 Patent at 4:31–45). Lexos also notes its construction accords with the claim language itself. *Id*.

Defendants, however, assert that this term requires no construction and accuse Lexos of simply rearranging the phrase and adding superfluous language. Dkt. No. 105 at 8. The claims, say Defendants, already require the cursor display instruction to be an instruction to modify the displayed cursor image. *Id.* at 8–9. Further, Defendants characterize the phrase "in conjunction with other information" in Lexos's construction as ambiguous. *Id.* at 9.

Here, the dispute in the briefing focuses on the phrase "in conjunction with other information." At the hearing, Lexos pointed to the Abstract for support of that phrase, but agreed the language is not "material" or "critical" to its construction. Hr'g Tr., Dkt. No. 125 at 8:25–9:6. Defendants stressed that, despite any support in the abstract for "in conjunction with other information," there is no reason to import that phrase into the claims. *Id.* at 9:20–23.

The Court agrees with Defendants that "in conjunction with other information" is not part of the correct construction. However, for the same reasons set forth in Part IV.A., the Court adopts the remainder of Lexos's construction for this term: "an instruction operable to modify the display of a cursor image."

**C.    "cursor image" and "initial cursor image" ('102 Patent, Claim 72; '449 Patent, Claims 1, 27, 53; '241 Patent, Claim 35)**

| Lexos's Construction | Defendants' Construction |
|---|---|
|  |  |

| | |
|---|---|
| "the appearance of the cursor on a user's screen before the cursor image is modified into the specific image" | "a movable image on a display screen whose position is controlled through a user interface and that indicates the location that will be affected by input from the user interface" <br><br> Alternatively: "a movable image on a display screen whose position **can be** controlled through a user interface and that indicates the location that will be affected by input from the user interface." *See* Dkt. No. 105 at 13. |

The parties present different disputes to the Court. Lexos argues that its construction should be adopted because this Court earlier held "the 'cursor image' recited in the claims is the image that appears before the cursor image is modified into the specific image." Dkt. No. 98-3 at 14 (quoting *Lexos Media IP, LLC v. APMEX, Inc.*, 2017 WL 1021366, at *2 (E.D. Tex. Mar. 16, 2017). Defendants, however, do not contest Lexos's position, so no construction is necessary to resolve that dispute. *See* Dkt. No. 105 at 14 (stating "the patents' claims make clear which references concern the cursor image before or after modification"); *id.* at 14 n.5 (noting Defendants' agreement that "transforming said initial cursor image," "modify said cursor image," and "responsive to movement of said cursor image" refer to the cursor image before modification, while "said cursor image in the shape and appearance of said specific image" refers to the image after modification).

Defendants present different questions about these terms: (1) whether a "cursor image" is movable, and (2) the extent to which a "cursor image" must be controlled through a user interface. Dkt. No. 105 at 12–13. Defendants also urge the Court to construe "cursor image" as a "standalone" term such that the Court's construction applies to each of "cursor image," "initial cursor image," or "modified cursor image." *See* Hr'g Tr., Dkt. No. 125 at 16:9–17:1.

In its briefing, Lexos opposes Defendants' construction on two grounds. First objecting to

the notion that a "cursor image" is "movable," it contends "the only movement specified in the claims is that the cursor image transforms into the specific image when the cursor is positioned over a portion of the information to be displayed." Dkt. No. 98-3 at 15. Second, to the extent a "cursor image" *is* movable, Lexos notes the specification provides an example of the cursor being movable by a remote server rather than a user, which undercuts Defendants' construction. *Id.* at 15–16. Defendants concede the cursor may at times be moved around the screen by a remote server and offer an alternative construction of "a movable image on a display screen whose position *can be* controlled through a user interface." Dkt. No. 105 at 13.

At the hearing, the "moveability" of the "cursor image" was not an issue. *See* Hr'g Tr., Dkt. No. 125 at 28:21–25 (admitting that the "cursor image" and "initial cursor image" are "movable"). Instead, Lexos's arguments focused on whether the cursor image had to be movable by *only* the user interface. *See id.* at 20:21–25:10. Regarding Defendants' alternative construction—that the image *can* be (rather than *must* be) controlled with a user interface, Lexos calls it a "totally meaningless limitation." *Id.* at 22:8–12; *see also id.* at 22:18–21 ("It's not a limitation anymore. I don't know what it is. But it would be improper if it didn't say 'can be controlled,' and it's meaningless when it does say 'can be controlled.'").

The Court generally agrees with Defendants. To start, the Court rejects any need for Lexos's construction, as there appears to be no confusion about whether the terms, based on the surrounding claim language, refer to an image before or after modification or transformation. Lexos does not point to any particular instances of confusion. Thus, even though Lexos's construction might be correct, it is unnecessary.

Regarding moveability of a "cursor image," a cursor is inherently movable around the screen. *See cursor*, Encyclopedia MacIntosh, Dkt. No. 105-8 at 723 ("An on-screen icon that the

user manipulates by moving the mouse, or in some cases, by using the arrow keys from the keyboard."); *cursor*, Dict. of Comput., Dkt. No. 105-14 at 114–15 ("A symbol on a display screen that indicates the active position, e.g., the position at which the next character to be entered will be displayed. . . . The cursor can be moved to a new position on the screen by means of arrow keys on the keyboard or a pointing device such as a mouse."). Lexos attempts to distinguish a "cursor" from its "image,"[2] but the Court sees no situation in which the *cursor* is movable around the display and its *image* is not.

Regarding Lexos's objection to Defendants' alternative construction, the Court disagrees it is "meaningless." Again, as evidenced from the cited definitions *supra*, cursors facilitate user control and input to a computer. After all, the computer itself has no need for a cursor—it "knows" the position of everything on the screen and does what it is programmed to do—and a cursor-like image moving around a display without the possibility of user input is just a pointer. *See* '102 Patent at 3:51–54 (distinguishing between "cursors and pointers"). Although Lexos stresses the claims don't expressly limit what controls the cursor, that ignores the meaning of "cursor." Lexos correctly notes the specification's example of a remote server moving the cursor after a certain period of inactivity by the user, and Defendants' alternative construction sufficiently addresses that embodiment while maintaining the required relationship between "user interface" and "cursor."

Finally, the parties dispute whether this reasoning applies not just to "cursor image" and "initial cursor image," but also "modified cursor image." Defendants argue it should. *See* Hr'g Tr., Dkt. No. 125 at 30:3–15; *see also* Dkt. No. 105 at 9 (contending "cursor image" should be

---

[2] For example, Lexos acknowledges that the specification describes control of the *cursor* with the user interface, but argues there is no language in the specification that says the user interface controls the cursor *image*. Hr'g Tr., Dkt. No. 125 at 23:13–17.

construed as a standalone term). Lexos argues "they are totally different things." Hr'g Tr., Dkt. No. 125 at 28:2–5. The "cursor image," says Lexos, "is simply the image on the screen that appears where the cursor is." *Id.* at 27:15–17. The "modified cursor image," on the other hand, appears after the cursor is moved over an image—that is, after the claimed "modification" or "transformation." *Id.* at 27:19–28:1.

With respect to movability of "modified cursor image" and its relationship with the user interface, the Court sees no reason why the same analysis doesn't apply to "modified cursor image." Nor does Lexos provide any such reasoning. Both the claims and the specification show that the "modification" that gives rise to the "modified cursor image" relates to a change of its appearance rather than its movability or control source. *See, e.g.*, '102 Patent at [57] ("A system for modifying a cursor image . . . to a specific image having a desired shape and appearance."); *id.* at 3:10–13 ("It is still an additional embodiment of the present invention to provide a means of changing the *appearance* of a computer's cursor or pointer . . . .") (emphasis added); *id.* at 3:51–53 ("The present invention provides a means for enabling cursors and pointers to change color, shape, appearance, make sounds, display animation, etc., . . . ."); '449 Patent at 18:52–55 (requiring, in Claim 1, "cursor display code operable to cause said user terminal to display a modified cursor image . . . *in the shape and appearance* of said specific image") (emphasis added); *id.* at 20:59–64 (requiring, in Claim 27, "cursor display code . . . operable to process said cursor display instruction to modify said cursor image to [a modified] cursor image *in the shape and appearance* of said specific image in response to movement of said cursor image over a specified location on said display" (emphasis added)); *id.* at 22:50–56 (similar). Nothing suggests that the "modified cursor image" suddenly becomes immovable or no longer controllable by a user once moved "over a specified location on [the] display." Thus, if the "cursor image" and "initial cursor image" are

movable—a notion with which Lexos agrees, *see* Hr'g Tr., Dkt. No. 125 at 28:21–25 (admitting that the "cursor image" and "initial cursor image" are "movable")—the Court sees no reason why the "modified cursor image" is not also movable.

The Court adopts a variation of Defendants' alternative construction and construes "cursor image" as "a movable image on a display screen whose position can be controlled through a user interface." That construction applies to each of "cursor image," "initial cursor image," and "modified cursor image."

D.    **"modifying" / "transforming" [said cursor image/initial cursor image]; "modify [said cursor image]"; "modifying [a cursor image]" ('102 Patent, Claim 72; '449 Patent, Claims 27, 53; '241 Patent, Claim 35)**

| Lexos's Construction | Defendants' Construction |
|---|---|
| "changing (change) or replacing (replace) the form, shape or appearance of a cursor image" | Plain and ordinary meaning. No construction required. |

The five claims at issue recite either "modifying" or "transforming" a cursor image. For example, Claim 72 of the '102 Patent recites "transforming said initial cursor image displayed on said display of said user terminal into the shape and appearance of [a] specific image in response to said cursor display instruction." '102 Patent at 24:20–23. Similarly, Claim 35 of the '241 Patent requires that, after receiving content information from a server, "the at least one client computer process[es] the at least one cursor display instruction and modif[ies] the cursor image to include the visual image and display[] the modified cursor image." '241 Patent at 20:66–21:3.

In its briefing, Lexos seeks clarification that both "modifying" and "transforming" the cursor image means either changing or replacing the cursor image. Dkt. No. 98-3 at 19. Defendants apparently agree and argue no construction is necessary. Dkt. No. 105 at 15–16 (calling the use of these terms "consistent with everyday parlance, which is confirmed by Lexos's attempt to convert

[the terms] into other workaday terms—'changing' and 'replacing'"). Defendants, however, question "how 'form' differs from 'shape' or 'appearance.'" *Id.* at 16.

The parties confirmed their positions at the hearing. Lexos presented the dispute as whether "the words 'modifying' and 'transforming' used in the claims are broad enough to encompass both 'changing' and 'replacing.'" Hr'g Tr., Dkt. No. 125 at 34:22–23. Lexos further expressed concern about Defendants' refusal to agree to that scope and urged that Defendants' "plain and ordinary meaning" construction could be a "stalking horse" for a more limiting interpretation. *Id.* at 35:9–10. Defendants, however, denied any such intent, and confirmed to Lexos and the Court that "modifying" and "transforming" are each broad enough to include the concept of "replacing" the cursor image. *Id.* at 39:2–19. Accordingly, because there is no apparent dispute between the parties, and because these are well-understood terms, the Court will give them a "plain and ordinary meaning" construction.

**E.**     **"specific image" ('102 Patent, Claim 72; '449 Patent, Claims 1, 27, 53)**

| Lexos's Construction | Defendants' Construction |
|---|---|
| a "modified cursor image," and not the "cursor image" or the "initial cursor image" | "modified cursor image, which is static and representative of at least a portion of the subject or topic being displayed on the screen" |

Claim 72 of the '102 Patent recites "transforming [the] initial cursor image displayed on [the] display of said user terminal into the shape and appearance of [a] specific image in response to said cursor display instruction." '102 Patent at 24:20–23. The claim then requires the "specific image" to "include[] content corresponding to at least a portion of said information that is to be displayed on said display of said user's terminal." *Id.* at 24:26–28. Claims 1, 27, and 53 of the '449 Patent include similar limitations. *See* '449 Patent at 18:61–64 (reciting, in Claim 1, "said specific image including content corresponding to at least a portion of said information to be displayed on

said display of said user's terminal"); *id.* at 20:65–567 (same language in Claim 27); *id.* at 22:46–48 (reciting similar language in Claim 53).

The parties present two disputes. First, Lexos objects to Defendants' attempt to limit a "specific image" to one that is "static." Second, Defendants assert the "specific image" must be more than merely the modified image, as Lexos's construction suggests, and more particularly "representative of at least a portion of the subject or topic being displayed on the screen."

### 1.     Whether the "specific image" must be "static"

Lexos claims the specification contradicts Defendants' requirement of a "static" "specific image." It points to the disclosure of a "dynamic cursor image" comprising a straw that always points to a displayed stationary bottle regardless of the straw's position on the screen. Dkt. No. 98-3 at 21 (citing '102 Patent at 17:15–31). It also notes the disclosure of a "baseball bat" cursor that "could be enhanced with related animations, such as the bat hitting the ball. *Id.* (citing '102 Patent at 17:32–40).

According to Defendants, the intrinsic evidence shows a "specific image" must be static—that is, a single image. For support, they emphasize the Abstract's reference to "a specific image [singular] having a desired shape and appearance," and the singular nature of "shape and appearance." Dkt. No. 105 at 17–18. They acknowledge the disclosure of dynamic images like the moving straw, but argue that, despite such disclosure, the inventors chose not to claim those embodiments. *Id.* at 18. Finally, Defendants argue Lexos's "baseball bat" example clearly distinguishes between "cursor images" and "related animations." *Id.* at 19.

The Court agrees with Lexos. The specification uses "image" broadly enough to include both a "dynamic" and "static" image, as evidenced by its characterization of the moving straw as a "dynamic cursor image." Regarding the baseball bat example, the specification shows the

otherwise static image can be "enhanced" with related animation. In other words, the static image is *improved* with animation; it is not a different image. Accordingly, a skilled artisan would not understand "image" as used in the specification and claims as only a "static" image. Defendants' position might be correct in a very technical way, but that is not how a skilled artisan would understand the term in light of this record. *See DeMarini Sports*, 239 F.3d at 1324 ("We cannot look at the ordinary meaning of the term . . . in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history . . . ."). The Court therefore rejects the "static" requirement of Defendants' construction.

2. *"representative of at least a portion of the subject or topic being displayed on the screen"*

According to Lexos, including this language in the Court's construction would be redundant and possibly confusing. Dkt. No. 98-3 at 20. It notes the parties have agreed certain claim language—"include[] content corresponding to at least a portion of said information that is to be displayed on said display of said user's terminal"—has this meaning. *Id.* Defendants respond that this Court previously ruled a "specific image" must be more than "modified cursor image." Dkt. No. 105 at 16–17 (citing *Lexos Media IP, LLC v. APMEX, Inc.*, 2017 WL 1021366 (E.D. Tex. Mar. 16, 2017)). They argue this language is necessary to distinguish a "specific image" from a "modified cursor image" and stress Lexos does not disagree this part of their construction is correct. *Id.* at 17.

Given the parties' agreement as to the meaning of "include[] content corresponding to at least a portion of said information that is to be displayed on said display of said user's terminal" in the claims, the Court sees no need for further construction on this issue. The context of the claim language sufficiently distinguishes "specific image" from "modified cursor image," and there is

no dispute about that distinction. This term will be given a "plain and ordinary meaning" construction but, as noted *supra*, the Court expressly rejects the requirement of a "static" image.

### F.     "tracks a movement" ('241 Patent, Claim 35)

| Lexos's Construction | Defendants' Construction |
|---|---|
| "moves according to a movement [of the modified cursor]" | Plain and ordinary meaning. No construction required. |

Claim 35 recites:

> 35. A system for modifying a cursor image, comprising:
>
> at least one client computer receiving content information from at least one server computer, said content information including at least one cursor display instruction specifying an appearance of a visual image,
>
> following receipt of the content information, the at least one client computer processing the at least one cursor display instruction and modifying the cursor image to include the visual image and displaying the modified cursor image,
>
> wherein the visual image includes promotional material, and *the visual image tracks a movement of the modified cursor image.*

'241 Patent at 20:61–21:6 (emphasis added).

In their briefing, the parties dispute what it means for the visual image to "track a movement" of the modified cursor image. Lexos urges its construction to preclude Defendants from arguing "tracks a movement" must be "some kind of a one-for-one linear relationship, or specific positional relationship (i.e., from behind)." Dkt. No. 98-3 at 21. It points to one excerpt from the specification—the "moving straw" example—for support that "the visual image may move or change in a non-linear way relative to the movement of the modified cursor image." *Id.* at 22 (citing '241 Patent at 17:15–31).

Defendants dispute that any construction is necessary. Dkt. No. 105 at 20. They point to their own excerpt from the specification—a cursor shaped as a mouse being tracked by the image of a cat—and also criticize Lexos's construction as adding confusion. *Id.* at 20–21 (citing '102 Patent at 16:14–20). Moreover, Defendants contend that Lexos's example from the specification doesn't concern tracking. *Id.* at 21.

To start, the Court rejects Lexos's construction as too broad. That construction would include any movement of the visual image that depends on movement of the modified cursor. It would include, for example, movement of the visual image in a direction opposite movement of the modified cursor, which cannot be fairly characterized as "tracking."

That said, Lexos's underlying concerns are legitimate, and the Court agrees the plain meaning of "tracks a movement" does not require either a "one-for-one linear relationship" or "specific positional relationship" of the visual image relative to the modified cursor. Defendants generally agree, *see* Hr'g Tr., Dkt. No. 125 at 50:18–19 ("we don't think it means that you're going to be perfectly moving" relative to the cursor image), but stress that the specification's only example of tracking—an image of a cat tracking the cursor image—refers to a specific offset, Dkt. No. 105 at 21. This, however, is not a case where the disputed term does not have an ordinary meaning that requires the Court to consult the remaining intrinsic evidence for help. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1354 (Fed. Cir. 2013) (explaining that only if "the claim term does not have an ordinary meaning, and its meaning is not clear from a plain reading of the claim," does the court turns to the remaining intrinsic evidence, including the written description, to aid in construction of the term). The Court gives this phrase a "plain and ordinary meaning" construction, but expressly rejects any requirement of a "one-for-one linear relationship" or "specific positional relationship."

### G.    "promotional material" ('241 Patent, Claim 35)

| Lexos's Construction | Defendants' Construction |
|---|---|
| Plain and ordinary meaning. No construction required. | Plain and ordinary meaning.<br>But subject to the printed matter doctrine and not entitled to patentable weight. |

The last limitation of Claim 35 recites "wherein the visual image includes *promotional material*." '241 Patent at 21:4–6 (emphasis added). Defendants argue the term is not entitled to patentable weight under the printed matter doctrine. Dkt. No. 105 at 22. Lexos contends "the printed matter doctrine is not applicable in this case, and is not relevant to any claim construction issue." Email from E. Buether to D. Shvodian (June 5, 2023), Dkt. No. 105-17.[3]

The applicability of the printed-matter doctrine may be resolved during claim construction. *See Praxair Distrib. v. Mallinckrodt Hosp. Prods. IP*, 890 F.3d 1024, 1033 (Fed. Cir. 2018) ("the Board properly addressed the printed matter doctrine during claim construction"); *see also C R Bard Inc. v. Angiodynamics, Inc.*, 979 F.3d 1372, 1377 n.1 (Fed. Cir. 2020) (acknowledging, in the context of an appeal of a trial court's judgment of non-infringement and invalidity, its statement in *Praxair* that whether printed matter "is functionally related to other claim elements may properly be resolved during claim construction"). Under the doctrine, "[c]laim limitations directed to printed matter are not entitled to patentable weight unless the printed matter is functionally related to the substrate on which the printed matter is applied." *Praxair*, 890 F.3d at 1031; *see also In re Gulack*, 703 F.2d 1381, 1386 (Fed. Cir. 1983) (noting "the critical question is whether there exists

---

[3] Lexos does not address this term in its opening brief and complains it did not have fair notice of the issue. Hr'g Tr., Dkt. No. 125 at 61:6–13. At least twenty days before Lexos filed its opening brief, Defendants advised Lexos of their intent to raise this as a claim-construction issue. *See* Email from D. Shvodian to E. Buether (June 2, 2023), Dkt. No. 105-16. The Court therefore finds Lexos had sufficient notice this was an issue before the Court.

any new and unobvious functional relationship between the printed matter and the substrate"). Otherwise, "the printed matter will not distinguish the invention from the prior art in terms of patentability." *In re Ngai*, 367 F.3d 1336, 1339 (Fed. Cir. 2004).

### 1.    Whether "promotional material" is directed to printed matter

"[A] limitation is printed matter only if it claims the *content of information*." *In re DiStefano*, 808 F.3d 845, 848 (Fed. Cir. 2015) (emphasis added). Although the term "promotional material" does not appear in the specification, the patent describes providing online advertising *content* in connection with the cursor. *See* '102 Patent at 3:22–26 ("An exemplary embodiment of the present invention is directed to a system that provides online advertising *content* using the on-screen cursor . . . .") (emphasis added); *id*. at 3:67–4:3 ("The cursor or pointer image may also appear in a specified shape or color that is intended to convey a message that relates to the advertising *content* within the web page being transmitted and displayed.") (emphasis added). Based on these excerpts from the specification, the Court agrees with Defendants that the recited "promotional material" is "printed matter."

### 2.    Whether the printed matter is functionally related to its "substrate"

The limitation at issue requires the visual image to include promotional material, but there is no claimed functional relationship between the promotional material and the substrate—here, the display screen. Thus, the claim requires the display of an image, but the contents of the image bear no functional relationship to the remainder of the claimed subject matter.

During the hearing, Lexos argued "promotional material" "has a functional and structural relationship with the claim[ed] system because it limits the scope of the displayed visual image to a visual image that includes promotion material. That is a claim limitation." Hr'g Tr., Dkt. No. 125 at 62:22–25. That argument, however, confuses infringement with validity and would render the

21

doctrine pointless. The required functional relationship is not simply the recitation of printed matter in the claims, but whether the printed matter "interacts with the other elements of the claim to create a new functionality in a claimed device or to cause a specific action in a claimed process." *C R Bard Inc.*, 979 F.3d at 1381. Because there is no such interaction in the limitation at issue, the Court concludes "promotional material" in Claim 35 is not functionally related to its substrate, and is therefore not entitled to patentable weight.

## V.    CONCLUSION

| Term | The Court's Construction |
|------|--------------------------|
| "cursor display code"<br>('102 Patent, Claim 72;<br>'449 Patent, Claims 1, 27, 53) | "computer code for modifying the display of the cursor image" |
| "cursor display instruction"<br>('102 Patent, Claim 72;<br>'449 Patent, Claims 1, 27, 53;<br>'241 Patent, Claim 35) | "an instruction operable to modify the display of a cursor image" |
| "cursor image," "initial cursor image," "modified cursor image"<br>('102 Patent, Claim 72;<br>'449 Patent, Claims 1, 27, 53;<br>'241 Patent, Claim 35) | "a movable image on a display screen whose position can be controlled through a user interface" |
| "modifying" / "transforming" [said cursor image/initial cursor image] (including "modify [said cursor image]" and "modifying [a cursor image]")<br>('102 Patent, Claim 72;<br>'449 Patent, Claim 27, 53;<br>'241 Patent, Claim 35) | Plain and ordinary meaning. |
| "specific image"<br>('102 Patent, Claim 72;<br>'449 Patent, Claims 1, 27, 53) | Plain and ordinary meaning. |

| Term | The Court's Construction |
|---|---|
| "tracks a movement" ('241 Patent, Claim 35) | Plain and ordinary meaning. |
| "promotional material" ('241 Patent, Claim 35) | Plain and ordinary meaning. Subject to the printed-matter doctrine and not entitled to patentable weight. |

The Court **ORDERS** each party not to refer, directly or indirectly, to its own or any other party's claim-construction positions in the presence of the jury. Likewise, the Court **ORDERS** the parties to refrain from mentioning any part of this opinion, other than the actual positions adopted by the Court, in the presence of the jury. Neither party may take a position before the jury that contradicts the Court's reasoning in this opinion. Any reference to claim construction proceedings is limited to informing the jury of the positions adopted by the Court.

**So ORDERED and SIGNED this 5th day of September, 2023.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE